# EXHIBIT E

# FOUAD BOUTROS & SAMI SADER
## ATTORNEYS & COUNSELLORS AT LAW

GHALEB CENTER  
HAZMIEH-GARDENIA  
P.O.BOX:45-224  
BEIRUT, LEBANON

Tel:  05.454990  
      05.459411  
      05.457992  
FAX:  05.457992  
e-mail:  
s.sader@dm.net.lb

## DECLARATION OF SAMI SADER

I, Sami Sader, state as follows:

1. I am over the age of eighteen and fluent in English. I make this declaration on personal knowledge and belief.

2. I am an attorney with the law firm Fouad Boutros and Sami Sader. I am counsel in Beirut, Lebanon to the International Finance Corporation (the "IFC"), the defendant in the above-captioned matter. I have been a litigator in the Lebanese courts for 40 years and have been admitted to practice law in Lebanon for 40 years.

3. I have examined the following documents that I understand were filed by Salah Osseiran in connection with his case against IFC:

    a. A Complaint for Preliminary and Permanent Injunctive Relief and Damages of the Plaintiff (the "Complaint"); and

    b. A Motion for a Temporary Restraining Order of the Plaintiff; and

    c. A Motion for a Preliminary Injunction; and

    d. A Memorandum in Support of Plaintiff's Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction (the "Memorandum"); and

    e. A signed Declaration of Salah N. Osseiran dated 26 February 2006 (the "Osseiran Declaration") and Exhibits 'A' to 'F' thereof.



-2-

4. From Mr. Osseiran's papers, I understand that he contends that he entered into a binding agreement with IFC through the exchange of certain emails that he attaches to his declaration, and that under that agreement, IFC was to sell him certain shares of the Middle East Capital Group ("MECG"), a company headquartered in Guernsey. He also contends that IFC made certain promises to him about conveying the shares to him and that he relied upon those promises to his detriment.

5. At the center of the matter appears to be a draft share sale agreement that IFC and Mr. Osseiran were negotiating for the purchase of the shares, which is attached to Mr. Osseiran's declaration as Exhibit C along with two draft bank guarantees. On its first page the draft share sale agreement bears the following conspicuous legend: **"This draft document is not a contract or an offer to enter into a contract. Only the document as executed by IFC and Mr. Osseiran will contain the terms that bind them. Until the document is executed by IFC and Mr. Osseiran, neither IFC nor Mr. Osseiran intends to be bound."** I also see in the emails attached to Mr. Osseiran's declaration as Exhibit A that both parties agreed in their emails that any agreement between them was subject to documentation. I understand that the share sale agreement was never executed by either Mr. Osseiran or IFC, and that the bank guarantees were never completed or executed either.

6. I have been asked for my opinion as to whether Mr. Osseiran is likely to prevail on Counts I and II of his Complaint if those claims were asserted under Lebanese law. Count I is a claim for breach of an alleged contract for sale of IFC's shares in MECG to Mr. Osseiran. Count II is a claim for "promissory estoppel" regarding the same shares.



7. Lebanese commercial law is based on the civil law system. Issues pertaining to commercial contracts, namely sale contracts, are governed by the Civil Law as per article 263 of the Commercial Code

8. Regarding Count I (the contract claim), according to the Lebanese law, a sale agreement is perfected when the two parties agree the nature and conditions of the agreement, its object and the price. (Article 388 C.O.C). However, when the parties have specifically agreed to give a special form to their agreement not required by the code, such as a written sale agreement, the sale agreement will not be perfected and will not have any effect between the parties unless the written agreement is finalized and executed by both parties. (Art. 220 C.O.C). In such circumstances, there is no binding or enforceable agreement between the parties.

9. In this case, it is apparent from the papers submitted by Mr. Osseiran that the parties required the conclusion of a written sale agreement before either would agree to be bound to the other. Since the parties did not complete their share sale agreement and did not complete the bank guarantees, and no party executed any of the documents, there is no contract between IFC and Mr. Osseiran under Lebanese law. Accordingly, his contract claim under Count I of his Complaint would fail if decided under Lebanese law.

10. Regarding his claim under Count II for "promissory estoppel", I understand this concept to require the enforcement of a promise even when there is no contract if the party seeking to enforce the promise took action in reliance on the promise to his detriment. Lebanese law does not recognize this concept independently from the law pertaining to contracts discussed in the foregoing paragraphs. Therefore, Mr. Osseiran's claim under any theory of "promissory estoppel" would also fail under Lebanese law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing opinion is true and correct to the best of my knowledge and belief.

Executed this 8th day of March, 2006 in Beirut, Lebanon.

_____
Sami Sader