# EXHIBIT F

Case 1:06-cv-00336-RWR    Document 8-7    Filed 03/10/2006    Page 1 of 6

```
                                                    1
 1              UNITED STATES DISTRICT COURT
                      FOR MARYLAND
 2
 3   ------------------------x
     GLOBE NUCLEAR SERVICES   :
 4   AND SUPPLY, LIMITED,     :
              Plaintiff       :
 5                            :
                              :
 6   vs                       : Civil Action:DKC-03-3339
                              :
 7                            :
     AO TECHSNABEXPORT,       :
 8        Defendant.          :
     ------------------------x
 9
10            Friday, September 10, 2004
              Greenbelt, Maryland
11
         The above-entitled action came on for a Motions
12   Proceeding before the HONORABLE ROGER W. TITUS, District
     Court Judge, in courtroom 2A, commencing at 9:42 a.m.
13
         THIS TRANSCRIPT REPRESENTS THE PRODUCT
14       OF AN OFFICIAL REPORTER, ENGAGED BY
         THE COURT, WHO HAS PERSONALLY CERTIFIED
15       THAT IT REPRESENTS THE TESTIMONY
         AND PROCEEDINGS OF THE CASE AS RECORDED
16       AND REQUESTED BY COUNSEL.
17   APPEARANCES:
18   On behalf of the Plaintiff:
19   ANDREW KELLY FLETCHER, Esquire
     JOHN CHARLES HANSBERRY, Esquire
20
     On behalf of the Defendant:
21
     FRANCIS A. VASQUEZ, JR, Esquire
22   PAUL F. STONE, Esquire
23
24   Tracy Rae Dunlap, RPR      (301) 344-3912
     official Court Reporter
25
```

```
                                                    2
 1                   I N D E X
 2
 3
 4
 5
 ...
                         FILED
              2004 SEP 24 A 10:52
              CLERK'S OFFICE
              AT GREENBELT
              BY_____ DEPUTY
              U.S. DISTRICT COURT
              DISTRICT OF MARYLAND
 ...
24                    Page
25   Reporter's Certificate        98
```

```
                                                    3
 1     THE CLERK:  The matter now pending before this
 2 court is civil docket number DKC-03-3339; Globe Nuclear
 3 Services and Supply, GNSS Limited versus AO
 4 Techsnabexport.
 5     The matter now comes before the court for motions
 6 hearing.
 7     Counsel, please identify yourselves for the record.
 8     MR. FLETCHER:  Andrew Fletcher for GNSS.
 9     MR. HANSBERRY:  John Hansberry for GNSS.
10     MR. VASQUEZ:  Frank Vasquez for TENEX.
11     MS. IRB:  Nicole Irb for TENEX.
12     MR. STONE:  Paul Stone for TENEX.
13     THE COURT:  Good morning.
14     Counsel, yesterday we were contacted and told there
15 was going to be a reply memo filed, and we stayed here
16 and waited for it until 7 o'clock and we didn't get it,
17 and now I see at 12:54 a.m. another memo was filed.
18     Now, do both sides have this memo?
19     MR. VASQUEZ:  Your Honor, we just received this
20 memo this morning.  I really haven't had --
21     THE COURT:  I want to make -- it would have been
22 nice, because we made repeated phone calls to find out
23 what the status of the memo was, and nobody called us
24 back to tell us it was not coming until 12:54 a.m.
25     We've got it now, but I'm going to tell you I first
```

```
                                                    4
 1 got a glance at this at 9:15, so I will not profess to
 2 have fully digested what I got that close to a hearing.
 3     MR. FLETCHER:  I apologize, Your Honor, that was my
 4 fault.  I was not aware the court had called.  I was in
 5 our Washington office writing it, so I apologize.
 6     MR. VASQUEZ:  Your Honor, we also called opposing
 7 counsel yesterday to ask if we were going to have an
 8 opposition to this memo, and I think this is a very
 9 large problem in this case, because last Friday, on the
10 phone, Judge Chasanow advised opposing counsel that if
11 he wished to submit a memo he should comply with the
12 local rules, specifically local Rule 1052(b), and that
13 requires a last minute filing -- that there are no last
14 minute filings unless you get prior court approval.
15 He's completely disregarded that rule.  I don't know
16 why, but I --
17     THE COURT:  I can assure you that it's not going to
18 get the degree of attention it would get if it was filed
19 in a timely manner.  We waited around for it, too, so
20 I'm not happy about that.
21     Well, for better or for worse, I'm your new judge
22 and I need to be brought up to speed on a couple of
23 things.  As we sit here today -- and I hope there's not
24 disagreement about this -- what is the status of the
25 arbitration?
```



121

1  not in front of the Fourth Circuit at all.
2  THE COURT: Okay. All right. Before the court
3  today are two motions, and the court has considered
4  them, the argument of counsel and the cases submitted to
5  the court, and the exhibits attached to the various
6  papers.
7  This is an action that was commenced in this court
8  by Globe Nuclear Services and Supply, GNSS, Limited
9  against AO Techsnabexport, called TENEX, and it was
10  commenced on November 21st 2003.
11  After securing -- and the complaint was joined by
12  the filing of a motion and brief in support of
13  injunctive relief which I will discuss in more detail in
14  a minute.
15  The plaintiff also appropriately applied on an ex
16  parte basis for court-directed service by facsimile or
17  international courier. Pursuant to that, service of
18  process was effected on the defendant.
19  The defendant, on December 2nd 2003, filed a motion
20  to quash service, which is one of the two motions before
21  the court today. Although the motion was styled as a
22  motion to quash service, it is nevertheless governed by
23  Rule 12 of the Federal Rules of Civil Procedure and
24  notwithstanding the name given to the motion, it raised
25  a number of defenses which did not simply limit

122

1  themselves to the question of the service of process but
2  rather addressed the questions relating to the immunity
3  of the defendant as a foreign state under the Foreign
4  Sovereign Immunities Act, raised questions concerning
5  the applicability of Executive Order 13159 to preclude
6  the court from acting in this matter, and raised issues
7  with respect to the immunity of the defendant to
8  attachment, and raised justiciability doctrines, such as
9  the Act of State Doctrine.
10  Judge Chasanow of this court, in a memorandum
11  opinion entered on December 16th 2003, granted the
12  motion. And while her memorandum opinion discussed the
13  various issues raised by the defendant in that motion,
14  she granted it on the basis that the defendant was
15  immune under the Foreign Sovereign Immunity Act.
16  That matter was appealed to the United States Court
17  of Appeals for the Fourth Circuit. In an opinion
18  decided July 22nd 2004, her decision with respect to the
19  immunity issue alone was reversed and the matter was
20  remanded to this court, the Fourth Circuit observing
21  that there were additional grounds relied upon by TENEX
22  in its motion, and that these matters would not be
23  addressed by the appellate court, but rather would be
24  remanded to this court.
25  And those include, as I mentioned, the question of

123

1  the effectiveness of the service of process, the
2  availability of judicial process against a foreign
3  state's assets, the Executive Order number 13159, and
4  justiciability doctrine such as the Act of State
5  Doctrine. Therefore, in that context, the motion is
6  back before the court for consideration, and the court
7  will address that motion.
8  The plaintiff has also filed a motion to schedule a
9  hearing on the parties' pending motions and for
10  expedited discovery, and seeks to be permitted to take
11  discovery in support of its motion for preliminary
12  injunction.
13  Let me address the last motion first. I conclude
14  that the motion for expedited discovery should be
15  denied. First, the arbitrators in Sweden have already
16  directed the defendant to provide certain discovery
17  information which relates to the ultimate decision of
18  this case, and I don't believe that it's appropriate for
19  the court to second guess the scope of discovery that's
20  already been determined to be appropriate by those who
21  have the responsibility to determine the merits of the
22  case.
23  Were I to conclude that there were some manner of
24  discovery necessary to present arguments to me on the
25  question of whether I should grant a preliminary

124

1  injunction, I might conclude otherwise. While some of
2  the stockbroker cases cited have some appealing
3  language, I don't know that I need to address whether
4  those cases are correct or not, because I conclude that
5  the matters that they're seeking are simply not germane
6  to the question of whether a preliminary injunction
7  should be granted.
8  We know now that all -- that number one, the
9  defendant has abrogated its agreement with or without
10  good cause, but we know that it's abrogated it and we
11  know that it has entered into contract with all or
12  substantially all of the existing 16 customers of
13  plaintiff.
14  The terms of those contracts are well known, and
15  the ability of the plaintiff to present any evidence and
16  testimony to me concerning the urgency of the situation
17  is well within the hands of the plaintiff to present
18  without wandering into a thicket of discovery in an area
19  that the arbitrators have declined to permit, and what
20  the arbitrators have permitted is extensive. They have
21  directed that the plaintiff be provided by the defendant
22  with copies of all the contracts they have executed,
23  which for the most part is almost all of the contracts.
24  So I conclude that there's no basis for expedited
25  discovery and I will deny the motion.

125

1  Then returning, now, to the motion to dismiss --
2  the motion to quash. It really is a motion filed under
3  Rule 12, and it raises more than just quashing service
4  of process, so I'm going treat it as a motion to dismiss
5  and then deal with the specific subjects that are
6  attacked by the motion.
7  The first question is service of process. In this
8  case it really can't be controverted that the defendant
9  received actual notice, retained eloquent and competent
10 United States counsel to represent it, who have done
11 quite nicely so far, including a trip to the Fourth
12 Circuit.
13 While the notion that perhaps some more time is
14 needed to ponder this case and take the full 60 days is
15 a tempting one, it is not tempting at this stage in a
16 case that was filed in November of 2003 and which has
17 involved a vigorous participation of counsel for TENEX
18 all the way from that point to the month of September.
19 There has been substantial compliance, although
20 obviously not perfect compliance with the requirements
21 of service of process. Applying, for example, the
22 ruling in of the Sixth Circuit in Sherer versus
23 Construcciones Aeronauticas, I conclude that TENEX
24 cannot show any prejudice resulting from the lack of
25 translation, for example. Obviously somebody at the

126

1  other end named Smirnoff understood it well enough to
2  promptly turn it over to a capable American law firm,
3  which has capably represented the defendant, and
4  therefore I conclude, as did the Sixth Circuit in
5  Sherer, that in light of TENEX's actual notice and lack
6  of prejudice, I am reluctant to allow procedure to
7  triumph over substance and therefore, to the extent that
8  the motion seeks to quash service of process, the motion
9  is denied.
10 That, then, brings us to the remaining issues
11 relating to issues of the other sections of the foreign
12 services -- Foreign Sovereign Immunities Act that were
13 not addressed by the Fourth Circuit. In addressing and
14 analyzing those provisions of the act, it is necessary
15 to return to the complaint and return to the motion for
16 injunctive relief and the proposed order submitted by
17 the plaintiff in connection with the motion for
18 preliminary injunction.
19 Both the complaint and the motion and the proposed
20 order ask that the court enter an injunction that would
21 restrain and enjoin the defendant, first, from removing
22 from the United States any quantity of HEU feed that
23 GNSS is entitled to purchase.
24 Secondly, as I've said, the remainder of it could
25 be called the "behave yourself" provisions, but they are

127

1  not merely, please comply with the contract. That is
2  very specific. It brings to light what are the
3  consequences of the court seeking to enforce the balance
4  of the injunctive relief requested because, for example,
5  it requests that the court obligate the defendant to
6  fulfill its obligations, including requiring TENEX to
7  exclusively allocate and assign to GNSS the quota amount
8  of $HEU_2$ feed through 2013, and also for TENEX to deliver
9  to TENEX quantities of $HEU_2$ feed through 2013 and
10 requiring GNSS to sell, is sold, or to be sold, has been
11 resold by GNSS to its customers.
12 It is obvious that the nature of the preliminary
13 injunctive relief being requested would clearly require
14 the court to assert its jurisdiction in a most dramatic
15 way over property. The question, then, is what
16 implications should be drawn from the court's conclusion
17 that the nature of the relief requested is relief
18 directed towards property?
19 Under section -- the Fourth Circuit mentioned
20 Section 1609 of Title 28, but the immunity discussed in
21 that section relates to the attachment at the conclusion
22 of a case. What is being sought here at the beginning
23 of a case, the totality of which must be viewed as
24 including not only what the court is being asked to do
25 but what the arbitrators are being asked to do is, I

128

1  conclude, governed by Section 1610 and specifically,
2  Section 1610(d), which addresses the question of
3  attachments prior to the entry of judgment.
4  I view this section as contemplating that the entry
5  of judgment involved would be what would happen if this
6  case did not have an arbitration proceeding going on and
7  I was asked to take jurisdiction over the breach of
8  contract action to a conclusion, and that's the judgment
9  being talked about.
10 So viewing the relatively unusual tandem of a
11 preliminary injunction case being hooked up to an
12 arbitration case, I view the request being made by the
13 plaintiff as being one for an attachment prior to the
14 entry of judgment. In this regard Section 1610(d) says
15 that the property of a foreign state, used for
16 commercial activity, shall not be immune from attachment
17 if -- and it has two specific requirements -- first the
18 foreign state has explicitly waived its immunity from
19 attachment prior to judgment, notwithstanding any
20 withdrawal of the waiver of the foreign state may
21 purport to effect, except in accordance with the terms
22 of the waiver; and
23 2. The purpose of the attachment is to secure
24 satisfaction of a judgment that has been or may
25 ultimately be entered into against the foreign state and

```
                                                        129
 1  not to obtain for jurisdiction.
 2     It is clear -- there's no controversy between the
 3  parties that there has not been an explicit waiver by
 4  the defendant of its immunity from attachment prior to
 5  judgment.  Therefore, I conclude that insofar as the
 6  motion before the court seeks dismissal of the
 7  complaint, because the relief that it seeks cannot be
 8  granted, should be acted upon favorably by the court.
 9     The same conclusion was reached by the United
10  States Court of Appeals for the Second Circuit in the S
11  & S Machinery Company versus Masin Export Import case in
12  which the court had concluded that a lower court had
13  properly dissolved an injunction which enjoined
14  negotiating letters of credit and noted that to have
15  continues the injunction could only have resulted in a
16  disingenuous flouting of the FSIA ban on pre-judgment
17  attachment of belonging to a foreign state.
18     The court went on to note the FSIA would become
19  meaningless if courts could eviserate its denomination
20  of injunctions against the use of property, rather than
21  as attachments of that property and concluded by saying
22  that the courts in this context may not grant by
23  injunction relief which they may not provide by
24  attachment injunction was properly dissolved.  The
25  injunction I'm being asked to grant in this case would,
```

```
                                                        130
 1  in effect, flout the immunity provided by the Foreign
 2  Sovereign Immunity Act and there is no other relief
 3  requested.
 4     Obviously the ultimate relief of damages is being
 5  requested in the arbitration proceedings.  The only
 6  thing that this court is being asked to do is to take
 7  actions which clearly affect property.  The defense has
 8  also raised questions with respect to the Act of State
 9  Doctrine and within the overall global notion of
10  justiciability, and I note that it is clear that the
11  government itself, as opposed to the defendant, has
12  provided in the exhibit that's been presented to the
13  court as Exhibit E to the filing under seal by the
14  defendant to the motion to schedule a hearing on the
15  pending motions and for discovery Attachment E, the
16  Russian Federation has issued an amendment to a
17  certificate which reduces the prior amounts allocated
18  for transfer of sell to GNSS from a substantial amount,
19  which will not be disclosed, to zero.  So it is obvious
20  that the Russian Federation itself has stepped in to
21  make it impossible, even if TENEX wanted to do so, to
22  ship the uranium commodities at issue in this case.
23     Accordingly, the Act of State Doctrine also stands
24  as a bar to the further pursuit of this case by the
25  plaintiff.
```

```
                                                        131
 1     Finally, in the relatively unique posture of this
 2  case right now, I conclude that even if I were to find
 3  somehow that this does not amount to a precluded
 4  pre-judgment attachment and that Executive Order 13159
 5  would not be implicated by it, I conclude that
 6  preliminary relief -- preliminary injunctive relief
 7  would no longer be appropriate at this late stage when
 8  the alleged harms cited in support of injunctive relief
 9  at the outset of the case simply no longer can be
10  remedied.
11     The contract has been breached; the new contracts
12  have been entered into with substantially all the
13  existing customers, and as sad and as unfortunate as
14  that may be, even if I were to reach the issue in a
15  later proceeding as to the granting of preliminary
16  injunctive relief, I do not believe I would have
17  anything left to grant relief with respect to.
18     And returning just one moment back to the motion to
19  -- I did not mention, as much as I should have, the
20  Executive Order number 13159 would also be implicated by
21  granting of injunctive relief in this case.  It is
22  clear, both in the express clause dealing with a
23  proposed preclusion of the removal of any quantity of
24  HEU feed, as well as in what I've called the "behave
25  yourself" clause that the injunctive relief requested
```

```
                                                        132
 1  would go to the heart of the very things that Executive
 2  Order number 13159 precludes attachment type of relief
 3  by a court.
 4     So for all of those reasons, the motion to quash,
 5  which I will restyle as a motion to dismiss for purposes
 6  of this ruling, is granted in part and denied in part,
 7  and I will enter a written order to this effect as a
 8  result of the action that I've taken with respect to the
 9  motion insofar as it relates to the jurisdictional
10  questions.
11     The case will be dismissed.
```

133

**CERTIFICATE**

I, Tracy Rae Dunlap, RPR, an Official Court Reporter for the United States District Court of Maryland, do hereby certify that I reported, by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the Motions Hearing Proceedings in the case of GLOBE NUCLEAR SERVICES AND SUPPLY, GNSS, LIMITED versus AO TECHSNABEXPORT, Civil Action Number DKC-03-3339, on September 10, 2004.

I further certify that the foregoing 132 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, of said proceedings.

In witness whereof, I have hereto subscribed my name, this 22nd day of September, 2004.

```
                    _____
                    TRACY RAE DUNLAP, RPR
                    OFFICIAL COURT REPORTER
```