UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| SALAH N. OSSEIRAN, | ) |
|    *Plaintiff*, | ) |
|    *v.* | ) Civil Action No. 1-06-CV-0336 RWR |
| INTERNATIONAL FINANCE CORPORATION, | ) |
|    *Defendant*. | ) |

**SECOND DECLARATION OF SALAH N. OSSEIRAN**

I, Salah N. Osseiran, declare as follows:

1. I am a citizen and resident of Lebanon. I am over 18 years of age and am competent to testify as to the statements made in this declaration, which is made in support of my Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction and in rebuttal to the declaration of Jan van Bilsen, Carmen Genovese and Mark Alloway submitted by defendant International Finance Corporation (IFC) in opposing that motion. Unless otherwise stated, I have personal knowledge of the acts related below, and if sworn as a witness, I would testify to those facts.

2. My negotiations and other discussion with IFC concerning my purchase of IFC's shares in the Middle East Capital Group (MECG) occurred primarily by e-mail and telephone with IFC representatives in various locations. In particular, I recall that van Bilsen was not always at his place of work in Dubai when he conferred with me. On at least two occasions, he was at IFC's headquarters in the District of Columbia. I also recall that Becher Atassi was included in my telephone conference with IFC on

December 19, 2005 and that he was then in IFC's headquarters in the District of Columbia.

3. During my negotiation with van Bilsen, starting on or before September 2005, he repeatedly assured me that he was "fully authorized" to sell IFC's MECG shares to me. Mr. van Bilsen also informed me that IFC would prefer not to sell its shares to an entity that intended to liquidate MECG, because such an outcome would be seen as a failure of IFC's objective of helping to establish successful enterprises.

4. I first informed van Bilsen that I intended to purchase a majority of MECG's stock early in my negotiations with him in late summer of 2005. The conversation was most likely conducted by telephone. At the same time I informed van Bilsen that MECG was exhausting its funds at a rate of US$120,000 per month. In late December 2005, I informed van Bilsen that I had commitments from the holders of a majority of MECG's shares to sell me their shares. This included IFC's commitment to sell me its shares.

5. In December 2005, I reported my impending purchase of IFC's shares with other MECG shareholders, but only after they asked me if it were true that I had agreed to purchase IFC's shares. Upon receiving such inquiries, I asked Jan van Bilsen if IFC had disclosed our impending transaction. He informed me that IFC's representative on MECG's Board of Directors, Daoud Khairallah, probably disclosed the impending transaction to MECG's chairman in explaining why he was resigning from the MECG board, that is, he was leaving the Board because IFC had sold its shares to me.

6. Van Bilsen also informed me at that time that, upon learning of IFC's impending sale to me, MECG's Chairman sent IFC a letter threatening to sue IFC if it consummated that transaction. My prior recollection that van Bilsen relayed this information to me during our December 19, 2005 telephone conference was mistaken.

He relayed that information to me during an earlier telephone conversation. In any event, I have just today received a copy of a similar letter that the Chairman sent to Barclays Capital, which confirms the substance of what van Bilsen told me. A true and correct copy of that letter is attached as **Exhibit G**. The copy that I have does not show the addressee or the date, but the letter was obviously addressed to Barclays Capital and I have been informed that it was dated December 18, 2005. I note that in this letter to Barclays, the Chairman implies that I was the source of his knowledge that IFC had sold its shares to me. I attribute this to his having assured his real source, Daoud Khairallah, that he would not reveal his identity.

7. I recently discovered in my files an email dated December 28, 2005 from Jan van Bilsen to MECG's secretary and other members of MECG's Board of Directors in which van Bilsen suggests various changes to the minutes of the Board's September 23, 2005 meeting. Among the changes sought by van Bilsen was one that would have documented a discussion in which the "meeting noted that shareholders are not obliged to follow the recommendation of the committee [appointed to explore alternatives for the company], as shareholders cannot be forced to sell by majority vote and are individually free to choose what to do with their shares." A true and correct copy of that email is attached as **Exhibit H**.

8. During the February 8, 2006 MECG shareholders' meeting, one shareholder asked IFC's representative, Carmen Genovese, whether IFC had sold its shares. Genovese responded that IFC had not sold its shares and did not consider itself bound to sell its shares to anyone. Before I could respond, MECG's CEO, Walid Mussalam, challenged Genovese's statement by informing the group that he was aware of internal IFC documents that asserted that IFC had sold its shares to me. In making this

3

allegation, Mr. Mussalam reminded those present that he had previously been an IFC employee and that he still had contacts within IFC.

9. At the beginning of the February 8, 2006 shareholders' meeting, I announced, as all shareholders were required to do, my percentage of ownership of MECG's stock, which was then 34.6 percent. Similarly, at the beginning of the subsequent February 16, 2006 shareholders' meeting, I announced that I then owned 41 percent of MECG's stock. IFC's Carmen Genovese attended both of these meetings.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in London, England on March 15, 2006

/s/ SALAH N. OSSEIRAN
Salah N. Osseiran

EXHIBIT G



**Middle East Capital Group Limited**
C.R. 30.031 Guernsey Channel Islands. Capital U.S. Dollars 30,575,000. Fully Paid.

In 1996 Barclays, via Barclays Capital, along with the IFC, the Bin Mahfouz family (former owners of the National Commercial Bank of Saudi Arabia) and a number of other prominent private investors from Saudi Arabia, Kuwait, the United Arab Emirates and Lebanon invested in the founding of Middle East Capital Group, (MECG) based in Beirut, to provide investment advisory and merchant banking services throughout the Middle East.

This letter is to advise you and Barclays that I have recently been informed by an individual that he has agreed with Barclays and with IFC to purchase their shareholdings in MECG. Neither I, as Chairman, nor the Board of Directors has received formal notice of any such transaction, nor was the Board advised that such a transaction was in progress. However, upon contacting IFC, I was informed that IFC and Barclays had, indeed, sold their interests.

While any transfer restrictions and pre-emption provisions of the MECG shareholder agreements lapsed in 2001, it is a matter of simple courtesy that the major private financial institutions sponsoring the formation of MECG would advise the Board in advance of any specific plans to relinquish ownership and transfer their shareholding. This was certainly the procedure even when responsibility for MECG was internally transferred just within the group, from Barclays Capital to Barclays Bank, some six years ago.

As you may know, after exhaustive but unsuccessful efforts to establish a sophisticated merchant banking activity serving Lebanon and the region, the Board of MECG agreed several months ago to seek the sale or liquidation of the Company, in accordance with the often-repeated wishes of Barclays and IFC. The decision of the Board to take this route was taken in the presence of and with the enthusiastic support of the IFC representative

BAC Center, Tower A, Justinian Street, Sanayeh, P.O. Box 113-7310, Beirut, Lebanon Tel: 961 1 738740 Fax: 961 1 738750 e-mail: mecg@mecg.com.lb



on the board. Further, this decision was referred to a special Shareholders' Meeting in which IFC and Barclays were also represented. The Shareholders, including the IFC and Barclays' representative, approved the recommendation of the Board to exit this investment either through sale or liquidation of the Company. They also authorized the Chairman to carry out the decision and report back to the Shareholders for final approval.

The process to seek buyers for the whole Company as a going concern commenced immediately after the Shareholders' decision. Three of the most reputable Lebanese financial institutions approached MECG expressing an interest in buying the Company. A schedule was fixed to enable each of the potential buyers to perform their own due diligence at a special data center established for this purpose by MECG in consultation with one of the premier international accounting firms.

As the first potential buyer was completing their due diligence, news of the sale by Barclays and IFC of their MECG shareholdings reached Beirut. One of the potential buyers immediately dropped out. The other two said emphatically that they would not be interested in making an offer to buy the Company if in fact the sale had occurred. In the meantime, other shareholders were being approached by the buyer who claimed that he had already bought a controlling majority in MECG. The MECG employees, staff and management have been, needless to say, stunned. Some Shareholders have threatened legal action against IFC and Barclays because the result of their action was enabling someone to mount a hostile takeover of MECG.

In summary, the non-institutional shareholders of MECG are dismayed. Many of these individuals are longtime clients and friends of Barclays. After nine years of extensive personal, financial, and reputational investment in MECG—in sharp contrast to the virtually non-existent support from IFC or Barclays during that time—when the Shareholders finally decided to exit the investment, with the full participation of IFC / Barclays representative, IFC and Barclays apparently sold their shares to an individual without any notice to the Board or any other shareholder, thus undermining the process previously agreed upon by all the shareholders.

MECG and its shareholders have already been damaged by the reported sale of the shares of Barclays and IFC. This damage may be mitigated in part by IFC's agreement to rescind their sale of MECG shares, provided that:

```
"If within a reasonable period of time, which should not exceed say
four months, no buyer is found for MECG as a going concern, a proposal
to liquidate the Company will be submitted to the shareholders as a
course of last resort. In the meantime all shareholders will maintain
all rights and privileges granted them by the Articles of MECG,
Guernsey and other applicable laws and regulations." (IFC communication
to MECG's Chairman.)
```

Now that IFC have decided to rescind the sale of their shares Barclays will be the sole selling institutional shareholder. This sale by Barclays, if not rescinded, will make it impossible for the other shareholders to extract a fair value out of what is left of their



original investment in MECG. These shareholders will hold Barclays plc responsible for the resulting damages.

Barclays is a great institution known for honesty, transparency and fair play. I urge you to instruct your management to follow IFC's lead and rescind the sale of your shares, on the same terms agreed to by IFC. This would certainly be consistent with your commitment to the shareholders of MECG. I believe that selling Barclays' shares with the other shareholders as a group (now including IFC) will give Barclays the same results or better while avoiding the unnecessary complications of a unilateral course of action.

The Board and Shareholders of MECG have been called to a meeting to discuss these issues on 29 December 2005. I would be grateful if you could send me your response before that date.

Sincerely yours,


Khalid Ali Alturki
Chairman of the Board
Middle East Capital Group

EXHIBIT H

**Blanton, Alex**

----- Original Message -----
**From:** Jan Van Bilsen
**To:** GORAN@cyberia.net.lb
**Cc:** Khalid Ali Alturki ; wmusallam@mecg.com.lb ; Noura Moussa ; 'Abdul-Elah A. Mukred ; amagroup@anet.net.sa ; Fadi Abboud ; Farouk Almoayyed ; Henry Sarkissian ; Khaled Juffali ; Bajamal Omar ; Salah Osseiran ; Yassine Jaber ; Zahi Khouri ; simon.leathes@barcap.com ; wcherif@ifc.org
**Sent:** Wednesday, December 28, 2005 5:55 PM
**Subject:** Re. MECG, Minutes of Board Meeting Sept. 23rd, 2005

Dear Dr. Dabbagh,

We refer to the draft minutes of the last Board meeting held on September 23, 2005. We have a few comments to complement the minutes on what was discussed, and request you to add the wording in italic below, and delete the words stroken through below from iem #4 of the minutes, prior to presenting them to Board for their appoval.

*1. The Meeting discussed a potential tax/social security liability by MECG in Lebanon as a result of its staff (employed by MECG Limited in Guernsey though) not having paid income tax and social security premium on their salaries. Mr. Mukred proposed to obtain legal opinions in writing by MECG's lawyer and by Deloitte on this matter.*

2. On item 4 "Future Options for MECG":
"The Chairman stated that, in his opinion, the model of the Company will not work, that, despite streneous efforts on his part and his colleagues, the Board did not perform to the expecations of the shareholders, that political developments did not help and that his recommendation, ~~shared by some major shareholders as the IFC and Barclays~~ was to find ways and means for shareholders to exit. *The Chairman reminded the Meeting that the two largest shareholders, IFC and Barclays had expressed in the past their desire to exit from this investment, and that he had received a fax from Barclays prior to the Meeting stating that they supported a discussion and decision towards an exit.* Mr. Mukred and Van Bilsen concurred with the opinion of the Chairman. Mr. Sarkissian said that the situation should be relayed to the shareholders and that he proposes to empower the Chairman to form a committee to discuss and evaluate different alternatives including moving the Company to the Gulf region and then report to the shareholders. *After a lengthy discussion and with the exception of Mr. Sarkissian,* the Board unanimously resolved to call an extraordinary meeting of the shareholders to be held on October 11, 2005 at 12:00 noon and to fix its agenda as follows:
1. Future Strategy of the Company.
2. Empower the Chairman to appoint a committee of the ~~major~~ shareholders to evaluate proposals for executing the exit strategy and to report to the shareholders for approval.
*The meeting noted that shareholders are not obliged to follow the recommendation of the committee, as shareholders cannot be*

*forced to sell by majority vote and are individually free to choose what to do with their shares".*

*3. Mr. Musallam expressed his surprise that the Board in its discussion on an exit didn't take his position into account, whereas he had made a personal commitment last year when accepting the job with regard to moving over to Lebanon with his family.*

Thank you and kind regards,
Jan van Bilsen

**"Noura Moussa" <nmoussa@mecg.com.lb>**

12/28/2005 12:40 PM

To "Walid Cherif" <wcherif@ifc.org>
cc
Subject RE: Minutes of the Sep 23rd Board Meeting

Dear Mr. Cherif,

Please find attached the Minutes of Meetings of the Board Meeting held on September 23, 2005 as per your request.

Merry Christmas and happy New Year.

Noura Moussa

3/14/2006