# IFC EXHIBIT C



INTERNATIONAL FINANCE CORPORATION

# Articles of Agreement

*(As amended through April 28, 1993)*

Washington, D.C.

# INTERNATIONAL FINANCE CORPORATION
## ARTICLES OF AGREEMENT
*(As amended through April 28, 1993)*

### Table of Contents

**Introductory Article**    *1*

**Article I**    **Purpose**    *1*

**Article II**    **Membership and Capital**    *1*

| | | |
|---|---|---|
| Section 1 | Membership | *1* |
| Section 2 | Capital Stock | *1* |
| Section 3 | Subscriptions | *2* |
| Section 4 | Limitation on Liability | *2* |
| Section 5 | Restriction on Transfers and Pledges of Shares | *2* |

**Article III**    **Operations**    *2*

| | | |
|---|---|---|
| Section 1 | Financing Operations | *2* |
| Section 2 | Forms of Financing | *3* |
| Section 3 | Operational Principles | *3* |
| Section 4 | Protection of Interests | *3* |
| Section 5 | Applicability of Certain Foreign Exchange Restrictions | *3* |
| Section 6 | Miscellaneous Operations | *4* |
| Section 7 | Valuation of Currencies | *4* |
| Section 8 | Warning to be Placed on Securities | *4* |
| Section 9 | Political Activity Prohibited | *4* |

**Article IV**    **Organization and Management**    *4*

| | | |
|---|---|---|
| Section 1 | Structure of the Corporation | *4* |
| Section 2 | Board of Governors | *5* |
| Section 3 | Voting | *5* |
| Section 4 | Board of Directors | *5* |
| Section 5 | Chairman, President and Staff | *6* |
| Section 6 | Relationship to the Bank | *6* |
| Section 7 | Relations with other International Organizations | *6* |
| Section 8 | Location of Offices | *6* |
| Section 9 | Depositories | *7* |
| Section 10 | Channel of Communication | *7* |
| Section 11 | Publication of Reports and Provision of Information | *7* |
| Section 12 | Dividends | *7* |

**Article V**    **Withdrawal; Suspension of Membership; Suspension of Operations**    *7*

| | | |
|---|---|---|
| Section 1 | Withdrawal by Members | *7* |
| Section 2 | Suspension of Membership | *7* |
| Section 3 | Suspension or Cessation of Membership in the Bank | *7* |
| Section 4 | Rights and Duties of Governments Ceasing to be Members | *8* |
| Section 5 | Suspension of Operations and Settlement of Obligations | *8* |

**Article VI**　　　**Status, Immunities and Privileges**　　9

　　　　Section 1　　　Purposes of Articles　　9
　　　　Section 2　　　Status of the Corporation　　9
　　　　Section 3　　　Position of the Corporation with Regard to Judicial Process　　9
　　　　Section 4　　　Immunity of Assets from Seizure　　9
　　　　Section 5　　　Immunity of Archives　　9
　　　　Section 6　　　Freedom of Assets from Restrictions　　9
　　　　Section 7　　　Privilege for Communications　　9
　　　　Section 8　　　Immunities and Privileges of Officers and Employees　　10
　　　　Section 9　　　Immunities from Taxation　　10
　　　　Section 10　　Application of Article　　10
　　　　Section 11　　Waiver　　10

**Article VII**　　　**Amendments**　　11

**Article VIII**　　**Interpretation and Arbitration**　　11

**Article IX**　　　**Final Provisions**　　11

　　　　Section 1　　　Entry into Force　　11
　　　　Section 2　　　Signature　　12
　　　　Section 3　　　Inauguration of the Corporation　　12

**Schedule A**　　　**Subscriptions to Capital Stock of the International Finance Corporation**　　13

iv

# INTERNATIONAL FINANCE CORPORATION

## ARTICLES OF AGREEMENT

### *(As amended through April 28, 1993)*

The Governments on whose behalf this Agreement is signed agree as follows:

## INTRODUCTORY ARTICLE

The International Finance Corporation (hereinafter called the Corporation) is established and shall operate in accordance with the following provisions:

## ARTICLE I

### Purpose

The purpose of the Corporation is to further economic development by encouraging the growth of productive private enterprise in member countries, particularly in the less developed areas, thus supplementing the activities of the International Bank for Reconstruction and Development (hereinafter called the Bank). In carrying out this purpose, the Corporation shall:

(i)   in association with private investors, assist in financing the establishment, improvement and expansion of productive private enterprises which would contribute to the development of its member countries by making investments, without guarantee of repayment by the member government concerned, in cases where sufficient private capital is not available on reasonable terms;

(ii)   seek to bring together investment opportunities, domestic and foreign private capital, and experienced management; and

(iii)   seek to stimulate, and to help create conditions conducive to, the flow of private capital, domestic and foreign, into productive investment in member countries.

The Corporation shall be guided in all its decisions by the provisions of this Article.

## ARTICLE II

### Membership and Capital

Section 1.   *Membership*

(a)   The original members of the Corporation shall be those members of the Bank listed in Schedule A hereto which shall, on or before the date specified in Article IX, Section 2 (c), accept membership in the Corporation.

(b)   Membership shall be open to other members of the Bank at such times and in accordance with such terms as may be prescribed by the Corporation.

Section 2.   *Capital Stock*

(a)   The authorized capital stock of the Corporation shall be $100,000,000, in terms of United States dollars.[1]

(b)   The authorized capital stock shall be divided into 100,000 shares having a par value of one thousand United States dollars each. Any such shares not initially subscribed by original members shall be available for subsequent subscription in accordance with Section 3 (d) of this Article.

(c)   The amount of capital stock at any time authorized may be increased by the Board of Governors as follows:

---

1. *As of December 10, 1992, the authorized capital stock of the Corporation had been increased to $2,450,000,000 divided into 2,450,000 of shares of $1,000 each.*

(i)    by a majority of the votes cast, in case such increase is necessary for the purpose of issuing shares of capital stock on initial subscription by members other than original members, provided that the aggregate of any increases authorized pursuant to this subparagraph shall not exceed 10,000 shares;

(ii)   in any other case, by a four-fifths majority of the total voting power.[2]    *Amended April 28, 1993*

(d)    In case of an increase authorized pursuant to paragraph (c) (ii) above, each member shall have a reasonable opportunity to subscribe, under such conditions as the Corporation shall decide, to a proportion of the increase of stock equivalent to the proportion which its stock theretofore subscribed bears to the total capital stock of the Corporation, but no member shall be obligated to subscribe to any part of the increased capital.

(e)    Issuance of shares of stock, other than those subscribed either on initial subscription or pursuant to paragraph (d) above, shall require a three-fourths majority of the total voting power.

(f)    Shares of stock of the Corporation shall be available for subscription only by, and shall be issued only to, members.

SECTION 3.    *Subscriptions*

(a)    Each original member shall subscribe to the number of shares of stock set forth opposite its name in Schedule A. The number of shares of stock to be subscribed by other members shall be determined by the Corporation.

(b)    Shares of stock initially subscribed by original members shall be issued at par.

(c)    The initial subscription of each original member shall be payable in full within 30 days after either the date on which the Corporation shall begin operations pursuant to Article IX, Section 3 (b), or the date on which such original member becomes a member, whichever shall be later, or at such date thereafter as the Corporation shall determine. Payment shall be made in gold or United States dollars in response to a call by the Corporation which shall specify the place or places of payment.

(d)    The price and other terms of subscription of shares of stock to be subscribed, otherwise than on initial subscription by original members, shall be determined by the Corporation.

SECTION 4.    *Limitation on Liability*

No member shall be liable, by reason of its membership, for obligations of the Corporation.

SECTION 5.    *Restriction on Transfers and Pledges of Shares*

Shares of stock shall not be pledged or encumbered in any manner whatever, and shall be transferable only to the Corporation.

# ARTICLE III

## Operations

SECTION 1.    *Financing Operations*

The Corporation may make investments of its funds in productive private enterprises in the territories of its members. The existence of a government or other public interest in such an enterprise shall not necessarily preclude the Corporation from making an investment therein.

---

2. *Original Text:*
   *(ii) in any other case, by a three-fourths majority of the total voting power.*

SECTION 2.    *Forms of Financing* [3]

*Amended*<br>*September 21, 1961*

The Corporation may make investments of its funds in such form or forms as it may deem appropriate in the circumstances.

SECTION 3.    *Operational Principles*

The operations of the Corporation shall be conducted in accordance with the following principles:

(i)    the Corporation shall not undertake any financing for which in its opinion sufficient private capital could be obtained on reasonable terms;

(ii)    the Corporation shall not finance an enterprise in the territories of any member if the member objects to such financing;

(iii)    the Corporation shall impose no conditions that the proceeds of any financing by it shall be spent in the territories of any particular country;

(iv)    the Corporation shall not assume responsibility for managing any enterprise in which it has invested and shall not exercise voting rights for such purpose or for any other purpose which, in its opinion, properly is within the scope of managerial control; [4]

*Amended*<br>*September 21, 1961*

(v)    the Corporation shall undertake its financing on terms and conditions which it considers appropriate, taking into account the requirements of the enterprise, the risks being undertaken by the Corporation and the terms and conditions normally obtained by private investors for similar financing;

(vi)    the Corporation shall seek to revolve its funds by selling its investments to private investors whenever it can appropriately do so on satisfactory terms;

(vii)    the Corporation shall seek to maintain a reasonable diversification in its investments.

SECTION 4.    *Protection of Interests*

Nothing in this Agreement shall prevent the Corporation, in the event of actual or threatened default on any of its investments, actual or threatened insolvency of the enterprise in which such investment shall have been made, or other situations which, in the opinion of the Corporation, threaten to jeopardize such investment, from taking such action and exercising such rights as it may deem necessary for the protection of its interests.

SECTION 5.    *Applicability of Certain Foreign Exchange Restrictions*

Funds received by or payable to the Corporation in respect of an investment of the Corporation made in any member's territories pursuant to Section 1 of this Article shall not be free, solely by reason of any provision of this Agreement, from generally applicable foreign exchange restrictions, regulations and controls in force in the territories of that member.

---

3. *Original text:*
(a) *The Corporation's financing shall not take the form of investments in capital stock. Subject to the foregoing, the Corporation may make investments of its funds in such form or forms as it may deem appropriate in the circumstances, including (but without limitation) investments according to the holder thereof the right to participate in earnings and the right to subscribe to, or to convert the investment into, capital stock.*
(b) *The Corporation shall not itself exercise any right to subscribe to, or to convert any investment into, capital stock.*

4. *Original text:*
(iv) *The Corporation shall not assume responsibility for managing any enterprise in which it has invested;*

3

SECTION 6.     *Miscellaneous Operations*

In addition to the operations specified elsewhere in this Agreement, the Corporation shall have the power to:

(i)     borrow funds, and in that connection to furnish such collateral or other security therefor as it shall determine; provided, however, that before making a public sale of its obligations in the markets of a member, the Corporation shall have obtained the approval of that member and of the member in whose currency the obligations are to be denominated; if and so long as the Corporation shall be indebted on loans from or guaranteed by the Bank, the total amount outstanding of borrowings incurred or guarantees given by the Corporation shall not be increased if, at the time or as a result thereof, the aggregate amount of debt (including the guarantee of any debt) incurred by the Corporation from any source and then outstanding shall exceed an amount equal to four times its unimpaired subscribed capital and surplus;[5]

(ii)     invest funds not needed in its financing operations in such obligations as it may determine and invest funds held by it for pension or similar purposes in any marketable securities, all without being subject to the restrictions imposed by other sections of this Article;

(iii)     guarantee securities in which it has invested in order to facilitate their sale;

(iv)     buy and sell securities it has issued or guaranteed or in which it has invested;

(v)     exercise such other powers incidental to its business as shall be necessary or desirable in furtherance of its purposes.

SECTION 7.     *Valuation of Currencies*

Whenever it shall become necessary under this Agreement to value any currency in terms of the value of another currency, such valuation shall be as reasonably determined by the Corporation after consultation with the International Monetary Fund.

SECTION 8.     *Warning to be Placed on Securities*

Every security issued or guaranteed by the Corporation shall bear on its face a conspicuous statement to the effect that it is not an obligation of the Bank or, unless expressly stated on the security, of any government.

SECTION 9.     *Political Activity Prohibited*

The Corporation and its officers shall not interfere in the political affairs of any member; nor shall they be influenced in their decisions by the political character of the member or members concerned. Only economic considerations shall be relevant to their decisions, and these considerations shall be weighed impartially in order to achieve the purposes stated in this Agreement.

## ARTICLE IV

### Organization and Management

SECTION 1.     *Structure of the Corporation*

The Corporation shall have a Board of Governors, a Board of Directors, a Chairman of the Board of Directors, a President and such other officers and staff to perform such duties as the Corporation may determine.

---

5. *Last clause added by amendment effective September 1, 1965.*

4

SECTION 2.    *Board of Governors*

(a)    All the powers of the Corporation shall be vested in the Board of Governors.

(b)    Each Governor and Alternate Governor of the Bank appointed by a member of the Bank which is also a member of the Corporation shall *ex officio* be a Governor or Alternate Governor, respectively, of the Corporation. No Alternate Governor may vote except in the absence of his principal. The Board of Governors shall select one of the Governors as Chairman of the Board of Governors. Any Governor or Alternate Governor shall cease to hold office if the member by which he was appointed shall cease to be a member of the Corporation.

(c)    The Board of Governors may delegate to the Board of Directors authority to exercise any of its powers, except the power to:

(i)    admit new members and determine the conditions of their admission;

(ii)    increase or decrease the capital stock;

(iii)    suspend a member;

(iv)    decide appeals from interpretations of this Agreement given by the Board of Directors;

(v)    make arrangements to cooperate with other international organizations (other than informal arrangements of a temporary and administrative character);

(vi)    decide to suspend permanently the operations of the Corporation and to distribute its assets;

(vii)    declare dividends;

(viii)    amend this Agreement.

(d)    The Board of Governors shall hold an annual meeting and such other meetings as may be provided for by the Board of Governors or called by the Board of Directors.

(e)    The annual meeting of the Board of Governors shall be held in conjunction with the annual meeting of the Board of Governors of the Bank.

(f)    A quorum for any meeting of the Board of Governors shall be a majority of the Governors, exercising not less than two-thirds of the total voting power.

(g)    The Corporation may by regulation establish a procedure whereby the Board of Directors may obtain a vote of the Governors on a specific question without calling a meeting of the Board of Governors.

(h)    The Board of Governors, and the Board of Directors to the extent authorized, may adopt such rules and regulations as may be necessary or appropriate to conduct the business of the Corporation.

(i)    Governors and Alternate Governors shall serve as such without compensation from the Corporation.

SECTION 3.    *Voting*

(a)    Each member shall have two hundred fifty votes plus one additional vote for each share of stock held.

(b)    Except as otherwise expressly provided, all matters before the Corporation shall be decided by a majority of the votes cast.

SECTION 4.    *Board of Directors*

(a)    The Board of Directors shall be responsible for the conduct of the general operations of the Corporation, and for this purpose shall exercise all the powers given to it by this Agreement or delegated to it by the Board of Governors.

(b)    The Board of Directors of the Corporation shall be composed *ex officio* of each Executive Director of the Bank who shall have been either (i) appointed by a member of the Bank which is also a member of the Corporation, or (ii) elected in an election in which the votes of at least one member of the Bank which is also a member of the Corporation shall have counted toward his election. The Alternate to each such Executive Director of the

Bank shall *ex officio* be an Alternate Director of the Corporation. Any Director shall cease to hold office if the member by which he was appointed, or if all the members whose votes counted toward his election, shall cease to be members of the Corporation.

(c)   Each Director who is an appointed Executive Director of the Bank shall be entitled to cast the number of votes which the member by which he was so appointed is entitled to cast in the Corporation. Each Director who is an elected Executive Director of the Bank shall be entitled to cast the number of votes which the member or members of the Corporation whose votes counted toward his election in the Bank are entitled to cast in the Corporation. All the votes which a Director is entitled to cast shall be cast as a unit.

(d)   An Alternate Director shall have full power to act in the absence of the Director who shall have appointed him. When a Director is present, his Alternate may participate in meetings but shall not vote.

(e)   A quorum for any meeting of the Board of Directors shall be a majority of the Directors exercising not less than one-half of the total voting power.

(f)   The Board of Directors shall meet as often as the business of the Corporation may require.

(g)   The Board of Governors shall adopt regulations under which a member of the Corporation not entitled to appoint an Executive Director of the Bank may send a representative to attend any meeting of the Board of Directors of the Corporation when a request made by, or a matter particularly affecting, that member is under consideration.

SECTION 5.    *Chairman, President and Staff*

(a)   The President of the Bank shall be *ex officio* Chairman of the Board of Directors of the Corporation, but shall have no vote except a deciding vote in case of an equal division. He may participate in meetings of the Board of Governors but shall not vote at such meetings.

(b)   The President of the Corporation shall be appointed by the Board of Directors on the recommendation of the Chairman. The President shall be chief of the operating staff of the Corporation. Under the direction of the Board of Directors and the general supervision of the Chairman, he shall conduct the ordinary business of the Corporation and under their general control shall be responsible for the organization, appointment and dismissal of the officers and staff. The President may participate in meetings of the Board of Directors but shall not vote at such meetings. The President shall cease to hold office by decision of the Board of Directors in which the Chairman concurs.

(c)   The President, officers and staff of the Corporation, in the discharge of their offices, owe their duty entirely to the Corporation and to no other authority. Each member of the Corporation shall respect the international character of this duty and shall refrain from all attempts to influence any of them in the discharge of their duties.

(d)   Subject to the paramount importance of securing the highest standards of efficiency and of technical competence, due regard shall be paid, in appointing the officers and staff of the Corporation, to the importance of recruiting personnel on as wide a geographical basis as possible.

SECTION 6.    *Relationship to the Bank*

(a)   The Corporation shall be an entity separate and distinct from the Bank and the funds of the Corporation shall be kept separate and apart from those of the Bank.[6] The provisions of this Section shall not prevent the Corporation from making arrangements with the Bank regarding facilities, personnel and services and arrangements for reimbursement of administrative expenses paid in the first instance by either organization on behalf of the other.

*Amended
September 1, 1965*

(b)   Nothing in this Agreement shall make the Corporation liable for the acts or obligations of the Bank, or the Bank liable for the acts or obligations of the Corporation.

SECTION 7.    *Relations with other International Organizations*

The Corporation, acting through the Bank, shall enter into formal arrangements with the United Nations and may enter into such arrangements with other public international organizations having specialized responsibilities in related fields.

---

6. *Original Text included the following: "The Corporation shall not lend to or borrow from the Bank."*

SECTION 8.    *Location of Offices*

The principal office of the Corporation shall be in the same locality as the principal office of the Bank. The Corporation may establish other offices in the territories of any member.

SECTION 9.    *Depositories*

Each member shall designate its central bank as a depository in which the Corporation may keep holdings of such member's currency or other assets of the Corporation or, if it has no central bank, it shall designate for such purpose such other institution as may be acceptable to the Corporation.

SECTION 10.    *Channel of Communication*

Each member shall designate an appropriate authority with which the Corporation may communicate in connection with any matter arising under this Agreement.

SECTION 11.    *Publication of Reports and Provision of Information*

(a)    The Corporation shall publish an annual report containing an audited statement of its accounts and shall circulate to members at appropriate intervals a summary statement of its financial position and a profit and loss statement showing the results of its operations.

(b)    The Corporation may publish such other reports as it deems desirable to carry out its purposes.

(c)    Copies of all reports, statements and publications made under this Section shall be distributed to members.

SECTION 12. *Dividends*

(a)    The Board of Governors may determine from time to time what part of the Corporation's net income and surplus, after making appropriate provision for reserves, shall be distributed as dividends.

(b)    Dividends shall be distributed *pro rata* in proportion to capital stock held by members.

(c)    Dividends shall be paid in such manner and in such currency or currencies as the Corporation shall determine.

# ARTICLE V

## Withdrawal; Suspension of Membership; Suspension of Operations

SECTION 1.    *Withdrawal by Members*

Any member may withdraw from membership in the Corporation at any time by transmitting a notice in writing to the Corporation at its principal office. Withdrawal shall become effective upon the date such notice is received.

SECTION 2.    *Suspension of Membership*

(a)    If a member fails to fulfill any of its obligations to the Corporation, the Corporation may suspend its membership by decision of a majority of the Governors, exercising a majority of the total voting power. The member so suspended shall automatically cease to be a member one year from the date of its suspension unless a decision is taken by the same majority to restore the member to good standing.

(b)    While under suspension, a member shall not be entitled to exercise any rights under this Agreement except the right of withdrawal, but shall remain subject to all obligations.

SECTION 3.    *Suspension or Cessation of Membership in the Bank*

Any member which is suspended from membership in, or ceases to be a member of, the Bank shall automatically be suspended from membership in, or cease to be a member of, the Corporation, as the case may be.

SECTION 4.    *Rights and Duties of Governments Ceasing to be Members*

(a)    When a government ceases to be a member it shall remain liable for all amounts due from it to the Corporation. The Corporation shall arrange for the repurchase of such government's capital stock as a part of the settlement of accounts with it in accordance with the provisions of this Section, but the government shall have no other rights under this Agreement except as provided in this Section and in Article VIII (c).

(b)    The Corporation and the government may agree on the repurchase of the capital stock of the government on such terms as may be appropriate under the circumstances, without regard to the provisions of paragraph (c) below. Such agreement may provide, among other things, for a final settlement of all obligations of the government to the Corporation.

(c)    If such agreement shall not have been made within six months after the government ceases to be a member or such other time as the Corporation and such government may agree, the repurchase price of the government's capital stock shall be the value thereof shown by the books of the Corporation on the day when the government ceases to be a member. The repurchase of the capital stock shall be subject to the following conditions:

(i)    payments for shares of stock may be made from time to time, upon their surrender by the government, in such installments, at such times and in such available currency or currencies as the Corporation reasonably determines, taking into account the financial position of the Corporation;

(ii)    any amount due to the government for its capital stock shall be withheld so long as the government or any of its agencies remains liable to the Corporation for payment of any amount and such amount may, at the option of the Corporation, be set off, as it becomes payable, against the amount due from the Corporation;

(iii)    if the Corporation sustains a net loss on the investments made pursuant to Article III, Section 1, and held by it on the date when the government ceases to be a member, and the amount of such loss exceeds the amount of the reserves provided therefor on such date, such government shall repay on demand the amount by which the repurchase price of its shares of stock would have been reduced if such loss had been taken into account when the repurchase price was determined.

(d)    In no event shall any amount due to a government for its capital stock under this Section be paid until six months after the date upon which the government ceases to be a member. If within six months of the date upon which any government ceases to be a member the Corporation suspends operations under Section 5 of this Article, all rights of such government shall be determined by the provisions of such Section 5 and such government shall be considered still a member of the Corporation for purposes of such Section 5, except that it shall have no voting rights.

SECTION 5.    *Suspension of Operations and Settlement of Obligations*

(a)    The Corporation may permanently suspend its operations by vote of a majority of the Governors exercising a majority of the total voting power. After such suspension of operations the Corporation shall forthwith cease all activities, except those incident to the orderly realization, conservation and preservation of its assets and settlement of its obligations. Until final settlement of such obligations and distribution of such assets, the Corporation shall remain in existence and all mutual rights and obligations of the Corporation and its members under this Agreement shall continue unimpaired, except that no member shall be suspended or withdraw and that no distribution shall be made to members except as in this Section provided.

(b)    No distribution shall be made to members on account of their subscriptions to the capital stock of the Corporation until all liabilities to creditors shall have been discharged or provided for and until the Board of Governors, by vote of a majority of the Governors exercising a majority of the total voting power, shall have decided to make such distribution.

(c)    Subject to the foregoing, the Corporation shall distribute the assets of the Corporation to members *pro rata* in proportion to capital stock held by them, subject, in the case of any member, to prior settlement of all outstanding claims by the Corporation against such member. Such distribution shall be made at such times, in such currencies, and in cash or other assets as the Corporation shall deem fair and equitable. The shares distrib-

uted to the several members need not necessarily be uniform in respect of the type of assets distributed or of the currencies in which they are expressed.

(d)  Any member receiving assets distributed by the Corporation pursuant to this Section shall enjoy the same rights with respect to such assets as the Corporation enjoyed prior to their distribution.

## ARTICLE VI

### Status, Immunities and Privileges

SECTION 1.     *Purposes of Articles*

To enable the Corporation to fulfill the functions with which it is entrusted, the status, immunities and privileges set forth in this Article shall be accorded to the Corporation in the territories of each member.

SECTION 2.     *Status of the Corporation*

The Corporation shall possess full juridical personality and, in particular, the capacity:

    (i)    to contract;

    (ii)   to acquire and dispose of immovable and movable property;

    (iii)  to institute legal proceedings.

SECTION 3.     *Position of the Corporation with Regard to Judicial Process*

Actions may be brought against the Corporation only in a court of competent jurisdiction in the territories of a member in which the Corporation has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities. No actions shall, however, be brought by members or persons acting for or deriving claims from members. The property and assets of the Corporation shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Corporation.

SECTION 4.     *Immunity of Assets from Seizure*

Property and assets of the Corporation, wherever located and by whomsoever held, shall be immune from search, requisition, confiscation, expropriation or any other form of seizure by executive or legislative action.

SECTION 5.     *Immunity of Archives*

The archives of the Corporation shall be inviolable.

SECTION 6.     *Freedom of Assets from Restrictions*

To the extent necessary to carry out the operations provided for in this Agreement and subject to the provisions of Article III, Section 5, and the other provisions of this Agreement, all property and assets of the Corporation shall be free from restrictions, regulations, controls and moratoria of any nature.

SECTION 7.     *Privilege for Communications*

The official communications of the Corporation shall be accorded by each member the same treatment that it accords to the official communications of other members.

9

SECTION 8.    *Immunities and Privileges of Officers and Employees*

All Governors, Directors, Alternates, officers and employees of the Corporation:

    (i)    shall be immune from legal process with respect to acts performed by them in their official capacity;

    (ii)    not being local nationals, shall be accorded the same immunities from immigration restrictions, alien registration requirements and national service obligations and the same facilities as regards exchange restrictions as are accorded by members to the representatives, officials, and employees of comparable rank of other members;

    (iii)    shall be granted the same treatment in respect of travelling facilities as is accorded by members to representatives, officials and employees of comparable rank of other members.

SECTION 9.    *Immunities from Taxation*

    (a)    The Corporation, its assets, property, income and its operations and transactions authorized by this Agreement, shall be immune from all taxation and from all customs duties. The Corporation shall also be immune from liability for the collection or payment of any tax or duty.

    (b)    No tax shall be levied on or in respect of salaries and emoluments paid by the Corporation to Directors, Alternates, officials or employees of the Corporation who are not local citizens, local subjects, or other local nationals.

    (c)    No taxation of any kind shall be levied on any obligation or security issued by the Corporation (including any dividend or interest thereon) by whomsoever held:

    (i)    which discriminates against such obligation or security solely because it is issued by the Corporation; or

    (ii)    if the sole jurisdictional basis for such taxation is the place or currency in which it is issued, made payable or paid, or the location of any office or place of business maintained by the Corporation.

    (d)    No taxation of any kind shall be levied on any obligation or security guaranteed by the Corporation (including any dividend or interest thereon) by whomsoever held:

    (i)    which discriminates against such obligation or security solely because it is guaranteed by the Corporation; or

    (ii)    if the sole jurisdictional basis for such taxation is the location of any office or place of business maintained by the Corporation.

SECTION 10.    *Application of Article*

Each member shall take such action as is necessary in its own territories for the purpose of making effective in terms of its own law the principles set forth in this Article and shall inform the Corporation of the detailed action which it has taken.

SECTION 11.    *Waiver*

The Corporation in its discretion may waive any of the privileges and immunities conferred under this Article to such extent and upon such conditions as it may determine.

## ARTICLE VII

### Amendments

(a)   This Agreement may be amended by vote of three-fifths of the Governors exercising eighty-five percent[7] of the total voting power. *Amended April 28, 1993*

(b)   Notwithstanding paragraph (a) above, the affirmative vote of all Governors is required in the case of any amendment modifying:

      (i)     the right to withdraw from the Corporation provided in Article V, Section 1;

      (ii)    the pre-emptive right secured by Article II, Section 2 (d);

      (iii)   the limitation on liability provided in Article II, Section 4.

(c)   Any proposal to amend this Agreement, whether emanating from a member, a Governor or the Board of Directors, shall be communicated to the Chairman of the Board of Governors who shall bring the proposal before the Board of Governors. When an amendment has been duly adopted, the Corporation shall so certify by formal communication addressed to all members. Amendments shall enter into force for all members three months after the date of the formal communication unless the Board of Governors shall specify a shorter period.

## ARTICLE VIII

### Interpretation and Arbitration

(a)   Any question of interpretation of the provisions of this Agreement arising between any member and the Corporation or between any members of the Corporation shall be submitted to the Board of Directors for its decision. If the question particularly affects any member of the Corporation not entitled to appoint an Executive Director of the Bank, it shall be entitled to representation in accordance with Article IV, Section 4 (g).

(b)   In any case where the Board of Directors has given a decision under (a) above, any member may require that the question be referred to the Board of Governors, whose decision shall be final. Pending the result of the reference to the Board of Governors, the Corporation may, so far as it deems necessary, act on the basis of the decision of the Board of Directors.

(c)   Whenever a disagreement arises between the Corporation and a country which has ceased to be a member, or between the Corporation and any member during the permanent suspension of the Corporation, such disagreement shall be submitted to arbitration by a tribunal of three arbitrators, one appointed by the Corporation, another by the country involved and an umpire who, unless the parties otherwise agree, shall be appointed by the President of the International Court of Justice or such other authority as may have been prescribed by regulation adopted by the Corporation. The umpire shall have full power to settle all questions of procedure in any case where the parties are in disagreement with respect thereto.

## ARTICLE IX

### Final Provisions

SECTION 1.     *Entry into Force*

This Agreement shall enter into force when it has been signed on behalf of not less than 30 governments whose subscriptions comprise not less than 75 percent of the total subscriptions set forth in Schedule A and when the instruments referred to in Section 2 (a) of this Article have been deposited on their behalf, but in no event shall this Agreement enter into force before October 1, 1955.

---

7. *Original Text:*
    *(a) This Agreement may be amended by vote of three-fifths of the Governors exercising four-fifths of the total voting power.*

SECTION 2.    *Signature*

(a)    Each government on whose behalf this Agreement is signed shall deposit with the Bank an instrument setting forth that it has accepted this Agreement without reservation in accordance with its law and has taken all steps necessary to enable it to carry out all of its obligations under this Agreement.

(b)    Each government shall become a member of the Corporation as from the date of the deposit on its behalf of the instrument referred to in paragraph (a) above except that no government shall become a member before this Agreement enters into force under Section 1 of this Article.

(c)    This Agreement shall remain open for signature until the close of business on December 31, 1956, at the principal office of the Bank on behalf of the governments of the countries whose names are set forth in Schedule A.

(d)    After this Agreement shall have entered into force, it shall be open for signature on behalf of the government of any country whose membership has been approved pursuant to Article II, Section 1 (b).

SECTION 3.    *Inauguration of the Corporation*

(a)    As soon as this Agreement enters into force under Section 1 of this Article the Chairman of the Board of Directors shall call a meeting of the Board of Directors.

(b)    The Corporation shall begin operations on the date when such meeting is held.

(c)    Pending the first meeting of the Board of Governors, the Board of Directors may exercise all the powers of the Board of Governors except those reserved to the Board of Governors under this Agreement.

DONE at Washington, in a single copy which shall remain deposited in the archives of the International Bank for Reconstruction and Development, which has indicated by its signature below its agreement to act as depository of this Agreement and to notify all governments whose names are set forth in Schedule A of the date when this Agreement shall enter into force under Article IX, Section 1 hereof.

## SCHEDULE A

### Subscriptions to Capital Stock of the International Finance Corporation

| Country | Number of Shares | Amount (in United States dollars) |
|---|---|---|
| Australia | 2,215 | 2,215,000 |
| Austria | 554 | 554,000 |
| Belgium | 2,492 | 2,492,000 |
| Bolivia | 78 | 78,000 |
| Brazil | 1,163 | 1,163,000 |
| Burma | 166 | 166,000 |
| Canada | 3,600 | 3,600,000 |
| Ceylon | 166 | 166,000 |
| Chile | 388 | 388,000 |
| China | 6,646 | 6,646,000 |
| Colombia | 388 | 388,000 |
| Costa Rica | 22 | 22,000 |
| Cuba | 388 | 388,000 |
| Denmark | 753 | 753,000 |
| Dominican Republic | 22 | 22,000 |
| Ecuador | 35 | 35,000 |
| Egypt | 590 | 590,000 |
| El Salvador | 11 | 11,000 |
| Ethiopia | 33 | 33,000 |
| Finland | 421 | 421,000 |
| France | 5,815 | 5,815,000 |
| Germany | 3,655 | 3,655,000 |
| Greece | 277 | 277,000 |
| Guatemala | 22 | 22,000 |
| Haiti | 22 | 22,000 |
| Honduras | 11 | 11,000 |
| Iceland | 11 | 11,000 |
| India | 4,431 | 4,431,000 |
| Indonesia | 1,218 | 1,218,000 |
| Iran | 372 | 372,000 |
| Iraq | 67 | 67,000 |
| Israel | 50 | 50,000 |
| Italy | 1,994 | 1,994,000 |
| Japan | 2,769 | 2,769,000 |
| Jordan | 33 | 33,000 |
| Lebanon | 50 | 50,000 |
| Luxembourg | 111 | 111,000 |
| Mexico | 720 | 720,000 |
| Netherlands | 3,046 | 3,046,000 |
| Nicaragua | 9 | 9,000 |

13

| Country | Number of Shares | Amount (in United States dollars) |
|---|---|---|
| Norway | 554 | 554,000 |
| Pakistan | 1,108 | 1,108,000 |
| Panama | 2 | 2,000 |
| Paraguay | 16 | 16,000 |
| Peru | 194 | 194,000 |
| | | |
| Philippines | 166 | 166,000 |
| Sweden | 1,108 | 1,108,000 |
| Syria | 72 | 72,000 |
| Thailand | 139 | 139,000 |
| Turkey | 476 | 476,000 |
| | | |
| Union of South Africa | 1,108 | 1,108,000 |
| United Kingdom | 14,400 | 14,400,000 |
| United States | 35,168 | 35,168,000 |
| Uruguay | 116 | 116,000 |
| Venezuela | 116 | 116,000 |
| Yugoslavia | 443 | 443,000 |
| **Total** | 100,000 | **$100,000,000** |





**THE WORLD BANK**

1818 H Street, N.W.

Washington, D.C. 20433 USA

Telephone: 202-477-1234

Facsimile: 202-477-6391

Telex: MCI 64145 WORLDBANK
       MCI 248423 WORLDBANK

World Wide Web: http://www.worldbank.org/

E-mail: books@worldbank.org



ISBN 0-8213-2464-0

**First printing May 1993**
**Fifth printing December 1999**