UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| SALAH N. OSSEIRAN,<br><br>    *Plaintiff,*<br><br>    *v.*<br><br>INTERNATIONAL FINANCE CORPORATION,<br><br>    *Defendant.* | Civil Action No. 1-06-CV-0336 RWR |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

The Court should reject defendant International Finance Corporation's motion to dismiss on grounds of international organization immunity, *forum non conveniens* and failure to state a claim. As shown below, IFC has waived its immunity with respect to the claims asserted here; IFC's preferred forum is not more convenient or suitable than this Court; and the allegations in the complaint are sufficient to support all of plaintiff's claims.

**PRELIMINARY STATEMENT**

Simultaneous with this Opposition to IFC's Motion, plaintiff is filing an Amended Complaint, in which plaintiff omits his claims for fraud and negligent misrepresentation and modifies slightly his other claims. Accordingly, plaintiff will not address IFC's motion to dismiss to the extent that it argues that plaintiff has failed to assert a claim for fraud or negligent misrepresentation.

**BACKGROUND**

Plaintiff Salah Osseiran is an international entrepreneur with business interests in the United States and throughout the world. For several years, he has been a minority

shareholder of Middle East Capital Group, a closely held merchant banking and financial institution incorporated in Guernsey, Channel Islands and having its principal place of business in Beirut, Lebanon.  Amended Complaint ¶ 1.  Defendant IFC is a member of the World Bank Organization having its principal place of business in the District of Columbia.  IFC is also a minority shareholder of MECG and has for several years been attempting to sell its MECG stock.  *Id.* ¶ 2.

In the summer of 2005, plainitff, believing that, if he were able to control MECG's activities, he could enhance the value of his and other shareholders' investment in the bank, which has consistently been unable to produce a profit.  He therefore decided to purchase additional shares of MECG with a view toward becoming its majority shareholder.  Toward this end, plaintiff approached IFC and another MECG shareholder, Barclays Capital, and proposed to purchase their MECG shares.  In November 2005, after months of negotiations, plaintiff and IFC, acting on its own behalf and on behalf of Barclays Capital, entered into an agreement wherein they agreed upon all material terms by which IFC and Barclays Capital would sell their MECG shares to plaintiff and to incorporate those terms into a standard stock purchase agreement, to be provided by IFC.  *Id.* ¶ 3.

In reliance upon that November agreement, plaintiff set aside the funds to pay the agreed-upon initial installment of the purchase price and obtain bank guarantees for the remainder of the purchase price.

In December 2005, IFC confirmed to a third party that it had sold its shares of MECG to plaintiff.  Also in December 2005, plaintiff, IFC and Barclays reached agreement upon the language of the formal stock purchase agreement provided by IFC, and plaintiff and Barclays proceeded to execute the formal agreement and consummate

plaintiff's purchase of Barclays' shares in January 2006. IFC, however, repeatedly postponed executing the purchase agreement, all the while promising plaintiff that it fully intended to complete the transaction as envisioned in the November agreement and the draft stock purchase agreement.

In reliance upon the November agreement and IFC's repeated promise that it would soon execute the formal stock purchase agreement, plaintiff proceeded to purchase a sufficient number of shares of MECG stock from other shareholders, including Barclays, so that his total holdings, after completion of the IFC transaction, would total at least 51 percent of the outstanding shares of MECG stock.

IFC's contrary intention did not become known to plaintiff until February 16, 2006 when IFC, at a meeting of MECG shareholders, actively solicited higher offers for its MECG stock and proposed a joint sale of stock by MECG shareholders other than plaintiff to a third party so as to assure that the third party, rather than plaintiff, would be the majority shareholder. On February 20, 2006, plaintiff learned that IFC had entered into an agreement with other MECG shareholders contemplating the joint sale of their MECG shares to a third party pursuant to a stock purchase agreement to be entered into no later than March 31, 2006.

In retrospect, it is clear that IFC not only reneged on its promise to sell its MECG stock to plaintiff, it also deceived plaintiff and abused his trust and confidence by stringing him along and inducing him to purchase other MECG shares, all the while conspiring with other MECG shareholders to solicit a higher price for their shares from a third party. The end result is that plaintiff, instead of achieving his objective of gaining control of MECG and a concomitant opportunity to turn it into a profitable

company, has increased his minority position in a money-losing company over which he has no control.

Additional facts, relevant to the specific claims in the complaint are recounted below in addressing IFC's motion to dismiss for failure to state a claim.

## ARGUMENT

None of the three grounds upon which defendant International Finance Corporation relies in its Motion to Dismiss—international organization immunity, *forum non conveniens* or failure to state a claim—is valid.  IFC has waived its immunity with respect to the claims asserted here.  No other forum is more convenient or suitable than this Court.  The complaint alleges legitimate claims for breach of contract, promissory estoppel and breach of confidentiality agreement.

### I. IFC Has Waived Its Immunity to the Claims Plaintiff Presents.

IFC claims to be immune from all forms of judicial process except to the extent that it has waived its immunity in the following provision of its Articles of Agreement:

> Actions may be brought against [IFC] only in a court of competent jurisdiction in the territories of a member in which the Corporation has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities.  No actions shall, however, be brought by members or persons acting for or deriving claims from members.  The property and assets of [IFC] shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Corporation.

Articles of Agreement of the International Finance Corporation, Art. VI, § 3 (May 25, 1955, *amended* April 28, 1993) 7 U.S.T. 2197.  This lawsuit falls within the scope of that waiver.

Speaking of identical language in the World Bank's Articles of Agreement, the Court of Appeals concluded, "When the language [quoted above] is approached from this

viewpoint [—the interrelationship between the functions of the Bank set forth in the Articles of Agreement and the underlying purposes of international immunities—] it is evident that the World Bank's members could only have intended to waive the Bank's immunity from suits by its debtors, creditors, bondholders, and those other potential plaintiffs to whom the Bank would have to subject itself to suit in order to achieve its chartered objectives." *Mendaro v. World Bank*, 717 F.2d 610, 615 (D.C. Cir. 1983); *accord Atkinson v. Inter-American Dev. Bank*, 156 F.3d 1335, 1338-39 (D.C. Cir. 1998) (construing identical language in the Articles of Agreement for the Inter-American Development Bank).

In rejecting a Title VII sexual harassment suit by an employee in *Mendaro* and a wage garnishment action in *Atkinson*, the court contrasted those suits "with suits based on commercial transactions with the outside world, where the benefits of a waiver would outweigh the costs...." *Atkinson*, 156 F.3d at 1338. In *Atkinson*, the Court further noted that in *Mendaro* it explained its previous decision in *Lutcher S.A. Celulose e Papel v. Inter-Am. Dev. Bank*, 382 F.2d 454 (D.C. Cir. 1967), as "holding that the Bank had waived suits by borrowers on the ground that such waiver 'would directly aid the Bank in attracting responsible borrowers.'" 156 F.3d at 1338, *quoting Mendaro*, 717 F.2d at 620.

In *Bro Tech Corp. v. European Bank for Reconstr. & Dev.*, 2000 U.S. Dist. LEXIS 17049, *14-15 (E.D. Pa. 2000), the court, applying the *Mendaro/Atkinson* "corresponding benefit test," concluded that identical language in the Articles of Agreement of the European Bank for Reconstruction and Development (EBRD) constituted a waiver of the Bank's immunity for suits by investors in the Bank's projects. Similarly, the Court of Appeals' corresponding-benefits test quite clearly would allow

suits, as here, by purchasers of IFC's equity investments. IFC's Articles require it to "revolve its funds by selling its investments to private investors whenever it can do so on satisfactory terms." IFC Articles Art. III, § 3 (vi). Thus IFC advances its ability to attract purchasers of its equity investments by permitting them to sue IFC for breach of contract and other IFC malfeasances. *Cf Bro Tech Corp.*, 2000 U.S. Dist. LEXIS 17049 at *15-16 ("in order to attract investors around the world, the EBRD must provide some sort of security to them, protecting the investors from unreasonable and arbitrary action by EBRD").

This lawsuit involves an agreement for just such a sale by IFC of one of its equity investments to a private investor. Permitting it to go forward would advance IFC's ability to attract such investors. Accordingly, this Circuit's corresponding-benefits test leads to the conclusion that IFC has waived its immunity to this lawsuit. IFC does not appear to contest the general proposition that it has waived immunity from suit by parties to enforceable agreements providing for the sale of its equity investments, but argues that the agreement here involved is not enforceable. Mem. 30. That, of course, is the question addressed by its argument that the complaint fails to state a claim upon which relief can be granted. In addressing IFC's argument, the Court must assume that the complaint alleges an enforceable agreement; should the Court determine otherwise, IFC's immunity argument will be moot.

## II.  Guernsey Is Not a More Convenient or Appropriate Forum.

IFC's fixation on Guernsey as a more convenient or appropriate forum is puzzling. Guernsey is not even an appropriate forum, much less a more convenient one. None of the parties or potential witnesses resides in, is incorporated in, or even has an office in Guernsey. None of the conduct addressed in the complaint occurred in Guernsey. None

of the communications addressed in the complaint originated in or was sent to Guernsey.[1]

The only potential connection of this case to Guernsey was IFC's contention that plaintiff's claims should be governed by Guernsey law.  That contention has already been rejected by the Court, which, in disposing of plaintiff's Motion for a Preliminary Injunction, concluded that plaintiff's claims are governed by District of Columbia law.[2]  Accordingly, IFC's only argument in favor of dismissing for *forum non conveniens* has already been rejected and its motion to dismiss on that basis must be denied.[3]

### III. The Amended Complaint Is Sufficient With Respect to Each of Plaintiff's Claims.

The Amended Complaint sets forth three counts: breach of the November 2005 stock sale agreement; promissory estoppel; and breach of the confidentiality agreement.  As shown below, each count states a claim upon which relief can be granted.[4]

---

[1] While MECG, the company whose stock is the subject of the agreement between plaintiff and IFC, is incorporated in Guernsey, neither its principal place of business nor its employees are in Guernsey.

[2] The transcript of the PI hearing was unavailable as of the time of filing of this Opposition.  Plaintiff will provide an appropriate cite upon receipt of the transcript.

[3] IFC correctly states that another forum can be an "adequate alternative forum" only if the defendant is amenable to process there.  IFC apparently is not amenable to process in Guernsey.  As IFC claims, it is immune from suit (and thus service of process) except to the extent that it has waived that immunity.  As explained in section I above, IFC has waived its immunity to this lawsuit in the United States.  The waiver is limited, however, to lawsuits brought in "a court of competent jurisdiction in *the territories of a member in which the Corporation has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities.*"  IFC Articles, Art. VI, § 3 (emphasis added).  IFC does not assert that Guernsey satisfies any of these criteria, and to the best of plaintiff's knowledge, it does not.

[4] Because the Court has already determined that plaintiff's claims are governed by District of Columbia law, plaintiff will limit this discussion to explaining why the complaint states valid claims under D.C. law.

**A. The Claim for Breach of the Parties' November Agreement Is Sufficient.**

The elements of a breach-of-contract claim are formation of the contract and its breach. *In re Papandreou*, 139 F.3d 247, 252 (D.C. Cir. 1998); *see also Dorocon, Inc. v. Burke*, 2004 U.S. Dist. LEXIS 29052, *31 (D.D.C. 2004).[5] There can be no doubt that plaintiff has adequately pleaded both of these elements. Plaintiff alleges that in November 2005 plaintiff and defendant IFC agreed to all of the material terms of a contract under which IFC would sell its shares of MECG to plaintiff. Amended Complaint ¶¶ 3 and 22. He also alleges that IFC breached that contract in February 2006, when it agreed to sell its MECG shares to a third party. *Id.* ¶¶ 8, 35-36.

IFC cannot deny that the Amended Complaint contains these allegations, as did the Original Complaint on which IFC's motion is based. Rather, it maintains (Mem. 17-21) that the evidence plaintiff has produced thus far does not definitively demonstrate that the parties intended to be bound by the contract or that they reached agreement on all material terms. It is true that a contract is valid and enforceable only if there is (1) agreement on all material terms; and (2) an intention of the parties to be bound. *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995). Plaintiff also recognizes that the Court found the evidence provided in support of plaintiff's Motion

---

[5] In some jurisdictions the essential elements of an action for breach of contract are: (1) formation of a contract between the parties; (2) performance by the plaintiff; (3) non-performance by the defendant; and (4) resulting damages to plaintiff. *See, e.g., Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246-1247 (11th Cir. 2002) (applying New York law); *cf. Ulliman Schutte Constr., LLC v. Emerson Process Mgmt. Power & Water Solutions*, 2006 U.S. Dist. LEXIS 14897 (D.D.C. 2006) (concluding that a breach of contract claim under Pennsylvania law has three elements: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages). Even if required under D.C. law, the additional elements would not change the result here. IFC does not suggest that the complaint fails to allege performance by plaintiff or resulting damages.

for a Preliminary Injunction insufficient to establish a binding contract. But plaintiff is not required to prove his case in the complaint, and this Court cannot dismiss the complaint just because IFC, or the Court, may doubt that plaintiff will be able to meet its burden of proof.

> The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (U.S. 1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). *Cf. Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511-14 (2002) (a plaintiff is not even required to plead all of the elements of a prima facie case).

The situation here is similar to that presented in *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 2006 U.S. Dist. LEXIS 16402 (S.D.N.Y. 2006), in which the court considered the defendant's assertion that plaintiff's motion to amend should be denied because the amended claim for breach of contract failed to state a valid claim. The court rejected the assertion, explaining,

> In order to state a breach of contract claim, "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." ... Here, the complaint contains numerous allegations that AMC "agreed" or "promised" to do various things, that plaintiff performed as required, that AMC breached these promises and agreements and that plaintiff was harmed as a result of AMC's breach. These allegations are sufficient to state a claim for breach of contract under either New York or California law.
>
> Furthermore, there is no requirement in the Federal Rules of Civil Procedure that the details of a breach of contract claim be pleaded with particularity. Instead, the short, plain notice rule of Fed.R.Civ.P. 8 applies. Therefore, plaintiff's general averments to certain promises by AMC and agreements

between the parties are sufficient to allege the first element of a breach of contract claim—the existence of an agreement.

2006 U.S. Dist. LEXIS 16402 at *18-19 (internal citations omitted). *See also Designers North Carpet, Inc. v. Mohawk Indus.*, 153 F. Supp. 2d 193, 197 (E.D.N.Y. 2001).

The United States District Court for the Eastern District of Virginia recently rejected a motion to dismiss under similar circumstances. In *Koken v. Aon Risk Servs.*, 2006 U.S. Dist. LEXIS 2649 (E.D. Va. 2006), the explained,

> [D]espite the lack of details contained in the Complaint's breach of contract allegations, the Court finds that Count One does state a claim sufficient to meet the liberally construed "notice" pleading requirements of Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Modern federal courts routinely explain that a complaint need be phrased only in general terms sufficient to put the defendants on notice as to the nature of the claims being asserted against them. After all, it is the function of discovery to fill in the details, and of trial to establish fully each element of the cause of action. The Complaint has met the requirements for pleading a breach of contract under Pennsylvania law. ... Granted, many questions undoubtedly remain as to the specifics of these allegations. The Court is satisfied, however, that these are the types of questions that could be answered through the discovery process.

2006 U.S. Dist. LEXIS 2649 at *9-10 (internal quotation marks and citations omitted).

The cases IFC cites, *Jack Baker, supra*, and *Novecon, Ltd. v. Bulgarian-American Enter. Fund*, 190 F.3d 556 (D.C. Cir. 1999), are not to the contrary. They were decided on motions for summary judgment, not motions to dismiss under Rule 12(b)(6). *Jack Baker*, 664 A.2d at 1237; *Novecon*, 190 F.3d at 563.[6] Here, plaintiff obtained and produced substantial evidence on the issues IFC raises in conjunction with his Motion for a Preliminary Injunction. Discovery will no doubt produce more. In any event, the

---

[6] This Court did dismiss a breach-of-contract claim pursuant to Rule 12 (b)(6) on grounds similar to those urged by IFC here in *In re Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 70-74 (D.D.C. 2003). There, however, the plaintiffs had pleaded facts and documents that conclusively demonstrated that the <u>oral</u> contract on which they relied was not definite and enforceable. Thus "the <u>complaint</u> demonstrate[d] that no facts could entitle the plaintiff to relief ...." 251 F. Supp. 2d at 72-73 (emphasis added).

pending motion to dismiss presents neither the time nor the occasion to resolve the issues of proof raised in IFC motion.[7]

### B. The Claim for Promissory Estoppel Is Sufficient.

Plaintiff agrees with IFC's assertion (Mem. 22) a claim of promissory estoppel must allege the existence of a promise that reasonably induced reliance on it and on which the promisee relied to his detriment. The courts will enforce such a promise if doing so will avoid injustice. *See* RESTATEMENT OF CONTRACTS § 90 ("a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise" (cited with approval in *Granfield v. Catholic Univ. of Am.*, 530 F.2d 1035, 1039 (D.C. Cir. 1976))). Plaintiff's claim meets these requirements.

The Promise. Wholly apart from the original promise to sell the MECG shares to plaintiff, the Amended Complaint alleges that on or about December 19, 2005, IFC suspended the parties' contract documentation activities, telling plaintiff that it still intended to consummate the deal, but needed more time to placate the chairman of MECG's board of directors, who was also an MECG shareholder. Amended Complaint ¶¶ 27, 33. From that time through February 8, 2006, IFC repeatedly deferred plaintiff's demands that the deal be closed, but continued to affirmatively represent to him that it would consummate the sale once it had satisfied itself that it could do so without

---

[7] Contrary to IFC's assertion (Mem. 2, 3 n.2, 17), plaintiff did not incorporate any documents into his complaint, by reference or otherwise. The emails and other documents to which IFC refers in its memorandum were submitted in conjunction with plaintiff's Motion for a Preliminary Injunction. Plaintiff does not deny that these documents may be considered by the Court in conjunction with IFC's Motion to Dismiss, but they cannot properly be treated as the only evidence that plaintiff will be able to present in support of its claims.

violating any obligation to other shareholders.  *Id.* ¶ 33.  IFC repudiated those promises on February 16, 2006, when IFC, along with other MECG shareholders, proposed to sell their MECG stock to a third party.  *Id.* ¶¶ 35-36.

<u>Reliance Induced by the Promise</u>.  The Amended Complaint further alleges that between December 19, 2005 and February 16, 2006, plaintiff, in reliance on its original contract with IFC and IFC's repeated promises that it would consummate that transaction in the near future, (a) set aside funds to pay the agreed-upon initial installment of the purchase price of IFC's MECG stock and obtain bank guarantees for the remainder of the purchase price and otherwise to pass up other opportunities to invest those funds and (b) purchased stock from other MECG shareholders, including Barclays, so that plaintiff's MECG holdings, after completion of the IFC transaction, would total 51 percent of all outstanding shares of MECG stock.  *Id.* ¶¶ 23, 34, 44.  IFC knew, when it made its affirmative representations to plaintiff that plaintiff would act in reliance on those representations to purchase additional shares of MECG stock in furtherance of his objective, known all along to IFC, of acquiring a majority of such stock.  *Id.* ¶ 41, 43.

IFC's motion addresses only one of its alleged promises.  The promissory estoppel claim is based only partially on the parties' November agreement; it is also based on IFC's separate December 2005 through February 2006 promises that, despite temporary problems, it would sell plaintiff its MECG shares on the terms agreed to in the November agreement.  IFC does not address these later promises and thus its arguments addressed to the November Agreement are not on point.

IFC's arguments are thus premature.  Just as it does in urging the Court to dismiss plaintiff's breach-of-contract claim, IFC relies on cases in which promissory estoppel

claims were dismissed on motions for summary judgment or after trial, not on motions to dismiss. *Building Servs. Co. v. AMTRAK*, 305 F. Supp. 2d 85, 87 (D.D.C. 2004) (summary judgment); *Granfield*, 530 F.2d at 1038 (D.C. Cir. 1976) (after trial; note reference to trial testimony); *Novecon, supra,* 190 F.3d at 563 (summary judgment); *Bender v. Design Store Corp.*, 404 A.2d 194, 194 (D.C. 1979) (summary judgment).

### C. The Claim for Breach of the Parties' Confidentiality Agreement Is Sufficient.

Plaintiff's claim for breach of the parties' confidentiality agreement is just another breach-of-contract claim. Like plaintiff's claim for breach of the November Agreement, his claim for breach of the confidentiality agreement passes muster here because it alleges the existence of an agreement and its breach by IFC. Specifically, the Amended Complaint alleges that at the beginning of the parties' negotiations in September 2005, plaintiff and IFC, through its representative Jan van Bilsen, exchanged promises that each of the parties would keep all information concerning the proposed sale of IFC's and Barclays' MECG stock to plaintiff strictly confidential until the sales were consummated. Amended Complaint ¶¶ 21, 47. IFC breached that confidentiality agreement by informing MECG's chairman, who was also an MECG shareholder, that plaintiff was purchasing the MECG shares of IFC and Barclays. *Id.* ¶ 48. As a direct and proximate result of IFC's breach, plaintiff was forced to pay a higher price for the stock that he purchased from other MECG shareholders. *Id.* ¶ 49.

Again IFC's objection is directed toward plaintiff's alleged failure to "particularize" his claim. Mem. 24. To avoid any doubt about the adequacy of his pleadings, plaintiff has refined his breach-of-confidentiality-agreement claim in his Amended Complaint. He now alleges that the confidentiality agreement was formed at the beginning of the

parties' negotiations in September 2005 by an oral exchange of promises between him and IFC's representative Jan van Bilsen. He also alleges that IFC breached the agreement in December 2005 when its representative on MECG's Board of Directors told MECG's chairman that IFC had sold its shares to plaintiff. Nothing more is required to survive a motion to dismiss.[8]

In fact, plaintiff's complaint would have been adequate even without amendment. A motion to dismiss similar to IFC's was considered in *Designers North Carpet, supra*. There, the court first noted:

> [T]he breach of contract claim as pleaded in the complaint is vague and conclusory and, at best, inartfully drafted. Indeed, the plaintiff does not describe the contract or contracts other than to say agreements existed between it and Mohawk. The plaintiff does not allege whether these agreements are written or oral, when they were made, the length of time they covered, the quantity of carpets involved, or any other terms. Indeed, discovery and summary judgment motions may determine that no agreements or contracts existed.

153 F. Supp. 2d at 197. Nonetheless, "reading the complaint liberally and drawing all inferences in favor of the plaintiff, the Court [found] that at this stage, the complaint provides the short and plain statement that Fed. R. Civ. P. 8 requires to provide notice of the ground upon which relief is sought." *Id.* (internal citation omitted); *see also Bezuszka v. L.A. Models, Inc.*, 2006 U.S. Dist. LEXIS 13620 (S.D.N.Y. 2006). This Court should likewise find that plaintiff's claim is sufficient.

---

[8] In particular, IFC errs in arguing (Mem. 24) that "[c]onclusory allegations that the parties agreed to do something fail as a matter of law to state a key element of a breach of contract claim, namely that there was a binding and enforceable contract." This is a misstatement of the law, and it is not supported by the case that IFC cites. Again, a claim for breach of contract need allege only that the parties entered into a contract and that the defendant breached that contract. Everything else is a matter of proof.

## CONCLUSION

For the foregoing reasons, the Court should deny IFC's Motion to Dismiss.

                                    Respectfully submitted,

                                    /s/ ALEX BLANTON
                                    Alex Blanton (D.C. Bar No. 169623)
                                    Michael Joseph (DC Bar No. 6593)
                                    BLANK ROME, LLP
                                      600 New Hampshire Ave., NW
                                      Washington, D.C. 20037
                                      202-772-5909
                                      Fax: 202-572-8357
                                      E-mail: Blanton@BlankRome.com

                                  *Counsel for plaintiff Salah N. Osseiran*