UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| SALAH N. OSSEIRAN, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 1-06-CV-0336 RWR |
| ) | |
| INTERNATIONAL FINANCE ) | |
| CORPORATION, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

**DEFENDANT INTERNATIONAL FINANCE CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

WHITE & CASE LLP

Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Frank Panopoulos (D.C. Bar No. 459365)
701 Thirteenth Street, N.W.
Washington, D.C. 20005-3807
(202) 626-3600

*Attorneys for International Finance Corporation*

May 8, 2006

**TABLE OF CONTENTS**

                                                 Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ..........................................................................................................................1

I. THE WAIVER OF IMMUNITY CONTAINED IN ARTICLE VI, § 3 OF IFC'S ARTICLES OF AGREEMENT DOES NOT APPLY TO PLAINTIFF'S CLAIMS ........................................................................................................................1

    A.    The Court Can Look Beyond The Pleadings To Resolve Disputed Issues Of Fact That Are Necessary To Determine IFC's Claims Of Immunity .................1

    B.    The Waiver Of Immunity Contained In Article VI, § 3 Of IFC's Articles Of Agreement Does Not Apply To Count I Of The Amended Complaint ..............3

    C.    The Waiver Of Immunity Contained In Article VI, § 3 Of IFC's Articles Of Agreement Does Not Apply To Count II Of The Amended Complaint .............5

    D.    The Waiver Of Immunity Contained In Article VI, § 3 Of IFC's Articles Of Agreement Does Not Apply To Count III Of The Amended Complaint ...........7

II. DESPITE AMENDMENT, THE COMPLAINT STILL FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED .....................................................8

    A.    Plaintiff Misstates The Applicable Standard Of Review .........................................8

    B.    The Amended Complaint Fails To State A Claim For Breach Of Contract ............9

    C.    The Amended Complaint Fails To State A Claim For Promissory Estoppel ........11

    D.    The Amended Complaint Fails To State A Claim For Breach Of A Confidentiality Agreement ......................................................................................12

III. GUERNSEY IS AN APPROPRIATE AND CONVENIENT FORUM ...........................13

CONCLUSION .....................................................................................................................15

**TABLE OF AUTHORITIES**

Federal Cases                                                                                                        Page(s)

*Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335 (D.C. Cir. 1998) ..................................................1

*Atlantic Tele-Network v. Inter-Am. Dev. Bank*, 251 F. Supp. 2d 126 (D.D.C. 2003).....................15

*Chamduri v. Georgetown Univ.*, 274 F. Supp. 2d 85 (D.D.C. 2002) ...............................................9

*Contractual Obligations Prod. v. AMC Networks, Inc.*, No. 04 Civ. 2867,
    2006 U.S. Dist. LEXIS 16402 (S.D.N.Y. Mar. 31, 2006) ......................................................9

*Designers North Carpet, Inc. v. Mohawk Indus., Inc.*, 153 F. Supp. 2d 193 (E.D.N.Y. 2001) .......9

*Ecologix, Inc. v. Fansteel, Inc.*, 676 F. Supp 1374 (N.D. Ill. 1988) ................................................13

*\*Franklin Asaph Ltd. v. FDIC*, 794 F. Supp. 402 (D.D.C. 1992)................................................8, 10

*In re U.S. Office Prods. Co Sec. Litig.*, 251 F. Supp. 2d 77 (D.D.C. 2003) ...................................11

*Koken v. Aon Risk Servs, Inc.*, No. 3:05CV522-JRS,
    2006 U.S. Dist. LEXIS 2649 (E.D. Va. Jan. 13, 2006) ..........................................................9

*\*Mendaro v. World Bank*, 717 F.2d 610 (D.C. Cir. 1983) ......................................................1, 4, 6

*\*Novecon, Ltd. v. Bulgarian-Am. Enter. Fund*, 967 F. Supp. 1382 (D.D.C. 1997),
    *aff'd*, 190 F.3d 556 (D.C. Cir. 1999) ...............................................................................10, 11

*Novecon, Ltd. v. Bulgarian-Am. Enter. Fund*, 190 F.3d 556 (D.C. Cir. 1999)...............................11

*Phanuef v. Republic of Indonesia*, 106 F.3d 302 (9th Cir. 1997) ....................................................2

*\*Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36 (D.C. Cir. 2000).........................2, 3

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)..........................................................................14

*Pressman v. United States*, 33 Fed. Cl. 438 (Ct. Cl. 1995).............................................................13

*Radioptics v. United States*, 621 F.2d 1113(Ct. Cl. 1980)..............................................................13

*\*Raymen v. United Senior Ass'n, Inc.*, 409 F. Supp. 2d 15 (D.D.C. 2006) ................................9, 10

*Rommel v. Laffey*, 194 F.R.D. 441 (N.D.N.Y 2000)......................................................................13

*Sparrow v. United Airlines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000)..................................................9

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)........................................................................9

*Weinstock v. Asian Dev. Bank*, No. Civ. A. 1:05 CV 00174,
    2005 WL 1902858 (D.D.C. Jul. 13 2005).............................................................................3

Page(s)

*Zschernig v. Miller*, 389 U.S. 429 (1968) ..................................................................................15


State Cases

*D.C. Area Comm. Council, Inc. v. Jackson*, 385 A.2d 185 (D.C. 1978) .......................................10

\**Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236 (D.C. 1995)...................................10


Federal Statutes

22 U.S.C. § 288, International Organizations Immunities Act of 1945 ("IOIA").......................2, 3

Fed. R. Civ. P. 8(a) .........................................................................................................................8

Fed. R. Civ. P. 12(b)(1)...................................................................................................................2

Fed. R. Civ. P. 12(b)(6).........................................................................................................2, 7, 12


Other Authorities

Articles of Agreement of the International Finance Corporation, May 25, 1955,
    *amended* Apr. 28, 1993, 7 U.S.T. 2197 ..................................................................... *passim*

In response to IFC's Motion to Dismiss the Complaint, Plaintiff filed not only an Opposition, but also an Amended Complaint.[1] In the Amended Complaint, he dropped his claims for fraud and negligent misrepresentation and added allegations in an attempt to bolster his other claims against IFC's Motion. Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint ("Opposition" or "Opp'n") at 1. However, none of these additional allegations can save Plaintiff's Amended Complaint from dismissal.

The emails and documents referenced by and incorporated into the Amended Complaint belie Plaintiff's contentions that there was an enforceable agreement between him and IFC, that he reasonably relied on promises based on such an agreement, and that there was a confidentiality agreement between him and IFC. Consequently, IFC remains immune from suit and the Amended Complaint fails to allege any claim upon which relief can be granted.

## ARGUMENT

I. **THE WAIVER OF IMMUNITY CONTAINED IN ARTICLE VI, § 3 OF IFC'S ARTICLES OF AGREEMENT DOES NOT APPLY TO PLAINTIFF'S CLAIMS**

   A. **The Court Can Look Beyond The Pleadings To Resolve Disputed Issues Of Fact That Are Necessary To Determine IFC's Claims Of Immunity**

Plaintiff argues that his lawsuit falls within the scope of the waiver contained in Article VI, § 3 of IFC's Articles of Agreement. Opp'n at 4. According to Plaintiff, his lawsuit meets the "corresponding-benefits" test enunciated by the Court of Appeals in *Mendaro v. World Bank*, 717 F.2d 610, 617 (D.C. Cir. 1983), and *Atkinson v. Inter-American Development Bank*, 156 F.3d 1335, 1338 (D.C. Cir. 1998), because the lawsuit "advances [IFC's] ability to attract purchasers of its equity investments," one of IFC's chartered objectives. Opp'n at 6.

Anticipating IFC's argument that the waiver and corresponding benefit do not apply to someone like Plaintiff, with whom IFC does not have an existing and written purchase

---

[1] IFC's Motion has been deemed refiled by minute order entered May 5, 2006.

1

agreement, *see* IFC's Memorandum in support of its Motion ("Memorandum" or "Mem.") at 30-31, Plaintiff contends that "the Court must *assume* that the complaint alleges an enforceable agreement." Opp'n at 6 (emphasis added). The implication of Plaintiff's argument is that if he adequately pleads an enforceable agreement for purposes of withstanding a motion to dismiss under Rule 12(b)(6), then that allegation of an enforceable agreement is enough to defeat a challenge to subject matter jurisdiction under Rule 12(b)(1) on the basis of IFC's immunity from suit. Plaintiff's argument is fallacious.

It is well-settled that on a motion to dismiss for lack of subject matter jurisdiction in which immunity claims are raised, the Court must resolve any disputed facts necessary to its jurisdictional determination, and may do so by going beyond the pleadings and without accepting as true the complaint's allegations. *E.g.*, *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) ("When the defendant has thus challenged the factual basis of the court's jurisdiction, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant. Instead, the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.") (citing cases). Moreover, the resolution of such facts is a threshold issue that cannot be postponed until later in the case. *Id.* at 41; *Phanuef v. Republic of Indonesia*, 106 F.3d 302, 304-05 (9th Cir. 1997). Such early resolution preserves the significance and benefits of immunity from suit. *See Phoenix Consulting*, 216 F.3d at 41.

Here, IFC disputes that there was any agreement between Plaintiff and IFC, let alone an enforceable one, and argues that it was unreasonable for Plaintiff to rely on any such purported agreement. The existence of such an agreement is central to IFC's jurisdictional challenge to all of Plaintiff's claims on immunity grounds under the International Organizations Immunities Act

of 1945 ("IOIA"), 22 U.S.C. § 288, because the waiver contained in Article VI, § 3 of IFC's Articles of Agreement does not apply to persons with whom IFC is negotiating and does not have an agreement. *See Weinstock v. Asian Dev. Bank*, No. Civ. A. 1:05 CV 00174, 2005 WL 1902858, at *3 (D.D.C. Jul. 13, 2005) (noting subject matter jurisdiction "is proper only if immunity has been waived").

Thus, the Court must resolve the disputed fact of whether there was an enforceable agreement between IFC and Plaintiff, including an enforceable "confidentiality agreement," and whether Plaintiff was justified in relying on any such purported agreement. *Phoenix Consulting*, 216 F.3d at 40-41 (holding that Angola's assertion of sovereign immunity required the district court to resolve whether there was a valid contract waiving Angola's immunity). In resolving these issues, the Court need not accept the Amended Complaint's allegations as true.

### B. The Waiver Of Immunity Contained In Article VI, § 3 Of IFC's Articles Of Agreement Does Not Apply To Count I Of The Amended Complaint

As discussed in IFC's Memorandum and IFC's Opposition to Plaintiff's motion for a preliminary injunction, the emails and other documents referenced in the Amended Complaint do not establish an agreement between Plaintiff and IFC to sell IFC's shares in MECG to Plaintiff. Memorandum at 17-21; Prelim. Inj. Opp'n at 22-28. Instead, these documents establish that Plaintiff and IFC were still negotiating, had not agreed on all material terms of the sale, and did not intend to be bound until there was an executed sales agreement and bank guarantees, among other documentation. Memorandum at 17-21. The Court reached the same conclusion during the March 28, 2006 hearing on Plaintiff's motion for a preliminary injunction:

> The undisputed evidence in this case shows that at no time in the November 2005 e-mails or in the exchange of draft agreements in December 2005 that either party intended to be bound. In email exchanges in November, the plaintiff accepted that IFC's acceptance is subject to documentation and that the agreement will come into force for the sale of the shares only after the written

3

> sales agreement is signed. The draft sales agreement explicitly notes on the front of it that neither party intends to be bound by the draft agreement.

March 28 Hr'g Tr. at 59:11-19 (Transcript attached hereto as IFC Exhibit D). Further, absent the intent to be bound and agreement on all the material terms, there could not be a binding preliminary agreement to execute a formal stock purchase agreement. Memorandum at 19-21; *see also* March 28 Hr'g Tr. at 59:20-60:12.

The Amended Complaint does not contain any further factual allegations that would support the existence of an enforceable agreement or preliminary agreement. Instead, Plaintiff relies on the argument that "plaintiff is not required to prove his case in the complaint" and need only plead the elements of the claim for breach of contract. Opp'n at 9. As discussed, this argument does not help Plaintiff here, because the Court can go beyond the pleadings in resolving IFC's immunity claims. Moreover, Plaintiff forgets that the Court also can look to the emails and other documents referenced in the Amended Complaint because they are incorporated into it and considered part of the pleadings. Memorandum at 2-3.[2]

Because Plaintiff has not established—and cannot establish—an enforceable agreement between him and IFC to purchase IFC's shares in MECG, he is not the kind of "potential plaintiff to whom [IFC] would have to subject itself to suit in order to achieve its chartered objectives." *Mendaro*, 717 F.2d at 615. Put another way, IFC would not relinquish its immunity to a person like Plaintiff, with whom it was still negotiating and did not have a binding, executed agreement, because IFC would not receive a "corresponding benefit." *Id.* at 617. While one of

---

[2] Although Plaintiff glibly asserts that he "did not incorporate any documents into his complaint," Opp'n at 11 n. 7, his assertion is contradicted by the Amended Complaint's allegations that clearly refer to and rely on these documents, *see, e.g.*, Am. Compl. ¶¶ 22, 24-25, 29-30, 38 ("The November Agreement, as documented by the e-mails referenced above . . . is a legally binding contract between Osseiran and IFC"), and his admission that he "does not deny that these documents may be considered by the Court in conjunction with IFC's Motion to Dismiss . . . ." Opp'n at 11 n.7.

IFC's chartered objectives in its Articles of Agreement is to "revolve its funds by selling its investments to private investors whenever it can appropriately do so on satisfactory terms," Article III, § 3(vi), this objective is achieved through executed documents by which IFC agrees to be bound. *See* J. van Bilsen ¶ 3 ("IFC does not enter into binding agreements to buy or sell investments on a casual or informal basis through conversations or emails. Rather, for each investment, IFC requires formal documentation to be approved and executed before it will bind itself.") [Docket Entry No. 8-1]. The benefit to IFC, and therefore the immunity waiver, would come only when there is such an executed agreement. Rather than furthering IFC's chartered objective, Plaintiff's lawsuit would hinder it from conducting its activities. Memorandum at 31-32.

Accordingly, Plaintiff's breach of contract claim does not fall within the scope of Article VI, § 3's waiver of immunity.

    **C.    The Waiver Of Immunity Contained In Article VI, § 3 Of IFC's Articles Of Agreement Does Not Apply To Count II Of The Amended Complaint**

For reasons similar to those discussed above, the waiver of immunity contained in Article VI, § 3 also does not apply to Plaintiff's promissory estoppel claim. Specifically, to determine IFC's claim of immunity with respect to Count II of the Amended Complaint, the Court must resolve whether there was a November agreement pursuant to which IFC promised it would sell its MECG shares to Plaintiff and which formed the basis of Plaintiff's reasonable reliance.

Plaintiff contends that he bases his claim on two promises: the November agreement and the promise made between December 2005 through February 2006 that IFC "would sell plaintiff its MECG shares on the terms agreed to in the November agreement." Opp'n at 12. According to Plaintiff, IFC's Motion only focuses on the November agreement and does not address the later promise. *Id.* This argument is specious. As the quote indicates, the alleged later promise is

itself based on the existence of a November agreement. *See also* Am. Compl. ¶ 43 (alleging that IFC promised "that it would sell its MECG shares to Osseiran ***on the terms agreed to in the November agreement*** and that it intended to consummate that sale with Osseiran") (emphasis added); Opp'n at 11 ("[O]n or about December 19, 2005, IFC suspended the parties' contract documentation activities, telling plaintiff that it still intended to consummate ***the deal*** . . . . From that time through February 8, 2006, IFC repeatedly deferred plaintiff's demands that ***the deal*** be closed, but continued to affirmatively represent to him that it would consummate the sale . . . .") (emphasis added).

Without the existence of the November agreement, the alleged promise is indefinite, not enforceable, and could not reasonably be relied upon. Memorandum at 22-23; *see also* March 28 Hr'g Tr. at 61: 6-15 ("Bilsen and Alloway saying that IFC was eager to sell its MECG shares to the plaintiff and that it was not soliciting other buyers and that it was willing to proceed with the sale does not rise to the level of a definite promise of a specific act. . . . [T]he undisputed written documents here show that the plaintiff could not have reasonably relied on any assurances or promises that Bilsen or anybody else from IFC provided over the phone where the documents indicate that a negotiation was in progress and that IFC was not bound by the discussions.").

Because Plaintiff has not established—and cannot establish—the existence of a November agreement upon which IFC's promise was based and reasonably relied upon, the waiver contained in Article VI, § 3 does not apply to Count II. That is, IFC would not relinquish its immunity to a person like Plaintiff, with whom it was still negotiating and did not have an agreement, because IFC would not receive a "corresponding benefit." *Mendaro*, 717 F.2d at 617. A suit based on indefinite promises while IFC was still negotiating an agreement and had

indicated it would not be bound by the discussions does not further any chartered objective of IFC, but rather hinders it from conducting its activities.

> D. **The Waiver Of Immunity Contained In Article VI, § 3 Of IFC's Articles Of Agreement Does Not Apply To Count III Of The Amended Complaint**

For reasons similar to those discussed above, the waiver of immunity contained in Article VI, § 3 also does not apply to Plaintiff's claim for breach of a confidentiality agreement. Specifically, IFC's immunity challenge to this claim requires the Court to resolve whether there was a binding confidentiality agreement.

Plaintiff contends that his breach of confidentiality claim "is just another breach-of-contract claim," and that the claim passes muster under Rule 12(b)(6) because it adequately pleads the elements of a breach of contract claim. Opp'n at 13. However, just as with Plaintiff's breach of contract claim, the Court is not bound to accept the allegations of the existence of a confidentiality agreement as true and can look beyond the pleadings to resolve the issue.

The documents attached to Plaintiff's declaration and incorporated in the Amended Complaint unequivocally show that there was no confidentiality agreement. In his December 22, 2005 email letter to IFC, Plaintiff does not claim a confidentiality agreement. Instead, he states: "Suddenly I started hearing noises all over town that MR Osseiran concluded with IFC and Barclays to buy their shares. When I asked you, said it is because most probably your representative in MECG board disclosed it verbally to the chairman after he sent him his resignation from the board, although I clearly *asked* to keep this confidential until after we sign the deal." Osseiran Exh. E at 2 (emphasis added). If there had been a confidentiality agreement, Plaintiff would have stated so in this letter, which was obviously prepared in anticipation of litigation, instead of stating that he "asked" to keep this confidential. Likewise, none of the other

7

emails allegedly documenting the November agreement or negotiations contains anything about a confidentiality agreement. Memorandum at 25.

Because Plaintiff has not established—and cannot establish—the existence of a confidentiality agreement, the waiver contained in Article VI, § 3 does not apply to Count III.

## II.    DESPITE AMENDMENT, THE COMPLAINT STILL FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.    Plaintiff Misstates The Applicable Standard Of Review

In his efforts to survive dismissal under Rule 12(b)(6), Plaintiff misstates the applicable standard of review available to the Court, arguing that the Amended Complaint should not be dismissed because it satisfies the notice pleading standard under Fed. R. Civ. P. 8(a). Opp'n at 9-10. Plaintiff's reliance on the basic pleading requirements of Rule 8 does not help him, however, because the allegations in the Amended Complaint are not supported by, and are at odds with, the documents incorporated by reference in the Amended Complaint. *See supra*, note 1; Memorandum at 2-3, 13-14; *Franklin Asaph Ltd. v. FDIC*, 794 F. Supp. 402, 404 (D.D.C. 1992) ("[T]he court will not accept conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened, or if these allegations are contradicted by the description itself.") (internal quotation and citation omitted).

While Plaintiff was entitled to file only "a short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. P. 8(a)(2), he chose to do otherwise. As noted, the Amended Complaint contains specific references to emails and other documents that are clearly incorporated into it, relied upon, and central to Plaintiff's claims. Plaintiff acknowledges that the Court can consider these documents in deciding IFC's Motion. Opp'n at 11 n.7. In this regard, the D.C. Circuit has held that "[i]n some cases, it is possible for a plaintiff *to plead too much*:

8

that is, to plead himself out of court by alleging facts that render success on the merits impossible." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000) (emphasis added); *see also Chamduri v. Georgetown Univ.*, 274 F. Supp. 2d 85 (D.D.C. 2002) (dismissing claim because plaintiff's own pleadings made it impossible for him to establish the necessary claim elements ).

The documents incorporated in the Complaint—characterized by Plaintiff himself as "substantial evidence," Opp'n at 10—establish that Plaintiff fails to "prove [a] set of facts in support of his claim[s] which would entitle him to relief." *Raymen v. United Senior Ass'n*, 409 F. Supp. 2d 15, 20 (D.D.C. 2006). Plaintiff has effectively "plead[ed] himself out of court," and cannot now rely on the basic pleading requirements of Rule 8 to prevent dismissal under Rule 12(b)(6).[3]

        **B.**       **The Amended Complaint Fails To State A Claim For Breach Of Contract**

For the reasons discussed above and in pages 17-21 of IFC's Memorandum, the Amended Complaint fails to state a claim for breach of contract, because the emails and other documents incorporated into the Amended Complaint do not support Plaintiff's allegations of a "November agreement" or any other agreement between IFC and Plaintiff. Am. Compl. ¶¶ 3-4, 6, 22-23, 29, 32-34, 38-40. In fact, those documents contradict Plaintiff's allegations because

---

[3] The cases which Plaintiff relies upon for his Rule 8 argument, Opp'n at 9-10, are distinguishable because they focus upon challenges to the specificity of the complaint, which is not at issue here. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) ("This case presents the question whether a complaint . . . must contain specific facts establishing a prima facie case . . . ."); *Koken v. Aon Risk Services, Inc.*, No. 3:05CV522-JRS, 2006 WL 90068 (E.D.Va. Jan. 13, 2006) ("Aon's principal criticism . . . concerns the Complaint's lack of specificity in describing the 'who-what-when-where' of the alleged breach of contract."); *Designers North Carpet, Inc. v. Mohawk Indus., Inc.*, 153 F. Supp. 2d 193, 196 (E.D.N.Y. 2001) ("Mohawk moves to dismiss . . . on the ground that the plaintiff alleged a breach of the implied duty to exercise good faith and fair dealing but did not allege the existence of a contract or a breach of such contract."). The issue here with respect to Plaintiff's allegations is that the allegations are not supported by, and are at odds with, the documents incorporated into the Complaint. In this regard, *Contractual Obligations Prod. v. AMC Networks, Inc.*, No. 04 Civ. 2867, 2006 U.S. Dist. LEXIS 16402 (S.D.N.Y. Mar. 31, 2006), cited by Plaintiff, supports IFC's argument. When considering a "Certificate of Assignment" that was referenced throughout the complaint and integral to plaintiff's claim, the court found that the terms of the Certificate did not support plaintiff's allegations, and dismissed the complaint as to the count containing those allegations. *AMC Networks*, 2006 U.S. Dist. LEXIS 16402, at *13-14.

9

they establish that Plaintiff and IFC were still negotiating, had not agreed on all material terms of the sale, and did not intend to be bound until there was an executed sales agreement and bank guarantees, among other documentation.  Mem. at 17-21; *Novecon, Ltd. v. Bulgarian-Am. Enter. Fund*, 967 F. Supp. 1382, 1387 (D.D.C. 1997), *aff'd*, 190 F.3d 556 (D.C. Cir. 1999) ("*Novecon I*") (holding that "considerable weight is put on a party's explicit statement that it reserves the right to be bound only when a written agreement is signed" and that courts are "reluctant to discount such a clear signal" that a party does not intend to be bound by preliminary writings or negotiations).  At bottom, Plaintiff's allegation of a "November agreement" is a legal conclusion masquerading as a fact allegation.

Equally conclusory is any allegation that there was a binding preliminary agreement to execute a formal stock purchase agreement.  As discussed at pages 19-20 of IFC's Memorandum, under District of Columbia law, a contract has not been formed if the final document contemplated by the parties was not "to be a mere memorial of the agreement already reached," and "is to contain any material term that is not already agreed on."  *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238-39 (D.C. 1995) (citing *D.C. Area Comm. Council, Inc. v. Jackson*, 385 A.2d 185, 187 (D.C. 1978)).  Again, the documents Plaintiff incorporates into his Amended Complaint do not support the allegation of such an agreement.  Mem. at 20.

Accordingly, because the court "need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint," *Raymen*, 409 F. Supp. 2d at 20, nor "accept conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened, or if these allegations are contradicted by the description itself," *Franklin Asaph*, 794 F. Supp. at 404,

10

Plaintiff's allegations in Count I of the Amended Complaint fail to state a claim for breach of contract.

### C. The Amended Complaint Fails To State A Claim For Promissory Estoppel

As noted, Plaintiff contends that he bases his promissory estoppel claim on two promises, and that IFC's Motion only focuses on one of them, the alleged "November agreement," and does not address the later promise made between December 2005 through February 2006 that IFC "would sell plaintiff its MECG shares on the terms agreed to in the November agreement." Opp'n at 12. IFC further discusses in section I.C above that this argument is specious because the later promise is itself based on the existence of a November agreement. Thus, contrary to Plaintiff's contention, IFC's focus on the alleged November agreement is "on point." *Id.*

Given that the emails and documents incorporated into the Amended Complaint do not support Plaintiff's allegation that there was such an agreement, but instead establish that the parties were still negotiating, had not agreed on all material terms of the sale, and did not intend to be bound until there was an executed sales agreement, the alleged promises are not definite in their terms under D.C. law and, as such, could not have been reasonably relied upon by Plaintiff as a matter of law. Mem. at 22-23;[4] *Novecon, Ltd. v. Bulgarian-Am. Enter. Fund*, 190 F.3d 556, 565 (D.C. Cir. 1999) ("*Novecon II*") (holding that in order to justify reasonable reliance, a promise "must be more than merely a promise to 'bargain in good faith'") (citation omitted); *Novecon I*, 967 F. Supp. at 1388 (denying recovery under theory of promissory estoppel because promisee unreasonably relied on a promise conditioned on ratification by the promisor's board of directors). Like Plaintiff's allegations about the existence of an agreement, his allegations of a

---

[4] Plaintiff's contention that IFC's argument is "premature" because it relies on cases deciding motions for summary judgment is misplaced. Opp'n at 12-13. The point of citing the cases is to establish the elements comprising a claim for promissory estoppel. This standard applies with equal force to motions for summary judgment and motions to dismiss. *See, e.g.*, *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 97 (D.D.C. 2003) (applying the promissory estoppel standard in dismissing a case for failure to state a claim).

definite promise and reasonable reliance are conclusory. Am. Compl. ¶¶ 4-6, 23, 33, 43-44. Accordingly, the Amended Complaint fails to state a claim for promissory estoppel.

### D.     The Amended Complaint Fails To State A Claim For Breach Of A Confidentiality Agreement

Plaintiff contends that, in response to IFC's Motion, he has "refined" his breach of confidentiality claim. Opp'n at 13-14. According to Plaintiff, his breach of confidentiality claim "is just another breach-of-contract claim" which passes muster under Rule 12(b)(6) because it adequately pleads the elements of a breach of contract claim. Opp'n at 13. However, the allegations fail to state a claim for breach of an agreement for two reasons.

First, as with Plaintiff's breach of contract claim, the documents attached to Plaintiff's declaration and incorporated in the Amended Complaint do not support Plaintiff's allegation that IFC and Plaintiff agreed to keep all information concerning the proposed sale strictly confidential. Am. Compl. ¶¶ 21, 47. Instead, the documents show unequivocally that there was no confidentiality agreement. As discussed in page 25 of IFC's Memorandum, in his December 22, 2005 email letter to IFC, Plaintiff states that he merely "asked to keep this confidential until after we sign the deal." Osseiran Exh. E at 2. Likewise, none of the other contemporaneous emails allegedly documenting the November agreement or negotiations contains anything about a confidentiality agreement. Memorandum at 25. Plaintiff's "asking" to keep things confidential is not tantamount to a confidentiality agreement between him and Mr. Bilsen. The allegation that there was an enforceable confidentiality agreement is conclusory.[5]

Second, Plaintiff cites no authority that such alleged promises of confidentiality are enforceable contracts in this case. Indeed, they are not because they lack consideration. *See,*

---

[5] Plaintiff contends IFC's argument, that conclusory allegations fail as a matter of law to state a key element of a breach of contract claim, is a misstatement of law. Opp'n at 14 n.8. In making this statement, Plaintiff neglects to distinguish between the legal standard for pleading a breach of contract claim and the legal standard under which the court need not accept allegations that are conclusory and unsupported by facts.

*e.g.*, *Pressman v. United States*, 33 Fed. Cl. 438, 444 (Ct. Cl. 1995) (finding that an agency representative's promise that "the agency would comply with the law and keep the proposal confidential" did not support a finding of intent to accept an offer to enter into a confidentiality contract); *Ecologix, Inc. v. Fansteel, Inc.*, 676 F. Supp. 1374, 1378-79 (N.D. Ill. 1988) (determining that there was no "enforceable oral agreement to mutually maintain the confidentiality of all information exchanged between them" because there was no acceptance). IFC's promise was nothing more than a moral obligation to keep things confidential. *Radioptics v. United States*, 621 F.2d 1113, 1124-25 (Ct. Cl. 1980) (holding that submission of proprietary material to Government in confidence on the basis of an earlier Government promise to evaluate the material did not obligate Government to maintain confidentiality because "[t]hat duty was a mere moral obligation").

Accordingly, the Amended Complaint fails to state a claim for breach of a confidentiality agreement. *Rommel v. Laffey*, 194 F.R.D. 441, 444 (N.D.N.Y. 2000) (holding claim for breach of confidentiality agreement "lacks merit for failure to allege in nonconclusory language the essential terms of the parties' purported contract [and] whether it [was] written or oral").

## III. GUERNSEY IS AN APPROPRIATE AND CONVENIENT FORUM

Plaintiff argues that Guernsey is not an appropriate forum because none of the parties or potential witnesses resides or is located there, none of the conduct or communications in the Amended Complaint involved Guernsey, and the Court rejected that Plaintiff's claims are governed by Guernsey law. Opp'n at 6-7. However, the same argument can be made about the appropriateness of the District of Columbia as a forum.

Although IFC is located in the District of Columbia, Plaintiff is not, and neither are any of the potential witnesses, except for Mr. Alloway, whose involvement in this matter was limited. Alloway ¶¶ 1, 3 [Docket Entry No. 8-3]. Nor did any of the material conduct or

communications alleged in the Amended Complaint occur in the District of Columbia.  The only nexus the District of Columbia has to this case is that IFC is headquartered here—a fortuitous fact that has no legal significance to the claims raised by Plaintiff, which are based on events and acts outside the District of Columbia.  Mem. at 9.

Plaintiff makes much of the fact that the Court decided that District of Columbia law governs his claims.  Opp'n at 7.  But choosing the District of Columbia under a choice of law analysis as the jurisdiction whose law is applicable to resolve Plaintiff's claims does not necessarily mean that it also is a convenient forum, or that Guernsey is an inconvenient forum. Indeed, the key reason the Court decided to apply District of Columbia law was because it provides the equitable remedy of specific performance and recognizes promissory estoppel, while Guernsey law does not.  March 28 Hr'g Tr. at 57:3-58:8.  Nonetheless, as discussed in IFC's Memorandum, a foreign forum is not inadequate merely because it has less favorable substantive law or does not have an identical cause of action.  Mem. at 9.  The standard for establishing an "adequate forum" is much lower.  Indeed, only if the foreign forum would deprive the plaintiffs of "*any* remedy," treat them "unfairly" or "not permit litigation of the subject matter of the dispute," is dismissal on *forum non conveniens* grounds inappropriate.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981).

While Guernsey may not provide the equitable remedy of specific performance or recognize promissory estoppel, it does provide for damages.  First Dunster Affidavit ¶ 29 [Docket Entry No. 8-4.]  Thus, Plaintiff would not be deprived of ***any*** remedy in a Guernsey court. Moreover, Guernsey courts would permit the subject matter of the dispute and would treat the parties fairly.  Mem. at 6-7, 12-13.  Courts in the United States are not permitted to disregard the operation of another country's laws or legal system on the basis that it is different from our

own. *See Zschernig v. Miller*, 389 U.S. 429, 440 (1968) (disapproving of state court decisions refusing to acknowledge operation of testate laws in authoritarian regimes); *see also Atlantic Tele-Network v. Inter-Am. Dev. Bank*, 251 F. Supp. 2d 126, 137 (D.D.C. 2003) (dismissing case because Guyana was an adequate and proper forum). Indeed, Plaintiff never objected to the draft Share Sale Agreement's selection of Guernsey as a forum to adjudicate disputes between the parties. *See* Osseiran Exh. C at 9, § 4.07.

## CONCLUSION

For all the foregoing reasons and those in IFC's Memorandum of Law in Support of its Motion, the Court should grant IFC's Motion and dismiss the Complaint.

Dated: Washington, D.C.
       May 8, 2006

Respectfully submitted,

**WHITE & CASE** LLP

/ S / Francis A. Vasquez, Jr.
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Frank Panopoulos (D.C. Bar No. 459365)
701 Thirteenth Street, N.W.
Washington, D.C. 20005-3807
(202) 626-3600

*Attorneys for International Finance Corporation*