**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
                                  )
SALAH OSSEIRAN,                   )
                                  )
          Plaintiff,              )
                                  )
          v.                      )     Civil Action No. 06-336 (RWR)
                                  )
INTERNATIONAL FINANCE CORP.,      )
                                  )
          Defendant.              )
_____ )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Salah Osseiran brought this action against the International Finance Corporation ("IFC") for breach of contract, promissory estoppel, and breach of a confidentiality agreement. IFC moved to dismiss for lack of subject matter jurisdiction due to IFC's immunity from suit, for failure to state a claim, and due to forum non conveniens, among other things. IFC is not immune in this case, Osseiran has failed to state a claim for breach of contract, but he has adequately alleged promissory estoppel and breach of confidentiality, and this forum is appropriate. Thus, IFC's motion to dismiss will be granted in part and denied in part. Additionally, Osseiran moved to stay this action to allow jurisdictional discovery. Because he has established subject matter jurisdiction, his request will be denied as moot.

-2-

BACKGROUND

In the summer of 2005, Osseiran held approximately 1.5% of the shares in the Middle East Capital Group ("MECG").[1]  Seeking to gain a controlling share in MECG, Osseiran contacted IFC, an international organization and private arm of the World Bank, which owned approximately 10.8% of MECG's shares, and Barclays Capital, which owned approximately 18% of MECG's shares, to purchase their shares.  (Am. Compl. ¶¶ 17-18.)

Osseiran alleges that in November 2005, IFC, acting on behalf of itself and Barclays Capital, agreed in a series of e-mail exchanges on the terms by which it would sell its and Barclay's shares through a standard stock purchase agreement and to keep all negotiations regarding the stock sales confidential. Osseiran claims that in reliance on that agreement, he set aside funds for the purchase price and proceeded to purchase additional shares of MECG stock from other shareholders to achieve majority status.  (Id. ¶¶ 23, 34.)  During December 2005, Osseiran, IFC and Barclays agreed upon language for the formal stock purchase. However, IFC repeatedly postponed executing the purchase agreement while making the "repeated promise that it would soon execute the formal stock purchase agreement" and maintaining that

---

[1]     MECG is a merchant banking and investment company incorporated in Guernsey, Channel Islands, with its headquarters in Beirut, Lebanon.  MECG has 25 shareholders, including IFC and Osseiran.

-3-

"it fully intended to complete the transaction as envisioned in the November agreement and the draft stock purchase agreement." (Id. ¶¶ 6-7.)  Due to IFC's failure to sell its shares in a timely manner, Barclays and Osseiran eventually negotiated and carried out the purchase of Barclays' shares by Osseiran upon the terms of the November 2005 draft agreement.  Growing increasingly frustrated by IFC's foot-dragging, Osseiran voiced his concern in a series of e-mails about quickly consummating the sale, eventually stating that he was prepared to initiate legal proceedings.  Osseiran also informed IFC that its employees had breached the confidentiality agreement by informing third parties of IFC and Barclays' stock sales to Osseiran.  (Id. ¶ 30.)  At a February 16, 2006 MECG shareholder meeting, IFC solicited higher offers than those suggested by Osseiran for its stock and proposed a joint sale of stock, excluding Osseiran, to First National Bank ("FNB").  (Id. ¶ 35.)  Shortly therefter, Osseiran discovered that IFC had entered into an agreement to sell its stock to FNB by March 31, 2006.

Osseiran filed this action alleging that "IFC . . . reneged on its promise to sell its MECG stock to Osseiran and abused his trust and confidence by stringing him along and inducing him to purchase other MECG shares, all the while conspiring with other MECG shareholders to solicit a higher price for their shares from a third party."  (Id. ¶ 8.)  His purchases cost him over one

-4-

million dollars and left him still as a minority shareholder with
no control.  (Id. ¶ 44.)  IFC moved to dismiss under Federal
Rules of Civil Procedure 12(b)(1) and 12(b)(6) and under the
doctrine of forum non conveniens, contending that IFC has not
waived immunity under the International Organizations Immunities
Act or in its Articles of Agreement to allow Osseiran's action,
that Osseiran's claims for breach of contract, promissory
estoppel and breach of confidentiality (Am. Compl. Counts I, II
and III, respectively) fail as a matter of law, and that this
matter should be litigated in Guernsey.  Osseiran also moved to
stay his suit to allow jurisdictional discovery.

<u>DISCUSSION</u>

I.   IMMUNITY

     "Before a court may address the merits of a complaint, it
must assure that it has jurisdiction to entertain the claims."
<u>Rodriguez v. Nat'l Ctr. for Missing & Exploited Children</u>, Civ.
Action No. 03-120 (RWR), 2005 WL 736526, at *6 (D.D.C. Mar. 31,
2005).  A court must dismiss a claim if it does not possess
subject matter jurisdiction to hear and decide the dispute due to
a defendant's immunity from suit.  <u>Weinstock v. Asian Dev. Bank</u>,
Civ. Action No. 05-174 (RMC), 2005 WL 1902858, at *2 (D.D.C. Jul.
13, 2005) (citing <u>Rochon v. Ashcroft</u>, 319 F. Supp. 2d 23, 27
(D.D.C. 2004)).  Subject matter jurisdiction cannot be waived,
and "[w]henever it appears by suggestion of the parties or
otherwise that the court lacks jurisdiction of the subject

-5-

matter, the court shall dismiss the action." Arbaugh v. Y & H
Corp., 546 U.S. 500, 506 (2006).  Although a court may consider
matters outside of the pleadings in deciding whether to grant a
motion to dismiss for lack of jurisdiction, the court must
nonetheless "accept all of the factual allegations in the
complaint as true." Jerome Stevens Pharms. v. Food & Drug
Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005) (internal quotation
omitted).  Once a foreign defendant asserts the jurisdictional
defense of immunity, a court must then determine if the defendant
has waived immunity for the purposes of plaintiff's lawsuit. Cf.
Phoenix Consulting, Inc. v. Rep. of Angl., 216 F.3d 36, 40 (D.C.
Cir. 2000) (assessing jurisdictional immunity under the Foreign
Sovereign Immunities Act).

     As an international organization entitled to protection
under the International Organizations Immunities Act ("IOIA"), 22
U.S.C. § 288a(b), IFC maintains that it is immune from Osseiran's
action.  The IOIA allows designated entities to "enjoy the same
immunity from suit and every form of judicial process as is
enjoyed by foreign governments, except to the extent that such
organizations may expressly waive their immunity for the purpose
of any proceedings or by the terms of any contract."  22 U.S.C.
§ 288a(b).  This immunity may be waived only in the most limited
circumstances such as where the organization itself has waived

-6-

its immunity.  <u>Dujardin v. Int'l Bank for Reconstr. and Dev.</u>, 9
Fed. Appx. 19, 20 (D.C. Cir. 2001).

Although IFC has not expressly waived its immunity for all
actions, it has noted in Article VI of its Articles of Agreement
circumstances under which a civil action may proceed.  "Actions
may be brought against the Corporation only in a court of
competent jurisdiction in the territories of a member in which
the Corporation has an office, has appointed an agent for the
purpose of accepting service or notice of process, or has issued
or guaranteed securities.  No actions shall, however, be brought
by members or persons . . . deriving claims from members."
(Def.'s Mot. to Dismiss, Ex. C (IFC Arts. of Agreement, Art. VI,
Sec. 3).)  <u>Mendaro v. World Bank</u>, 717 F.2d 610 (D.C. Cir. 1983),
interpreted identical language in the Articles of Agreement for
the World Bank to mean that "the World Bank's members . . .
intended to waive the Bank's immunity from suits by its debtors,
creditors, bondholders, and those other potential plaintiffs to
whom the Bank would have to subject itself to suit in order to
achieve its chartered objectives."  <u>Id.</u>, 717 F.2d at 615.  The
objectives stated in the IFC's Articles of Agreement include
assisting in the financing of productive private enterprises
which "contribute to the development of its member countries by
making investments," bringing "together investment opportunities,
domestic and foreign private capital, and experienced

-7-

management[,]" and seeking "to stimulate, and to help create conditions conductive to, the flow of private capital, domestic and foreign, into the productive investment of member countries." (Def.'s Mot. to Dismiss, Ex. C (IFC Arts. of Agreement, Art. I).)

Once, as here, a waiver has been identified, the scope of that waiver must then be assessed. See Atkinson v. Inter-Am. Dev. Bank, 156 F.3d 1335, 1338 (D.C. Cir. 1998); Mendaro, 717 F.2d at 617.  "'Since the purpose of the immunities accorded international organizations is to enable the organizations to fulfill their functions, applying the same rationale in reverse, it is likely that most organizations would be unwilling to relinquish their immunity without receiving a corresponding benefit which would further the organization's goals.'" Atkinson, 156 F.3d at 1338 (quoting Mendaro, 717 F.2d at 617 (further stating that "limitations on immunity that subject the organization to suits which could significantly hamper the organization's functions are inherently less likely to have been intended, and a court's interpretation of the provision in dispute should have that in mind")).  Thus, suits based on commercial transactions may proceed where the benefits of a waiver outweigh any associated costs.  Atkinson, 156 F.3d at 1338.

IFC maintains that Osseiran is not a "creditor, debtor or bondholder" nor is he the type of plaintiff for whom IFC would

-8-

have waived its immunities to achieve its organizational goals.
Osseiran retorts that his suit, involving a sale by IFC of one of
its equity investments to a private investor, amounts to the type
of commercial transaction for which IFC's immunity would be
waived.  He reasons that the corresponding benefit of allowing a
sale to attract additional investors outweighs the burdens of
litigation over any dispute about the sale.  Osseiran also argues
that he is precisely the type of plaintiff by whom IFC should be
subjected to suit in order to achieve its organizational goal of
promoting investment opportunities.  (See Pl.'s Opp'n to Def.'s
Mot. to Dismiss ("Pl.'s Opp'n") at 6.)

    Because IFC seeks to attract potential investors and provide
money to developing member countries, negotiating to obtain
capital from a sale of stock investments it holds would further
bedrock IFC objectives.  Considering that IFC's stated goal is
"contribut[ing] to the development of its member countries by
making investments" (Def.'s Mot. to Dismiss, Ex. C (IFC Arts. of
Agreement, Art. 1)), funds received from Osseiran would be
instrumental in creating additional investment opportunities.
Waiver of immunity for litigation arising from transactions
involving a sale of stock to a private investor provides a clear
benefit in attracting additional investors willing to engage in
financial transactions with IFC that would further development
objectives.  Cf. Atkinson, 156 F.3d at 1338 (noting that where

-9-

waiver of immunity for certain types of proceedings provided no
conceivable benefit and instead created a disadvantage for
defendant, immunity was not waived).  Without such waiver, these
investors might be more hesitant to enter into negotiations with
IFC to purchase investments because they could not sue to enforce
agreements.  See Mendaro, 717 F.2d at 618 (finding that in the
World Bank context, exceptions to immunities were designed to
ensure that parties could sue to enforce the Bank's contracts
given that "[p]otential investors would be much less likely to
acquire the Bank's own securities if they could not sue the Bank
to enforce its liabilities").

    IFC argues that there is no binding contract for a stock
sale between Osseiran and itself that would trigger any cost-
benefit analysis or assessment of the sale's relationship to
IFC's objectives.  IFC also maintains that while waiver may be
justified where "an insistence on immunity would actually prevent
or hinder [IFC] from conducting its activities" (Def.'s Mot. to
Dismiss at 31 (quoting Mendaro, 717 F.2d at 617)), immunity
applies here since allowing Osseiran's suit would require IFC to
be bound to contracts that are still under negotiation and would
hamper IFC's ability and willingness to engage in commercial
transactions.  (Def.'s Mot. to Dismiss at 32.)

    IFC's arguments miss the point.  Whether IFC's negotiated
agreement was final and binding or not does not determine whether

-10-

this genre of activity waives IFC's immunity.  The absence of a binding contract may be a defense on the merits, but does not transmogrify a non-immune commercial transaction to an immune non-commercial one.  Osseiran has complained not only for enforcement of an alleged agreement that IFC did not abide by, but also of unfair dealing in the negotiation process.  If IFC were free from being sued for violating both fair dealing and compliance expectations our contract law protects, IFC might scarcely find any investors willing to advance its development efforts.

Since negotiating and consummating sales of stock create innumerable benefits for IFC and further its objectives, IFC's immunity here will be deemed waived.  Cf. Mendaro at 617 ("[W]hen the benefits accruing to the organization as a result of waiver would be substantially outweighed by the burdens caused by judicial scrutiny of the organization's discretion . . ., it is logically less probable that the organization actually intended to waive its immunity.").[2]

---

[2]    Osseiran has moved to stay this action to allow jurisdictional discovery.  "[S]uch discovery may be proper where 'pertinent facts bearing on the issue of jurisdiction are in dispute[.]'"  Mwani v. United States, Civ. Action No. 99-0125 (CKK), 2004 WL 5042293, at *6 (D.D.C. June 22, 2004).  Because this court has jurisdiction to entertain Osseiran's action, his motion for leave to take jurisdictional discovery will be denied as moot.

-11-

## II. FAILURE TO STATE A CLAIM

Claiming that the negotiations entered into by Osseiran and IFC produced no binding sales agreement, IFC seeks dismissal of the complaint under Fed. R. Civ. P. 12(b)(6) for Osseiran's failure to state a claim for breach of that agreement, promissory estoppel or breach of confidentiality.

In order to survive a motion to dismiss under 12(b)(6), the allegations stated in a plaintiff's complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). The complaint must be construed in the light most favorable to the plaintiff and "the court must assume the truth of all well-pleaded allegations." Warren v. Dist. of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004). "However, the court need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). While the court must generally limit its review to the facts alleged in the complaint, it may consider documents that "are both referenced in the complaint and central to the plaintiff's claims." Arturi v. United States Prods. Co., 251 F. Supp. 2d 58, 66 (D.D.C. 2003).

-12-

A.  Breach of contract

Osseiran argues that he has adequately stated a claim for breach of the sales contract which IFC disputes.  For an enforceable agreement to exist under District of Columbia case law, the parties both must (1) agree on all material terms and (2) intend to be bound.  Perles v. Kagy, 473 F.3d 1244, 1249 (D.C. Cir. 2007); Kramer Assocs. v. Ikam, Ltd., 888 A.2d 247, 251 (D.C. 2005).  The party asserting the existence of the contract bears the burden of proof, which is "particularly onerous" where the parties had contemplated a written contract.  Jack Baker, Inc. v. Office Space Dev. Corp., 664 A.2d 1236, 1238 (D.C. 1995) (further stating at 1239 that "[i]n order to form a binding agreement, both parties must have the distinct intention to be bound; without such intent, there can be no assent and therefore no contract" (internal citations omitted)).

Here, there is no indication from the documents referred to in the complaint that the parties intended to be bound.  In the series of e-mail exchanges that Osseiran claims constitutes the November agreement for stock purchase, an IFC officer explicitly required that Osseiran "accept that [IFC's] acceptance is subject to documentation" and that the agreement will come into force only after the written sales agreement is signed.  (Def.'s Mot. to Dismiss, Ex. B (E-mail, Nov. 18, 2005 at 3:37 p.m.).) Further, the draft sales agreement unequivocally states that

-13-

neither party would be bound by the draft agreement. (Id. (Share
Sale Agreement at 1 ("This draft document is not a contract or an
offer to enter into a contract. Only the document as executed by
IFC and Mr. Osseiran will contain the terms that bind them.
Until the document is executed by IFC and Mr. Osseiran, neither
IFC nor Mr. Osseiran intends to be bound.")))  This evidence
demonstrates that IFC explicitly intended not to be bound to the
stock sale by its negotiations.

Osseiran argues that he is not required to prove his case in
the complaint and need only factually allege the existence of a
contract. See Meehan v. United States Office Prods. Co., 251 F.
Supp. 2d 77, 93 (D.D.C. 2003).  However, Osseiran fails to do
just that.  Although he asserts that parties "reached an
agreement upon the terms of Osseiran's purchase of IFC's and
Barclays' shares of MECG stock" (Am. Compl. ¶ 22), his complaint
and the documents it refers to never allege that the parties
intended to be bound by the agreement.  Instead, Osseiran admits
that the parties "agreed that the sale would be consummated upon
execution of a formal 'standard' stock purchase agreement" (id.),
and that no formal contract was implemented.  Accordingly,
Osseiran has not alleged the existence of a binding contract.

    B.  Breach of confidentiality

The parties agree that Osseiran's breach of confidentiality
allegation is a breach of contract claim.  Osseiran states that

-14-

the parties agreed in September 2005 that the negotiations were
to be kept confidential.  (Am. Compl. ¶ 21.)  He alleges that
this promise was made orally between himself and a named IFC
representative.  (Pl.'s Opp'n at 14.)  IFC characterizes this
language as conclusory and factually insufficient to allege an
agreement to be bound.

Taking Osseiran's allegations as true, he has provided
enough information about the contours of this alleged agreement
"to raise a reasonable expectation that discovery will reveal
evidence" of IFC's breach.  Twombly, 127 S. Ct. at 1965.
Osseiran identifies a time period in which the agreement was
made, the parties to the agreement, the substance of the
agreement, and the point at which the agreement was breached.
(See Am. Compl. ¶¶ 47-49.)  For this kind of argument, little
other than "he and I agreed to keep the negotiations
confidential" is needed to allege the terms of the agreement and
an intent to be bound.  This complaint presents no "[v]agueness
of expression, indefiniteness [or] uncertainty as to any of the
essential terms of an agreement [which] have often been held to
prevent the creation of an enforceable contract." Rosenthal v.
Nat'l Produce Co., 573 A.2d 365, 369-70 (D.C. 1990) (internal
quotations omitted).  Here, the terms of the confidentiality
agreement are sufficiently alleged such that the obligations
imposed by that agreement may be enforced.  Id. at 270.

-15-

Osseiran's claims as to the breach of confidentiality agreement survive IFC's motion to dismiss.

C.    Promissory estoppel

To factually allege promissory estoppel, a plaintiff must establish (1) the existence of a promise, (2) that the promise reasonably induced reliance on it, and (3) that the promisee relied on the promise to his detriment.  Daisley v. Riggs Bank, 372 F. Supp. 2d 61, 71 (D.D.C. 2005).  "District of Columbia law 'presupposes that an express, enforceable contract is absent when the doctrine of promissory estoppel is applied.'"  Id. (quoting Bldg. Servs. Co. v. Nat'l R.R. Passenger Corp., 305 F. Supp. 2d 85, 95 (D.D.C. 2004)).  Given that reliance on an indefinite promise is unreasonable, "it must . . . be a promise with definite terms on which the promisor would expect the promisee to rely."  Arturi, 251 F. Supp. 2d at 73.  However, that promise need not contain language as specific and definite as that of an enforceable contract.

Osseiran has not factually alleged that IFC breached a valid and enforceable contract.  He has, however, alleged that the November agreement and IFC's subsequent promises to sign the agreement to sell the stock constituted a promise upon which he reasonably relied to his detriment.  See Bynum v. Equitable Mortgage Corp., Civ. Action No. 99-2266 (SBC), 2005 WL 818619, at *16 (D.D.C. Apr. 7, 2005).  Although IFC correctly notes that

-16-

there was no final sales agreement between itself and Osseiran
(Def.'s Mot. to Dismiss at 22), Osseiran alleges that IFC, in
concert with Barclays Capital, promised to "sell their MECG
shares to Osseiran and to incorporate those terms into a standard
stock purchase agreement, to be provided by IFC."  (Am. Compl.
¶ 3.)  Additionally, Osseiran alleges that IFC repeatedly
promised the imminent consummation of the stock sale leading him
to purchase at a cost of over one million dollars additional
shares in his thwarted effort to gain a majority holding.  While
the terms of IFC's promise were less definite than those of a
potentially enforceable contract, Osseiran has sufficiently
alleged that IFC made promises that it intended to sell its MECG
stock and promises to sign the draft agreement upon which he
reasonably relied to his detriment.  Cf. Arturi, 251 F. Supp. 2d
at 73 (dismissing promissory estoppel claim because the promise
was so vague and indefinite that the plaintiffs could not have
reasonably relied upon it).  Thus, Osseiran has stated a claim
for promissory estoppel.

III. FORUM NON CONVENIENS

     "Dismissal for forum non conveniens reflects a court's
assessment of a 'range of considerations, most notably the
convenience to the parties and the practical difficulties that
can attend the adjudication of a dispute in a certain locality.'"
Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 127 S. Ct.

-17-

1184, 1190 (2007) (quoting <u>Quakenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 723 (1996)).  "A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."  <u>Sinochem Int'l</u>, 127 S. Ct. at 1191.

In assessing a forum non conveniens claim, "[a]s a prerequisite, the court must establish whether an adequate forum exists which possesses jurisdiction over the whole case." <u>Nemariam v. Fed. Democratic Rep. of Eth.</u>, 315 F.3d 390, 392 (D.C. Cir. 2003).  "'[W]here the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute.'"  <u>El-Fadl v. Cent. Bank of Jordan</u>, 75 F.3d 668, 677 (D.C. Cir. 1996) (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 254 n.22 (1981)).  "[A]n alternative forum in which the plaintiff can recover nothing for a valid claim may [not] be deemed adequate." <u>Nemariam</u>, 315 F.3d at 395 (noting that it would "be peculiar indeed to dismiss [plaintiff's] claim in the United States District Court -- a forum in which, assuming the court has jurisdiction, [the plaintiff] is certain to be awarded full relief if she wins on the merits of her claim -- in favor of a forum in which she has no certainty of getting any relief for a meritorious claim").

-18-

IFC argues that Guernsey, a Channel Island off the Southeast coast of England, is an adequate alternative forum for Osseiran's claims because it is convenient for all parties and possesses jurisdiction over Osseiran's claims.  IFC notes that the parties agreed that the sales contract under negotiation would be "governed by, and interpreted in accordance with, Guernsey law." (Def.'s Mot. to Dismiss, Ex. B, Share Sale Agreement.)  However, Guernsey law does not recognize certain laws of equity.  (See Def.'s Mot to Dismiss, Ex. A, 2d Aff. Mark Dunster at 3 (referring to 1st Aff. Mark Dunster ¶ 29).)  IFC admits that a Guernsey court would not provide any equitable remedies, thus foreclosing Osseiran's promissory estoppel claim and his request for specific performance, but contends that he could receive damages.  (Def.'s Reply to Pl.'s Opp'n ("Def.'s Reply") at 14.) Given that Osseiran's action implicates equitable contractual relief, and the District of Columbia recognizes promissory estoppel and has specific performance as an available remedy, this forum could allow Osseiran full relief.  Because Osseiran would be unable to pursue full relief in a Guernsey court, IFC's motion to dismiss on the ground of forum non conveniens will be denied.

## CONCLUSION AND ORDER

Osseiran has demonstrated that IFC waived its immunity for this action under IOIA and its Articles of Agreement, thus

-19-

establishing subject matter jurisdiction.  He has sufficiently
stated claims for breach of a confidentiality agreement and for
promissory estoppel, but has failed to state a claim for breach
of a sales contract.  This forum is an appropriate one in which
to litigate this case.  Additionally, Osseiran's motion to stay
the proceedings to allow jurisdictional discovery will be denied
as moot because jurisdiction over his action has been
established.  Accordingly, it is hereby

    ORDERED that IFC's motion [10] to dismiss be, and hereby is,
GRANTED in part and DENIED in part.  Count I of the Amended
Complaint is DISMISSED.  It is further

    ORDERED that Osseiran's motion [21] to stay be, and hereby
is, DENIED as moot.

    SIGNED this 27th day of July, 2007.


                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge