UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SALAH N. OSSEIRAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-336 (RWR) |
| | ) | |
| INTERNATIONAL FINANCE | ) | UNDER SEAL |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Salah Osseiran brought claims for breach of
contract, promissory estoppel, and breach of a confidentiality
agreement against the International Finance Corporation ("IFC"),
alleging that IFC failed to sell to Osseiran its shares of the
Middle East Capital Group ("MECG") after agreeing to the
transaction.  A July 27, 2007 memorandum opinion dismissed
Osseiran's breach of contract claim.  Osseiran moves for
reconsideration of the dismissal, arguing that documents
disclosed during discovery reveal that IFC intended to be bound
to the sale by the writings Osseiran alleges constituted the
breached agreement.  Because the language of those writings
objectively reflects the unambiguous intent of the parties not to
be bound to the sale, and the newly discovered evidence bears
only on the subjective intent of IFC rather than on a meeting of

the parties' minds, Osseiran's motion for reconsideration will be denied.

## BACKGROUND

The background of this case is discussed fully in <u>Osseiran v. Int'l Fin. Corp.</u>, 498 F. Supp. 2d 139 (D.D.C. 2007). Briefly, Osseiran alleges that IFC agreed in a series of preliminary email exchanges with him to sell to him its MECG shares. One of those emails ("November 18 email at 3:37 p.m.") provided that any agreement to sell would come into force only after the parties signed a written sales agreement. <u>Id.</u> at 146. Jan Van Bilsen, the IFC representative with whom Osseiran had been negotiating, then forwarded a draft sales agreement to Osseiran that contained on its cover page the statement that

> [t]his draft document is not a contract or an offer to
> enter into a contract. Only the document as executed
> by IFC and Mr. Osseiran will contain the terms that
> bind them. Until the document is executed by IFC and
> Mr. Osseiran, neither IFC nor Mr. Osseiran intends to
> be bound.

<u>Id.</u> (quoting draft agreement). Ultimately, IFC decided not to sell its shares to Osseiran, opting for a different purchaser instead, and Osseiran brought this suit. IFC moved to dismiss, and the July 27th opinion granted IFC's motion with respect to Osseiran's breach of contract claim on the ground that Osseiran failed to plead that the parties intended to be bound to the sale by their agreement, and that the documents referred to in the complaint demonstrated that "IFC explicitly intended not to be

- 3 -

bound to the stock sale by its negotiations." <u>Id.</u>  Osseiran

moves for reconsideration of the dismissal, arguing that internal

IFC emails produced during discovery demonstrate that IFC

intended to be bound to the sale by the emails and draft sales

agreement exchanged with Osseiran because "Van Bilsen -- who had

been delegated full authority to consummate the sale and was thus

the most knowledgeable and qualified IFC agent to express IFC's

intent -- stated to others in the organization that IFC could no

longer consider other offers to purchase its MECG shares."

(Pl.'s Mem. in Supp. of Pl.'s Mot. for Reconsideration of the

Court's Order Dismissing Count I of the Am. Compl. ("Pl.'s Mem.")

at 8.)

DISCUSSION

The defendants' motion for reconsideration will be decided

under Federal Rule of Civil Procedure 54(b), which governs

interlocutory orders, since the July 27th opinion was not a final

judgment that terminated the litigation.  <u>See</u> <u>Williams v. Savage</u>,

569 F. Supp. 2d 99, 108 (D.D.C. 2008) (noting that the "standard

of review for interlocutory decisions differs from the standards

applied to final judgments").  A district court may revisit its

interlocutory decisions "at any time before the entry of judgment

adjudicating all the claims and all the parties' rights and

liabilities[,]" Fed. R. Civ. P. 54(b), as justice requires.  <u>Am.</u>

<u>Fed'n of Teachers, AFL-CIO v. Bullock</u>, 605 F. Supp. 2d 251, 257

(D.D.C. 2009).  Relevant considerations include "whether the court patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred[.]"  Id. (quoting In Def. of Animals v. Nat'l Insts. of Health, 543 F. Supp. 2d 70, 75 (D.D.C. 2008)).  The moving party must demonstrate that "some harm would accompany a denial of the motion to reconsider[.]"  In Def. of Animals, 543 F. Supp. 2d at 76.  Ultimately, a court has wide discretion in deciding a motion for reconsideration and can revise its earlier decision if such relief is necessary under the circumstances.  Judicial Watch v. Dep't of Army, 466 F. Supp. 2d 112, 123 (D.D.C. 2008).

First, Osseiran argues that while he "would ultimately be required to prove that the parties intended to be bound, a specific allegation to that effect should not have been required to survive IFC's motion to dismiss."  (Pl.'s Mem. at 7 n.3.)  However, this is the same argument that Osseiran made in his opposition to IFC's motion to dismiss.  (See Pl.'s Opp'n to Def.'s Mot. to Dismiss the Compl. at 8-11 ("It is true that a contract is valid and enforceable only if there is . . . an intention to be bound. . . .  But plaintiff is not required to prove his case in the complaint.").)  Because Osseiran is merely attempting to reargue -- without citing any new authority -- a

- 5 -

theory upon which the July 27th opinion already ruled, he has not provided a basis for reconsideration.  See Howard v. Gutierrez, 571 F. Supp. 2d 145, 150 n.1 (D.D.C. 2008) (denying motion for reconsideration under Rule 54(b) because moving party "fail[ed] to cite any new authorities or evidence and instead attempt[ed] to reargue theories that were already rejected by the Court").

Osseiran argues, alternatively, that documents produced during discovery provide evidence that IFC intended to be bound to the sale by the emails and draft sales agreement sent between IFC and him.  (Pl.'s Mem. at 8.)  To create a contract under District of Columbia law, parties must, among other requirements, manifest their mutual assent -- in other words, there must be a "meeting of the minds."  Davis v. Winfield, 664 A.2d 836, 838 (D.C. 1995).  Whether a written agreement reflects a meeting of the minds, however, is determined not by the parties' subjective intent, but by whether the writing demonstrates objectively that the parties intended to be bound by it.  See 1836 S St. Tenants Ass'n, Inc. v. Estate of B. Battle, 965 A.2d 832, 837 (D.C. 2009) (noting that "regardless of the parties' actual subjective intentions, the ultimate issue is whether, by their choice of language . . . , they *objectively* manifested a mutual intent to be bound contractually"); see also Simon v. Circle Assocs., Inc., 753 A.2d 1006, 1012 (D.C. 2000) ("[The District of Columbia] adhere[s] to the 'objective law' of contracts, meaning that the

- 6 -

language of the agreement as it is written governs the
obligations of the parties unless that language is unclear or
there is fraud, duress, or mutual mistake."). A court may look
beyond the face of a written agreement to determine if the
parties intended to be bound only if the written words are
ambiguous. See Ekadahl v. COREStaff, Inc., 183 F.3d 855, 858
(D.C. Cir. 1999) (noting that "[p]roof of a meeting of the minds
may be found either in the written agreement or, if the agreement
is ambiguous, in the parties' actions at the time of contract
formation").

      Osseiran cites Burbach Broad. Co. v. Elkins Radio Corp., 278
F.3d 401, 407 (4th Cir. 2002), for the proposition that some
preliminary agreements, particularly those that are "intended as
binding, despite a need for further documentation[,]" are
enforceable. Parties are not bound by a preliminary agreement
under District of Columbia law, however, if the language of the
preliminary agreement, "taken as a whole, clearly indicates that
[a party] did not intend to be bound [by the agreement] until a
written agreement had been signed by both sides." Jack Baker,
Inc. v. Office Space Dev. Corp., 664 A.2d 1236, 1239 (D.C. 1995)
(second alternation in original) (quoting Simplicio v. Nat'l
Scientific Personnel Bureau, Inc., 180 A.2d 500, 502 (D.C.
1962)). Here, the language of both the November 18 email at
3:37 p.m. and the draft sales agreement reflected the same clear

intent not to be bound to the sale at that preliminary stage.  As the draft sales agreement stated, "[o]nly the document as executed by IFC and Mr. Osseiran will contain the terms that bind them.  Until the document is executed by IFC and Mr. Osseiran, neither IFC nor Mr. Osseiran intends to be bound." Osseiran, 498 F. Supp. 2d at 146 (quoting draft agreement).  This language unambiguously demonstrates that the parties had not manifested an objective intention to be bound to the sale by the preliminary emails and draft sales agreement that the parties exchanged, and Osseiran does not argue that the parties ever executed a final sales agreement.  Thus, the parties did not form a final contract for the sale of the MECG shares -- regardless of whether the newly discovered internal IFC emails show that IFC subjectively believed itself to be bound to the sale by the draft sales agreement -- because objectively the parties had unambiguously agreed in the preliminary emails and the draft sales agreement that they would not be bound to the sale unless and until they executed a final draft.  Osseiran would have failed to state a claim that IFC breached an agreement to sell its shares even if he had incorporated by reference the internal IFC emails in his complaint because those emails do not disturb the plain language of the preliminary emails and draft sales agreement that the parties exchanged and that reflect their meeting of the minds. Osseiran, therefore, cannot show that any harm would accompany a

- 8 -

denial of his motion for reconsideration, and his motion will be denied.

## CONCLUSION AND ORDER

Osseiran's newly discovered evidence does not disturb the July 27th opinion's conclusion that the draft sales agreement did not bind the parties to a sale, and he otherwise merely reiterates an argument that the July 27th opinion already addressed.  Accordingly, it is hereby

ORDERED that plaintiff's motion [45] for reconsideration be, and hereby is, DENIED.

SIGNED this 25th day of June, 2010.

_____
RICHARD W. ROBERTS
United States District Judge