IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


SALAH N. OSSEIRAN,

        Plaintiff,

      vs.

INTERNATIONAL FINANCE CORPORATION,

      Defendant.
_____

                   CA No. 06-336
                   Washington, DC
                   April 17, 2013
                   10:00 a.m.


TRANSCRIPT OF PRETRIAL HEARING
BEFORE THE HONORABLE RICHARD W. ROBERTS
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:          CHRISTOPHER W. MAHONEY, ESQUIRE
                            JOSEPH S. FERRETTI, ESQUIRE
                            Duane Morris, LLP
                            505 9th Street, NW
                            Suite 1000
                            Washington, DC  20004
                            (202) 776-7867


For the Defendant:          FRANCIS A. VASQUEZ, JR., ESQUIRE
                            JONATHAN ULRICH, ESQUIRE
                            NICOLLE KOWNACKI, ESQUIRE
                            White & Case
                            701 Thirteenth Street, NW
                            Washington, DC  20005
                            (202) 626-3603

Court Reporter:                 Lisa M. Foradori, RPR
                                Official Court Reporter
                                U.S. Courthouse, Room 6706
                                333 Constitution Avenue, NW
                                Washington, DC  20001
                                (202) 354-3269

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1                        P R O C E E D I N G S

2              THE COURT:  Good morning.

3              COURTROOM DEPUTY:  This is in the matter of Salah

4    Osseiran versus the International Finance Corporation, Civil

5    Action Number 06-336.  I'd ask the parties to step forward and

6    identify yourselves for the record, please.

7              MR. MAHONEY:  Good morning, Your Honor.

8    Christopher Mahoney for the plaintiff, Mr. Osseiran.

9              THE COURT:  Good morning.

10             MR. VASQUEZ:  Good morning, Your Honor.  I'm Frank

11   Vasquez for International Finance Corporation.  I'm joined by

12   my colleagues, Nicolle Kownacki and Jonathan Ulrich.

13             THE COURT:  All right.  Good morning.  Thank you

14   for your indulgence.  I was about to say, I'm trying to inch

15   into the 21st century and I'm not sure I have caught up with

16   all of the technological requirements but we're getting there.

17             I think we've sent you all a minute order saying

18   that we are really going to focus on resolving all of these

19   objections because I don't want to spend the time with a

20   witness in the witness box -- witnesses in the witness box

21   resolving 259 objections.

22             But I did want to take a moment, if I could, to

23   just ask plaintiff's counsel, just so I can get the theory of

24   the case right.  Can you come on up to the podium?  Who

25   exactly, under your theory, committed the breach of

1    confidentiality?  It wasn't entirely clear.

2              MR. MAHONEY:  Your Honor, the evidence strongly

3    suggests or indicates that it was Mr. Daoud Khairallah who did

4    that.  At a minimum, the evidence also strongly indicates that

5    someone from IFC gave to third parties what's called the

6    Internal Sales Memo, which was the document approving the sale

7    before the sale was approved, such that the sale -- the

8    negotiations were divulged before the sale could be

9    consummated.

10             THE COURT:  And there was no possibility that any

11   documents that were shared between Barclays and IFC could have

12   been leaked by Barclays?

13             MR. MAHONEY:  None.

14             THE COURT:  Okay.

15             MR. MAHONEY:  The operative document was the

16   internal sales memorandum.  Mr. Osseiran never saw that.  I

17   don't believe Barclays ever saw that.  And the testimony is

18   that in February of 2006 at a board meeting it was indicated

19   by representatives from IFC that the Chairman of the Board of

20   MECG and its CEO had indicated that they had seen this

21   internal sales memo and they weren't happy about it because

22   they had established this committee to evaluate proposals to

23   purchase the shares.  And this was at odds with that committee

24   and they said undermined the committee.

25             THE COURT:  So, your theory then is that it was

1   Mr. Khairallah who committed the breach in perhaps discussing

2   with the MECG people -- Alturki or someone?

3          MR. MAHONEY:  The evidence indicates that he

4   verbally mentioned the negotiations to a third party.  The

5   evidence also indicates that that third party and another

6   third party saw this internal sales memo, which could not have

7   been divulged anyone but IFC.

8          THE COURT:  So your theory then is not Van Bilsen

9   was the one who committed the breach by discussing the sale

10  with Khairallah.

11         MR. MAHONEY:  Well, actually, Your Honor, that's a

12  good point.  A conservative look at the confidentiality

13  agreement would suggest that that, too, was a breach.  But the

14  operative effect of that breach was not to end the sale

15  because that was a communication within IFC.  Only when that

16  communication was made outside of IFC to Alturki, who was the

17  Chairman of MECG, did the sale end.

18         THE COURT:  I guess I was trying to make something

19  out of the papers you filed that suggested that there was an

20  importance to confidentiality even within the organizations.

21         MR. MAHONEY:  Absolutely.

22         THE COURT:  So, I wasn't clear whether the alleged

23  breach occurred when and if Van Bilsen talks to Khairallah or

24  whether your theory was because of some, I guess, importance

25  of internal confidentiality.  And I guess you are reading

1    whatever the agreement may or may not have been to cover

2    Van Bilsen not telling Khairallah, or whether you're saying it

3    was Khairallah then going outside the organization.  So, I

4    wasn't -- are these alternative theories?

5              MR. MAHONEY:  I would say certainly there are two

6    breaches, because the confidentiality agreement was

7    interpreted by Van Bilsen, as the record reflects, to pertain

8    even to those within the respective organizations.  So, when

9    he told Khairallah -- and, again, the record is full of

10   evidence that he was careful not to tell Khairallah until they

11   got close to consummating the deal.

12             So, yeah, there were two breaches.  One to

13   Khairallah and then from Khairallah and/or another third party

14   within IFC having divulged the sales memo.  But the result of

15   the latter breach is what ended the deal.

16             THE COURT:  Well, it sounds as if one of the

17   breaches, aside from divulging a document, was some

18   communication.  And is that a communication by Khairallah to

19   Alturki or someone at MECG?

20             MR. MAHONEY:  That is what the evidence strongly

21   suggests, Your Honor.  You've got evidence indicating that

22   Van Bilsen didn't want to tell Khairallah, for good reason.

23   And then when Khairallah learned -- again, the evidence

24   suggests that he told Alturki and/or the CEO of MECG.

25   Moreover, they saw these internal sales memorandum that

1   couldn't have been divulged by anyone but IFC.

2          THE COURT:  Well, who is going to testify to any

3   alleged breach by someone divulging the sale -- proposed sale

4   to Alturki.  Alturki, I understand, is not a witness and has

5   not been deposed; is that right?

6          MR. MAHONEY:  That's right.

7          THE COURT:  Who's going to testify, if that's what

8   your evidence is going to show?

9          MR. MAHONEY:  Sure.  There's documentation where

10  Osseiran confronts Van Bilsen with his understanding that

11  Alturki had been told this by Khairallah.  And the evidence

12  suggests that Van Bilsen indicated that that's probably what

13  happened.

14         THE COURT:  And backing up, I guess, a step.

15  Van Bilsen is going to be a witness?

16         MR. MAHONEY:  Yes.

17         THE COURT:  And Van Bilsen will or won't say that

18  he told Khairallah about the proposed sale?  I wasn't clear on

19  that.

20         MR. MAHONEY:  He will say that.

21         THE COURT:  He will say that. All right.  And

22  taking these different steps one at a time.  If he will say

23  that he told Khairallah, when did that occur?

24         MR. MAHONEY:  I think he'll testify that he

25  mentioned the negotiations in October.  And when he made

1    that --

2              THE COURT:  To?

3              MR. MAHONEY:  To Khairallah.  And when Khairallah

4    heard that, he indicated that he already knew that Osseiran

5    had made an offer.  And then further on in October and

6    November as the deal was progressing, Van Bilsen, with much

7    caution, went back and said:  We're closer to the deal.  I

8    want to inform you.  And we've processed this internal sales

9    memo, that means we're going to go forward with the deal.

10             And when they processed the internal sales memo --

11   and that was communicated to Khairallah in November -- then

12   Khairallah decided to resign from the board because it was his

13   position all along that this sale to Osseiran was inconsistent

14   with the committee process.

15             THE COURT:  And your theory that the breach may

16   have occurred by Khairallah telling Alturki or someone at

17   MECG, when did that occur?

18             MR. MAHONEY:  We think it occurred at or around the

19   time that he resigned in November.

20             THE COURT:  All right.  All right.  I just wanted

21   to ask those questions to try to get a little bit more clarity

22   in my own head about what the plaintiff's theory was.  But I

23   do want to go forward and address the objections.  I should

24   ask, did you all have -- I know the minute order I entered was

25   just yesterday, but some of the objections to incompleteness,

1    in particular, seemed to be fairly easy to address between

2    yourselves before we'd have to spend time here.

3              So, I guess my question is:  Did you all have any

4    time -- make any effort to deal with any of that before I get

5    started?

6              MR. MAHONEY:  Yes.

7              MR. VASQUEZ:  Yes, we did.

8              THE COURT:  All right.  Come up and tell me about

9    it.

10             MR. MAHONEY:  We've amended our exhibit list to

11   accommodate those incompleteness objections, as well as other

12   objections.

13             THE COURT:  You have a new one, you said?

14             MR. MAHONEY:  Yes.

15             THE COURT:  Should I be looking at that?

16             MR. MAHONEY:  Yes.

17             THE COURT:  All right.  All right.  Thank you.

18   I've got the same copy.

19             MR. VASQUEZ:  I have that copy, but I also have a

20   different list of our exhibits.

21             THE COURT:  All right.  What I've been given now by

22   counsel for the plaintiff is an Amended Exhibit A,

23   Mr. Osseiran's First Amended Exhibit List.  Do you have a

24   different one I should look at?

25             MR. VASQUEZ:  We have an Amended Exhibit B.

1        THE COURT:  I guess I should look at that one, too.

2   Thank you.  All right.  So, the quick review of the

3   plaintiff's amended exhibit list looks as if quite a few

4   incompleteness objections have been resolved.  Is that right?

5        MR. MAHONEY:  That's right, Your Honor.  It's my

6   understanding that all of them have been.

7        THE COURT:  Okay.  I should ask also about the --

8   this is the exhibit list.  What about the deposition

9   designations?  Some of those also were incompleteness

10  objections.  Anything I ought to be hearing about that?

11       MR. VASQUEZ:  Yes.  All of the incompleteness

12  objections have been resolved with respect to the depositions.

13       THE COURT:  Okay.  All right.  Well, then let's go

14  down the list then for the exhibits.  All right.  We'll take

15  up the plaintiff's exhibits first.  I've taken out the old

16  list that you all gave me and I'm looking just at the ones

17  that you've given me today.  I'll just take them in order.

18       Exhibit Number 1 is a relevance and hearsay

19  objection.  Let me hear the objection and a response to it.

20       MR. VASQUEZ:  Excuse me; do we have copies?  Give

21  one to the Court.

22       MR. MAHONEY:  Your Honor, would you like a set?

23       THE COURT:  Is this a list -- are these copies of

24  the exhibits?

25       MR. MAHONEY:  To which they are objecting.

1          THE COURT:  Plaintiff's exhibits.  Thank you.

2          MR. VASQUEZ:  Okay.  Exhibit 1 is a report created

3   by an auditor in 2004.  It's -- the auditor is not

4   testifying -- has not testified in this case.  We don't think

5   it's relevant because it's a year prior and this was not used

6   in any kind of valuation in this case at all.  And everything

7   that the auditor says, obviously, about the work is hearsay.

8          THE COURT:  So, this purports to make some

9   conclusions about valuation of the company stock or the

10  company?

11         MR. VASQUEZ:  I don't know what they would use it

12  for exactly.  It's a complete -- it's a consolidated statement

13  of the business of the company.

14         THE COURT:  As of 2004?

15         MR. VASQUEZ:  As of 2004.

16         THE COURT:  Which could have some impact on the

17  historical valuation efforts?

18         MR. VASQUEZ:  There's been no use of this for

19  valuation in this case.

20         THE COURT:  What is the relevance?  What's the

21  response?

22         MR. MAHONEY:  Your Honor, there is an analysis of

23  the losses incurred by the company and the capital erosion

24  that does speak to valuation.  Admittedly it is hearsay, but

25  it's certainly relevant to the question of valuation.

 1          THE COURT:  All right.  How do you overcome the

 2   hearsay objection?

 3          MR. MAHONEY:  Well, honestly, I don't think we can,

 4   and so I -- I'm not going to try.

 5          THE COURT:  The objection is sustained.

 6          Number 2.

 7          MR. VASQUEZ:  Okay.  Exhibit 2 is an IFC internal

 8   report from June of '05 before any of the relevant facts in

 9   this case took place.  And our objection is relevance.  It

10   doesn't -- and it's also hearsay in that it's got essentially

11   copies of Exhibit 1, or text that looks like it came from

12   Exhibit 1, that's just repeated in here.

13          THE COURT:  Mr. Mahoney?

14          MR. MAHONEY:  Your Honor, clearly, again, relevant

15   on the issue of valuation.  The erosion of capital losses

16   incurred by the company.  I don't know who wrote this.  It's

17   an IFC document.  There's no reference to third parties within

18   the document.  The defendant hasn't previously objected on

19   grounds of hearsay, just relevance.  It's plainly relevant.

20          THE COURT:  Is there no challenge to the

21   authenticity of this as an IFC document?

22          MR. VASQUEZ:  No, it's an IFC report, but it does

23   contain, for instance, if you look on -- excuse me.  We don't

24   know who wrote it, precisely, I don't think any of the

25   witnesses were questioned about it at their depositions.  And

1   if you look at this -- the last two pages at the bottom,

2   there's a purported summary of the unaudited December 2004

3   financials, which I think is the same document as Exhibit 1.

4          THE COURT:  All right.  I'll overrule the objection

5   and admit it as a statement of party opponent, if there's no

6   challenge, and I hear none, to the authenticity of this as an

7   IFC document.

8          Number 5.

9          MR. VASQUEZ:  Number 5 is an e-mail between

10  Barclays and IFC.  It's talking about guarantees.  This is

11  part of the -- this would have gone to the issue of whether a

12  contract was completed.  And the Court has already dismissed

13  that claim.  This doesn't have anything to do with the

14  confidentiality agreement or breach of a confidentiality

15  agreement.

16         THE COURT:  Although the author here is

17  Jan Van Bilsen?

18         MR. VASQUEZ:  Yeah.  It's just an e-mail to

19  Barclays.

20         THE COURT:  What's the relevance of this?

21         MR. MAHONEY:  Your Honor, it's centrally relevant

22  to your earlier point this morning.  If you look at the first

23  paragraph, Van Bilsen advises Barclays:  The reason I have not

24  cc'd all is because Osseiran has stressed confidentiality to

25  me, even within our organizations.  It couldn't be more

 1   relevant.

 2           THE COURT:  Any response, Mr. Vasquez?

 3           MR. VASQUEZ:  No.

 4           THE COURT:  All right.  The objection is overruled.

 5           Number 6.

 6           MR. VASQUEZ:  Number 6 is a -- it looks like an

 7   e-mail from Khalid Alturki to someone named Noura Moussa.

 8   I'm not sure who that is.  No, it's from Noura Moussa -- I'm

 9   not sure who that is -- to somebody at Barclays Capital just

10   talking about some meeting they're going to have.  We don't

11   see the relevance of that.

12           MR. MAHONEY:  Your Honor, this is an e-mail on

13   behalf of the Chairman of the Board/MECG to Barclays,

14   informing them of an upcoming board meeting on September 23rd

15   to discuss options available for the future strategic

16   direction of MECG.  This was the precursor to the meeting that

17   formed the committee that empowered Alturki to evaluate

18   proposals to come in, which was at odds with the sale to

19   Osseiran in which he claimed later that sale undermined.  So,

20   it's centrally relevant.

21           THE COURT:  Well, who's going to sponsor this?

22           MR. MAHONEY:  Well --

23           THE COURT:  Alturki is not testifying, is he?

24           MR. MAHONEY:  No.  I plan to ask Van Bilsen about

25   this.  The only objection here is relevance.  And it's not

1    irrelevant.

2              MR. VASQUEZ:  We think it is irrelevant unless

3    Alturki is testifying to everything he just told you.  The

4    testimony would have to come from --

5              THE COURT:  Won't there be live testimony about the

6    development of the committee?

7              MR. MAHONEY:  There will be.

8              THE COURT:  And this you would need for what

9    purpose?

10             MR. MAHONEY:  This is just the -- basically for the

11   chronology.  The committee was formed as a result of events.

12   This is one of them.

13             THE COURT:  Well, if the only issue is relevance --

14   I'm sorry -- if the only basis for the objection is relevance,

15   I'll overrule that objection.

16             Number 7.

17             MR. VASQUEZ:  Number 7 is another one of these

18   reports like we looked at for Exhibit 2.  I want to -- I mean,

19   I don't mean to go back on the Court with this.  But the

20   objection is not to the -- first of all, we don't think this

21   is relevant to the confidentiality agreement.

22             The second thing is, there is hearsay within

23   hearsay, which I should have said before with respect to

24   Exhibit 2.  When you look at this description of the unaudited

25   financials, that does not come from IFC, it comes out of that

 1   other document that was already excluded.  And I'm speaking of

 2   what's on IFC 240 at the bottom -- the whole page.

 3          THE COURT:  Mr. Mahoney.

 4          MR. MAHONEY:  Your Honor, this document was

 5   proposed for admission because it speaks to --

 6          THE COURT:  Tell me what it is.

 7          MR. MAHONEY:  I'm sorry.  It's the IFC internal

 8   credit risk rating report; it looks to me.

 9          THE COURT:  What does that mean?

10          MR. MAHONEY:  Well, that's something I would elicit

11   from IFC.  My understanding is it's an analysis of their

12   investment in MECG, and whether it merits staying in the

13   investment or exiting.  And there is mention made in the

14   report to them keeping their options open to exit the

15   investment, and that's eventually what happened.  And that's

16   what Osseiran was trying to be a party to.

17          And so it's certainly relevant on those grounds.

18   And that's really the only purpose for which we're seeking to

19   admit it, is to point out that the thought process at work

20   during that period of time was to exit the investment.

21          THE COURT:  Anything else on this?

22          MR. VASQUEZ:  Yeah.  Again, what he's speaking

23   about is a claim that's already been dismissed, which is the

24   contract claim, the promissory estoppel claim.  This does not

25   pertain to the confidentiality claim that's left.

1   THE COURT:  All right.  The objection is -- both

2 objections are overruled.  I will admit this as an admission

3 of a party opponent.

4   Number 12.

5   MR. VASQUEZ:  Number 12.  I'll actually withdraw

6 our objection to 12 because it now includes the whole

7 document.

8   THE COURT:  All right.  Number 13.

9   MR. VASQUEZ:  Yeah, this is just -- I'm not sure

10 what the substance of this is, other than it's talking about

11 copies of a sales memo.  We don't think this is relevant to --

12 it evidently hadn't been drafted -- Walid Cherif is not going

13 to be testifying in this case as well.

14   THE COURT:  Mr. Mahoney.

15   MR. MAHONEY:  Your Honor, again, this couldn't be

16 more relevant.  It speaks to the issue of the preparation of

17 the internal sales memo, which we allege was the document that

18 was divulged to third parties and was meant to be kept

19 confidential, and was in part responsible for the sale to

20 Osseiran not going forward.

21   So, when he is asking IFC headquarters to send him

22 samples of the equity sales memo, that's in this response to

23 Van Bilsen's urging that they talk about this project soonest.

24 There was an urgency to get the sales memo approved within

25 IFC.  To delegate authority to Van Bilsen and Cherif to sell

1    to Osseiran.  This was all meant to be confidential.

2            THE COURT:  Well, this doesn't seem to have much to

3    do with a proof and an agreement about confidentiality.  But

4    as part of Van Bilsen's testimony, I suppose he will talk

5    about the development of issues and how he got the sales --

6    equity sales memo from headquarters and what happened after

7    that.

8            I'll overrule the objection and permit that to be

9    used.  I assume you're going to introduce it through

10   Van Bilsen.

11           MR. MAHONEY:  Yes.

12           MR. VASQUEZ:  Let me just comment on this since I

13   didn't comment on it before.  There is not going to be anyone

14   that testifies in this case that says that IFC in fact

15   disclosed a sales memo.  There isn't going to be any exhibit

16   that shows that IFC disclosed the sales memo.  That the sole

17   argument of that comes from some hearsay statements from

18   something that happened three months later.

19           So, there isn't going to actually be any testimony

20   from a witness that IFC disclosed a sales memo.

21           THE COURT:  Okay.

22           MR. VASQUEZ:  That's the reason we don't think this

23   is relevant because it would have -- there would have to be

24   actually some evidence of that, besides somebody's hearsay

25   statement at a meeting in February.

1          THE COURT:  All right.  15.

2          MR. VASQUEZ:  Okay.  We can do 15 through 19 --

3    let's see.  Did we lose a couple?  We lost 18.  It got

4    deleted.  These are all, again, internal communications not

5    about confidentiality that -- again, to the extent this theory

6    about a sales memo is the basis for relevance, there's not

7    going to be any testimony from any witness that says that in

8    this case.

9          THE COURT:  All right.  Well, these appear to be a

10   series of four e-mails or e-mail exchanges involving

11   Van Bilsen.  And just to save a little time.  I take it he

12   would be testifying about how the sales agreement was -- the

13   draft of it he received, and then they worked on it with

14   others internally.  Is that how this is going to be used

15   during his testimony?

16         MR. MAHONEY:  That's right.

17         THE COURT:  That would be 15, 16, 17 and 19.

18         MR. MAHONEY:  Right.  And putting aside the issue

19   of divulgement, it clearly goes to the issue of the process by

20   which the sale was to be consummated, so it's relevant.

21         THE COURT:  All right.  I'll overrule the

22   objections to those four.

23         Number 20.

24         MR. VASQUEZ:  We withdraw our objection to 20.  So,

25   that should not be there.

1          THE COURT:  All right.  22.

2          MR. VASQUEZ:  22 is a draft of the sales memo.

3   And, again, there's not going to be a witness here that

4   testifies that this draft or any other draft was actually

5   disclosed outside of IFC.

6          MR. MAHONEY:  Your Honor, it's plainly relevant for

7   the reasons we discussed previously.  But in addition, if

8   you --

9          THE COURT:  Who's going to authenticate this?

10          MR. MAHONEY:  It's not been objected to on

11   authenticity grounds.  Van Bilsen will speak to this.

12          THE COURT:  Who is going to authenticate this?

13          MR. MAHONEY:  Van Bilsen.

14          THE COURT:  Go ahead.

15          MR. MAHONEY:  Sure.  If you look at -- I guess it's

16   Page 438 Bate number.

17          THE COURT:  Look at what?

18          MR. MAHONEY:  Bate Number 438.

19          THE COURT:  Yeah.

20          MR. MAHONEY:  The first paragraph in bold:

21   Cherif is telling Khambata that Osseiran is seeking to gain

22   control of the company and change its strategic objective.

23   That's entirely consistent with our theory of the case.  That

24   he just wasn't buying one off shares, it was his goal to

25   acquire control.  And this speaks to that as well as the

1    process by which the sale was meant to be consummated.

2              THE COURT:  Tell me what language you wanted me to

3    look at again.

4              MR. MAHONEY:  I'm sorry.  It's the first paragraph,

5    the bold language.  This proposal will be to Mr. Osseiran, an

6    existing shareholder, with 2% shareholding, who is seeking to

7    gain control of the company and change its strategic

8    objectives.  That is underscored.

9              THE COURT:  All right.  Anything else on that?

10             MR. VASQUEZ:  No, Your Honor.  Again, there's no

11   evidence this was --

12             THE COURT:  Objection is overruled.  I'll permit

13   that.  26.

14             MR. VASQUEZ:  Okay.  This, again, is just

15   communications with Barclays about what their offer is going

16   to be for this contract that was never completed.  So, we

17   don't think it's relevant to confidentiality.

18             MR. MAHONEY:  Your Honor, at the risk of repeating

19   our theory of the case.  Our theory is, but for the breach of

20   the confidentiality agreement, the sale would have proceeded.

21   This speaks to the process of the sale.  It's centrally

22   relevant.  And there's also another bit of information in

23   here.

24             THE COURT:  Summarize for me what the information

25   is that is exchanged in this e-mail.

1           MR. MAHONEY:  I was looking for it.  But as I do

2   recall it, there's a reference made to tension between

3   Mr. Alturki and Mr. Moussallem.  Mr. Moussallem was the CEO of

4   MECG.  Mr. Alturki was the chair.  There was tension between

5   Moussallem and Alturki.  Alturki didn't want any MECG to

6   survive because it would reflect poorly on his management

7   skills.

8           Moussallem was the manager; he wanted to have a

9   management buy out.  So, there was a clash.  And part of our

10  theory is that given Alturki's predisposition toward

11  liquidating MECG, the sale to Osseiran would have occurred

12  essentially over his dead body.  So, that's the relevance

13  in --

14          THE COURT:  Say that again.  The sale --

15          MR. MAHONEY:  The sale to Osseiran would have

16  occurred over his dead body because he was intent on

17  liquidating it and not leaving a legacy that the company could

18  actually function under a separate management.  So, that and

19  the process of the sale speaks to the relevance of these.

20          THE COURT:  Tell me what this -- summarize what

21  this exchange of e-mails says.  I have it in front of me, but

22  do you want me to stop and read every page of it?

23          MR. MAHONEY:  No, no, I'm sorry.

24          THE COURT:  Okay.

25          MR. MAHONEY:  It essentially asks Osseiran to

1   increase his price.  And they're looking to settle soon.  And

2   there's this mention made of tension between Moussallem and

3   Alturki.  These are communications between IFC and Barclays.

4           THE COURT:  Are all of them communications between

5   Van Bilsen and Barclays?

6           MR. MAHONEY:  It looks like that's the case, Your

7   Honor.  This is one of those where we sort of acceded to the

8   request of the defendant that we pull these e-mails.  But they

9   appear to be an e-mail chain from -- between personnel at IFC

10  and Barclays.

11          THE COURT:  All right.  The objection is on

12  relevance grounds and that's overruled.

13          MR. VASQUEZ:  Well, if I might just point out, Your

14  Honor.  Again, Mr. Alturki is not going to be testifying.  His

15  intent or lack of intent is not relevant in this case.  Same

16  thing with Mr. Moussallem.  Everything counsel said is pure

17  speculation about what they may or may not have been thinking.

18  And that's why -- inputting modus into people that aren't

19  going to be here and aren't going to be testifying is not

20  going to be relevant in this case and it's going to be

21  misleading, if we are speculating about what people that

22  aren't here and haven't been deposed are thinking at a

23  particular time, based on what somebody else says.

24          THE COURT:  33.

25          MR. VASQUEZ:  Okay.  These -- hang on one second.

1   Okay.  Is 32 the combined -- the ones that were deleted?

2              MR. MAHONEY:  Yeah, 32 is just --

3              MR. VASQUEZ:  Okay.  33.  Sorry.  33.  Again, this

4   doesn't have anything to do with confidentiality.  It's just

5   talking about the deal or offers that didn't actually result

6   in a deal.  So, it's all about just what they were planning on

7   offering.

8              THE COURT:  All right.  But Van Bilsen will be

9   talking about the negotiations and presumably the shifts in

10  some of the price offerings.  If there's nothing else you have

11  to say, I'm going to overrule that objection.  You will be

12  eliciting from Van Bilsen his testimony about the course of

13  the negotiations?

14             MR. MAHONEY:  Yes.

15             THE COURT:  All right.  For 33, that's overruled.

16  35.

17             MR. VASQUEZ:  Okay.  34 is gone now; is that right?

18  Okay.

19             MR. MAHONEY:  Yeah.

20             MR. VASQUEZ:  35.  This is the sales memorandum

21  that was signed.  You'll note that it does not have the

22  language that Mr. Mahoney referenced before.  Again, there

23  isn't going to be one person that testifies that this was

24  disclosed outside of the IFC.  In fact, the testimony is going

25  to be this would never be disclosed outside of IFC.

1           THE COURT:  But this is the final approval

2    memorandum to allow the transaction to occur between IFC

3    and --

4           MR. VASQUEZ:  That is one --

5           THE COURT:  Excuse me -- between IFC -- she can't

6    take down two voices at the same time -- between IFC and

7    Mr. Osseiran?

8           MR. VASQUEZ:  This is one of the necessary steps.

9           THE COURT:  All right.

10          MR. MAHONEY:  Your Honor, this is the final step,

11   absent securing guarantees and executing the sales agreement.

12   This is the document that delegated authority to Van Bilsen to

13   consummate the deal.  It's clearly relevant.

14          THE COURT:  Well, it will be the subject of his

15   testimony?

16          MR. MAHONEY:  Indeed.

17          THE COURT:  That is overruled then.  35 will be

18   allowed.  37.

19          MR. VASQUEZ:  Okay.  36 was just withdrawn or was

20   it consolidated into something else?  I'm sorry, Your Honor.

21   If you can tell me where that went.  It's at 26 now?

22          THE COURT:  No, 37.  I'm sorry; you're asking me --

23          MR. VASQUEZ:  No, I'm inquiring -- I'm sorry; I'm

24   inquiring with counsel about what happened to Exhibit 36

25   because it disappeared.

```
 1              THE COURT:  Well, when you --

 2              MR. VASQUEZ:  And I thought it looks like it may

 3    have been combined with something else, but I don't --

 4              MR. MAHONEY:  26.

 5              MR. VASQUEZ:  26.  Okay.  Thank you.  I'm sorry,

 6    Your Honor; now we're on 37.

 7              THE COURT:  37.

 8              MR. VASQUEZ:  Okay.  This, again, is more about the

 9    sales memo.  We are objecting for the same reasons.

10              THE COURT:  You say essentially the same objection;

11    is that what you said?

12              MR. VASQUEZ:  Yes.

13              THE COURT:  That will be overruled.  38.

14              MR. VASQUEZ:  Same objection.

15              THE COURT:  All right.  That's overruled.  45.

16              MR. VASQUEZ:  45.  They are talking about -- again,

17    this is all going to the acceptance of the contract that was

18    never consummated, and these claims have been dismissed.

19              THE COURT:  All right.  Anything further on that,

20    Mr. Vasquez?

21              MR. VASQUEZ:  No.

22              THE COURT:  That is overruled.  45 will be allowed.

23    46.

24              MR. VASQUEZ:  Same objection.

25              THE COURT:  All right.  This appears to be another
```

1  in a continuing series of exchanges about developing this sale

2  with Osseiran.  That will be overruled.  49.

3           MR. VASQUEZ:  We'll withdraw our objection to that.

4           THE COURT:  All right.  55.

5           MR. VASQUEZ:  55.  55.  If we're correct, it should

6  be -- it should go with 54 as one exhibit.

7           THE COURT:  You have not objected to 54?

8           MR. VASQUEZ:  No, but we'd like them put together.

9  I think by itself this doesn't -- it says:  Many thanks for

10 your detailed e-mail.  The detailed e-mail, we think, is

11 Number 54.  So, it puts whatever this is in context.

12          THE COURT:  Well, if it's simply a matter of

13 joining them, I'll overrule the objection.  And if for some

14 reason the plaintiffs do not introduce 55 into evidence, I'll

15 allow you to do it.

16          MR. VASQUEZ:  Okay.

17          THE COURT:  All right.  I should ask Mr. Mahoney,

18 you do expect to introduce that into evidence?

19          MR. MAHONEY:  I do.

20          THE COURT:  It's admitted then.  58.

21          MR. VASQUEZ:  This is the same objection I made to

22 the previous ones.  It's just internal discussions about the

23 next step in this analyst process.

24          THE COURT:  That will be overruled.  60.

25          MR. VASQUEZ:  Same objection.

```
 1              THE COURT:  All right.  That will be overruled.
 2   That's admitted.  61.
 3              MR. VASQUEZ:  61 looks like something that
 4   Mr. Osseiran sent to somebody named Nabil Khairallah.  And it
 5   doesn't have anything to do with IFC.
 6              THE COURT:  All right.  Mr. Mahoney.
 7              MR. MAHONEY:  Your Honor, this exhibit confirms a
 8   sale of shares from Nabil Khairallah to Mr. Osseiran.  Nabil
 9   Khairallah was one of two members of the committee, he and
10   Alturki.  So he was actually involved in selling his shares
11   during the process of a committee that was set up to take in
12   proposals other than Osseiran's.
13              And what's important here is this predates the
14   eventual sale to First National Bank of Lebanon.  IFC's theory
15   in part is that Mr. Osseiran really wasn't interested in
16   becoming a majority shareholder; he just wanted to buy
17   Barclays and IFC shares.  Well, this speaks to that issue.
18   And the issue is raised in terms of relevance.  It's relevant
19   to that issue.
20              THE COURT:  I take it your client will authenticate
21   this document?
22              MR. MAHONEY:  Yes.
23              THE COURT:  Anything else?
24              MR. VASQUEZ:  Yeah.  This does not confirm a sale.
25   This is an offer letter.  We don't think this was -- that it
```

 1    was sold under these terms, actually.  The parties have

 2    stipulated when the sales occurred in this.  What's important

 3    about that to us is that Mr. Osseiran really didn't go around

 4    trying to buy people's shares until after the alleged breach

 5    of confidentiality.  All of that happened after IFC said they

 6    were putting their transaction on hold.  Then Mr. Osseiran

 7    went around buying people's shares.

 8            We think he did it because he was working on his

 9    lawsuit.  But you can see it's a completely different activity

10    from what happened before the breach.  We don't think things

11    that happened -- sales that did not occur are going to be

12    relevant ultimately in determining whether there are damages

13    from a breach that happened before.  He's basically creating

14    his own evidence by doing things afterwards.

15            MR. MAHONEY:  Your Honor, it's important to note,

16    Mr. Osseiran wasn't informed of the suspension of the sale by

17    IFC until -- I think it was mid-December.  This document is

18    dated November 30th.  So, he was intent on purchasing sales

19    before the suspension of sale by IFC.

20            THE COURT:  All right.  That objection will be

21    overruled.  It perhaps goes to the weight of the proof, but

22    not to its relevance.  So, that's overruled as to 61.  63.

23            MR. VASQUEZ:  These are e-mails between Barclays

24    and IFC.  Again, about all the issues that were still

25    outstanding in connection with these contracts that never were

 1   consummated.  I mean, this mostly looks like Barclays talking

 2   about what they needed.  We don't think it's relevant to

 3   confidentiality or --

 4            THE COURT:  The objection is overruled.  That will

 5   be allowed.  Number 70.

 6            MR. VASQUEZ:  We have the same objection.  This is,

 7   again, another e-mail chain between IFC and Barclays about

 8   drafting these documents and -- it doesn't pertain to

 9   confidentiality.

10            THE COURT:  All right.  That objection is overruled

11   as to Number 70.  73.

12            MR. VASQUEZ:  This concerns bank guarantees with

13   UBS, and that was never completed.  Again, it's not relevant

14   to confidentiality.

15            THE COURT:  These are bank guarantees pertaining to

16   the proposed sale between IFC and Osseiran?

17            MR. VASQUEZ:  Yeah.  And, in fact, the date of this

18   is after this alleged breach.

19            THE COURT:  All right.  Anything else?

20            MR. MAHONEY:  Do you want to hear from me, Your

21   Honor?

22            THE COURT:  Yes.  Do you have anything else?

23            MR. MAHONEY:  This, again, chronicles the sales

24   process.  This was the last step in the process.  The

25   obtainment of the guarantees.  And they were almost obtained,

 1  but they weren't obtained in time to be had before Alturki

 2  sent his letter to IFC essentially quashing the deal.  That's

 3  why they are relevant.

 4          THE COURT:  All right.  The objection is overruled.

 5  We'll move to 75.

 6          MR. VASQUEZ:  We'll withdraw our objection to that.

 7          THE COURT:  All right.  91.  Just a moment, I think

 8  I turned a page too far.  I did.  76.

 9          MR. VASQUEZ:  This is, again, after this alleged

10  breach.  It concerns another step that they were doing that --

11  "know your client" step, and we don't think it's relevant to

12  the confidentiality or to the breach.

13          THE COURT:  What is this?

14          MR. MAHONEY:  This looks like it's an internal IFC

15  confirmation that after they ran what's called your KYC, "know

16  your customer" process.  Basically a background check.  That

17  there was nothing found in the initial screening adverse

18  pertaining to Mr. Osseiran.

19          Again, it speaks to the sales process and the

20  ultimate consummation but for the breach.

21          THE COURT:  Who is the author?

22          MR. MAHONEY:  It's an exchange between Walid Cherif

23  and Huishu Ji.  Van Bilsen was cc'd on this.  He can speak to

24  this.

25          MR. VASQUEZ:  Neither of those people will be

1    testifying, Cherif or --

2              THE COURT:  But Van Bilsen will?

3              MR. VASQUEZ:  Yes.

4              THE COURT:  All right.  Your relevance objection on

5    76 is overruled.  78.

6              MR. VASQUEZ:  This is about a thank you letter sent

7    to Daoud Khairallah about bank guarantees.  You can see from

8    this, you know, that they weren't actually that close

9    because --

10             THE COURT:  That what?

11             MR. VASQUEZ:  They weren't actually that close.  It

12   was still weeks away and confidentiality had already been

13   breached at this point.

14             THE COURT:  All right.  Anything else?

15             MR. MAHONEY:  Your Honor, this again speaks to the

16   issue of the sales process.  The bank guarantees were on the

17   verge of being issued by UBS.  And the thank you note that

18   Mr. Vasquez refers to is a letter that Farida Khambata

19   implored Van Bilsen to write to Khairallah to thank him for

20   all of his efforts after they shared with them that they were

21   going to sell to Osseiran, much to his dismay.

22             THE COURT:  I'll overrule that objection.  79.

23             MR. VASQUEZ:  Yeah.  79 is another discussion

24   between Barclays and IFC about various details of things that

25   still needed to be done.  It's post-breach and it's not

1    relevant to confidentiality.

2            THE COURT:  All right.  That same relevance

3    objection will be overruled as to 79.  80.

4            MR. VASQUEZ:  80, 81 and 82 are correspondence

5    about bank guarantees with the guy at the UBS named

6    Rosenberger.  Again, we don't think that's relevant to any of

7    the issues in this case.

8            THE COURT:  Mr. Mahoney, what language in these

9    three e-mails shows me that it's relevant to this transaction?

10           MR. MAHONEY:  Well, Your Honor, if you look at

11   Bates 1169, Van Bilsen is confirming with Osseiran's bank --

12   he's looking forward to receiving the draft wording on the

13   guarantee.  Again, that would have been one of the final steps

14   to consummating the sale.

15           THE COURT:  So, Van Bilsen will testify that this

16   was a series of steps taken in connection with the transaction

17   with Mr. Osseiran?

18           MR. MAHONEY:  Yes, sir.

19           THE COURT:  As to each of these three e-mails?

20           MR. MAHONEY:  Yes, sir.

21           THE COURT:  All right.  The relevance objections to

22   80, 81 and 82 are overruled.  91.

23           MR. VASQUEZ:  I'm just looking at the old list

24   versus the new list.  For 86 that's in this binder, we had a

25   completeness objection on that.  I don't -- did you add

1   something to that here now?

2           MR. MAHONEY:  Yes.

3           MR. VASQUEZ:  I note this is the same -- it should

4   be the same document as -- actually, this -- no, I don't think

5   this is complete.  I think it's still missing another e-mail.

6   If you look at -- let me get one document.  Sorry.  Yeah.  But

7   there is another e-mail that went after this one and we have

8   included that in Defendant's Exhibit 31.  We think it should

9   be included.

10          THE COURT:  Are you talking to me or to counsel?

11          MR. VASQUEZ:  I'm talking to you, Your Honor.

12          THE COURT:  Okay.  So, what is the objection to 91?

13          MR. VASQUEZ:  It's not complete in this form.  If

14  what is offered is the same as our Defendant's Exhibit 31.

15          THE COURT:  Mr. Mahoney?

16          MR. MAHONEY:  Can we have one minute, Your Honor?

17          MR. VASQUEZ:  I don't think they objected to 31 --

18  our 31.

19          MR. MAHONEY:  Your Honor, I guess I'm not as

20  technologically advanced as I'd like to be either.  These are

21  different Bates ranges, so I'm not certain that Exhibit 31 is

22  part of Exhibit -- is it 86?  We have not objected to their

23  Exhibit 31, but I just don't see that there's an

24  incompleteness issue here is what I'm saying.

25          THE COURT:  Well, there's no objection on the list

```
 1    that I see to your Defendant's Exhibit 31, and if you're

 2    saying that ought to be admitted, you can certainly -- it will

 3    be admitted.

 4              MR. VASQUEZ:  Okay.

 5              THE COURT:  Does that take care of any objection

 6    that you have then to 91?

 7              MR. MAHONEY:  One moment.

 8              MR. VASQUEZ:  This is 86, Your Honor.

 9              THE COURT:  I'm sorry.

10              MR. VASQUEZ:  This is 86 we're talking about.

11              THE COURT:  That's what you're talking about.  What

12    I asked about was 91.

13              MR. VASQUEZ:  Okay.  I'm not there yet.

14              THE COURT:  Okay.

15              MR. VASQUEZ:  I'm sorry.

16              THE COURT:  Because 86 has no objection listed in

17    the new list.

18              MR. VASQUEZ:  Yes.  Counsel just produced that list

19    and it's missing what we had put there before.

20              THE COURT:  All right.  So, can we go to 91?

21              MR. VASQUEZ:  Yeah.

22              THE COURT:  All right.

23              MR. MAHONEY:  Your Honor, what's the ruling on 86?

24    I'm sorry.  What was the ruling on 86?

25              THE COURT:  There was no ruling on 86 because there
```

1    is no objection to 86.

2              MR. MAHONEY:  Okay.

3              MR. VASQUEZ:  Actually, there was an objection to

4    86.  What I'm saying, Your Honor, we submitted an objection to

5    86 with our original submissions.  When they produced this

6    last night, they neglected to copy that onto here.

7              THE COURT:  All right.  I do have 86 in front of

8    me.  What is your objection to 86 then?

9              MR. VASQUEZ:  Our objection to 86 was that it was

10   incomplete, and we noted that a complete version of this

11   e-mail chain was in Defendant's Exhibit 31.

12             THE COURT:  All right.  Defendant's Exhibit 31 --

13   I'll jump ahead -- is admitted.  Does that take care of your

14   completeness objection?

15             MR. VASQUEZ:  Yes.

16             THE COURT:  Okay.

17             MR. VASQUEZ:  There's another missing objection on

18   the list you have there.

19             THE COURT:  Which one, 88?

20             MR. VASQUEZ:  88.

21             THE COURT:  What is your objection?

22             MR. VASQUEZ:  Our objection was relevance and that

23   it's incomplete.  This is -- well, it's also hearsay.  It's

24   from some other person named Joseph Tarabi to Sheikh Khalid

25   Alturki, dated February 13, 2006.  None of these people are

1   testifying.

2          THE COURT:  Counsel, I don't know if you all want

3   to compare lists, but the original exhibit list from the

4   plaintiff listed as Number 88 something that is different from

5   what is listed as 88 on the revised list.  So, you all need to

6   make sure we're all talking about the same 88.  And the

7   document that's in the tab here appears to be what's listed in

8   the revised list, not what was listed in the original list.

9          MR. MAHONEY:  Right.  Your Honor, this is a little

10  confusing, but I know the answer.  What happened was our

11  original Exhibit 107 was a February 13th letter from Walid

12  Moussallem, the CEO, attaching proposals to buy MECG shares.

13  And he attached three but not the fourth proposal.  They

14  objected because we included the fourth proposal.

15         So, we then met their objection by taking away that

16  fourth proposal and proposing it as a separate exhibit.  And

17  now they're saying it's not relevant or whatever their

18  objection is.

19         THE COURT:  Well -- so --

20         MR. MAHONEY:  It is admittedly hearsay.  If we're

21  admitting it for the truth of the matter asserted, it's

22  hearsay.  But it's a proposal that was submitted to MECG as

23  part of the committee process.

24         MR. VASQUEZ:  We don't know that though.  It's a

25  document that was in the files.  There's been nobody to tell

 1   when this was drafted, why it was drafted, who it was

 2   submitted to and when it was submitted.

 3            THE COURT:  What is the evidentiary basis then for

 4   its admission?

 5            MR. MAHONEY:  Well, we would certainly have someone

 6   from IFC speak to this.  They were involved in the committee

 7   process and they would be able to confirm its accuracy, what

 8   it says, when it was submitted.

 9            THE COURT:  Well, you're talking about process.

10   I'm asking about a document.  What is the evidentiary basis

11   for admitting this document?  Who's going to authenticate it?

12            MR. MAHONEY:  Well, I would ask Van Bilsen about

13   it.

14            MR. VASQUEZ:  I don't think there's any way

15   Van Bilsen is going to know about that.

16            THE COURT:  I can't hear you.

17            MR. VASQUEZ:  I don't think Mr. Van Bilsen is going

18   to know anything about this document.

19            MR. MAHONEY:  Well, he can tell us that.

20            THE COURT:  Did you show it to him in his

21   deposition?

22            MR. MAHONEY:  I didn't take his deposition and I

23   don't believe he was shown this.

24            THE COURT:  All right.  There's nothing on here

25   reflecting his name.  Is he going to be some kind of a

 1 | custodian capable of authenticating this as a business record?
 2 |      MR. MAHONEY:  No, Your Honor, I don't believe so.
 3 | He would be able to testify, though, at that point in time he
 4 | read this as part of the committee process evaluating
 5 | proposals.  These were ultimately -- all of these proposals
 6 | were ultimately submitted to the shareholders, and IFC was a
 7 | shareholder.  I'm pretty confident he can speak to this
 8 | document.
 9 |      MR. VASQUEZ:  I'm pretty confident he can't.  And
10 | there's been nothing said that would suggest he could.
11 |      THE COURT:  Well, I'll reserve ruling on
12 | Exhibit 88, subject to his ability to authenticate it.  91.
13 |      MR. VASQUEZ:  91.  This is the same objection I
14 | made before to these reports -- these credit risk reports.  We
15 | don't think they are relevant.  They weren't used as a basis
16 | for anything in this case, valuation or otherwise.  And they
17 | contain hearsay from Exhibit 1, which has been excluded.
18 |      THE COURT:  All right.  The same relevance and
19 | hearsay objections will be overruled.  101.
20 |      MR. VASQUEZ:  I don't have 101 in here.
21 |      THE COURT:  I don't either.  Nor do I have 102.  I
22 | should ask you, is there an objection to 101 and 102
23 | outstanding?
24 |      MR. VASQUEZ:  Yeah, they're hearsay.  These are
25 | letters from Nabil Khairallah to Mr. Alturki.  Neither one of

1    these people are testifying.  They're just hearsay.

2              THE COURT:  Mr. Mahoney?

3              MR. MAHONEY:  I apologize, Your Honor, for -- I

4    guess we didn't include these.  We will withdraw these

5    exhibits.

6              THE COURT:  All right.  106.

7              MR. VASQUEZ:  106.  This is an e-mail from Jyrki

8    Koskelo, he's at IFC, but he's not going to be testifying and

9    he really didn't have anything to do with this transaction.

10   So, we don't think it's relevant.  We also are talking kind of

11   well after the --

12             THE COURT:  Say that again.

13             MR. VASQUEZ:  We're talking well after the fact of

14   whatever breach would have occurred at the end of November.

15             THE COURT:  Mr. Mahoney?

16             MR. MAHONEY:  Your Honor, as I understand it,

17   Mr. Jyrki Koskelo is one of Van Bilsen's bosses at IFC.  This

18   is after the Alturki letter was disseminated.  There's

19   actually musings within IFC to continue the sale with

20   Osseiran.  If you look at Bates 347, Mr. Koskelo advises

21   Van Bilsen of the possibility most likely even selling to

22   Osseiran.  So, we think it's --

23             THE COURT:  I'm sorry.  What language are you

24   asking me to look at?

25             MR. MAHONEY:  I'm sorry.  The first paragraph on

 1    Bates 347.  He's advising Van Bilsen -- the second to the last

 2    line -- most likely even selling to Osseiran.  Part of our

 3    theory of the case was that Osseiran's intent was to acquire

 4    shares of MECG.  This speaks to that.

 5             THE COURT:  What is, although, the rest of the

 6    document, though?

 7             MR. MAHONEY:  Your Honor, the original objection

 8    was that it was misleading and incomplete.  So, we attached

 9    the e-mail chain to meet that objection.  What's operative

10    from our standpoint is Bates 347.

11             THE COURT:  The e-mail appears to be directed --

12    the text appears to have it addressed to a J-A-N.  I don't see

13    a Van Bilsen identified in the address line.  Is this

14    purporting to be an e-mail from Jyrki, that's J-Y-R-K-I, to

15    Jan Van Bilsen?

16             MR. MAHONEY:  That's right, Your Honor.

17             THE COURT:  Is there a reason he's not on the

18    e-mail address line?

19             MR. MAHONEY:  This was a document produced by IFC.

20    I can't answer that.

21             THE COURT:  Say that again.

22             MR. MAHONEY:  This was a document produced by IFC.

23    I cannot answer that.

24             THE COURT:  Well, on the first page I do see

25    Van Bilsen's address and the carbon copy line on the

1  memorandum from Vice-President Khambata.  Anything else,

2  Mr. Vasquez?

3          MR. VASQUEZ:  No, just -- I mean, Mr. Jyrki Koskelo

4  is not going to be testifying, so we don't think that what he

5  had to say is relevant.

6          THE COURT:  Okay.  Is Mr. Van Bilsen going to

7  authenticate this?

8          MR. MAHONEY:  Yes, Your Honor.

9          THE COURT:  The relevance objection will be

10  overruled to 106.  120.  Mr. Vasquez, in fairness to you, I do

11  have a number of other exhibits in this book -- the binder --

12  before we get to 120.  I just don't see any other objections

13  on the new sheet -- before we get to 120.

14          MR. VASQUEZ:  Let me look and see.  Okay.  Those

15  were cured.  Yes.  Those -- 120 is the next one I have.

16          THE COURT:  All right.

17          MR. VASQUEZ:  Although, I haven't actually

18  inspected these documents, but if they are what they purport

19  to be in the index, I think that we should be fine.

20          THE COURT:  So, we're at 120.

21          MR. VASQUEZ:  Okay.  120.  We withdraw our

22  objection to that.

23          THE COURT:  All right.  121.

24          MR. VASQUEZ:  This is a letter from FNB and

25  containing a draft agreement.  It's hearsay and we're not sure

1    what the relevance of this would be.

2              THE COURT:  Mr. Mahoney?

3              MR. MAHONEY:  I understood the objection to be

4    relevance, Your Honor.  This letter is --

5              THE COURT:  Well, I will accept a new objection on

6    hearsay grounds.  I'm not going to prohibit them from raising

7    it.

8              MR. MAHONEY:  In terms of relevance, this speaks to

9    an offer made by FNB, and it was an offer that was contingent

10   upon them acquiring 51% of the shares.

11             THE COURT:  FNB?

12             MR. MAHONEY:  Yes.  You'll see in the text of the

13   first paragraph, middle part.  It says:  In the context of its

14   acquisition of 51% of the share capital.  This letter speaks

15   to valuation insofar as it references their purchase price and

16   the issue of them having to acquire 51%.  Because our theory

17   is that but for the breach of the confidentiality agreement,

18   Osseiran would have obtained IFC shares such that at this

19   point in time he would have owned 51%, which would have

20   precluded this offer from having been made.

21             THE COURT:  Well, this sounds like you're offering

22   it for the truth in part, at least with respect to that

23   paragraph.

24             MR. MAHONEY:  I am.

25             THE COURT:  What's the evidentiary basis for

1    getting this in?

2            MR. MAHONEY:  Well, before this morning I thought

3    it was just relevance.  It's admittedly hearsay.

4            THE COURT:  All right.  Well, the objection is

5    sustained.  The objection to hearsay is sustained.  And that's

6    as to 121.  122.

7            MR. VASQUEZ:  122 and 123 are similar to 121, only

8    they are much later in time.  They're in April of 2006.

9    They're both hearsay.  These witnesses aren't going to be

10   testifying and we don't think they are relevant.

11           THE COURT:  Mr. Mahoney?

12           MR. MAHONEY:  Your Honor, I concur they are

13   hearsay.  They're relevant, but I concur they are hearsay.

14           THE COURT:  All right.  Those objections will be

15   sustained.  124.

16           MR. VASQUEZ:  124 is a -- it looks like a draft

17   share sale agreement between Osseiran and some other party.

18   It's hearsay and it's irrelevant.  And I also point out that

19   the parties have already stipulated as to exactly what he

20   bought and when he bought it.  So, it's not necessary to be

21   putting drafts in here.

22           THE COURT:  Mr. Mahoney?

23           MR. MAHONEY:  Your Honor, this is plainly relevant.

24   It speaks to valuation and share acquisition at this point in

25   time.  We have stipulated to -- I think the stipulation can

```
 1   meet or satisfy the need in lieu of proposing these exhibits
 2   being admitted.  So, we won't contest the objection.
 3              THE COURT:  So, you're withdrawing the exhibit?
 4              MR. MAHONEY:  Yes.
 5              THE COURT:  All right.  125.
 6              MR. VASQUEZ:  We have the same argument on 125 and
 7   128.
 8              THE COURT:  Same as the arguments to 124?
 9              MR. VASQUEZ:  Yes.
10              THE COURT:  All right.  Mr. Mahoney?
11              MR. MAHONEY:  We'll withdrew those, Your Honor.
12              THE COURT:  All right.  125 and 128 will be
13   withdrawn.  130.
14              MR. VASQUEZ:  This is an agreement dated May 2008
15   between Mr. Osseiran and FNB.  This is two years after the
16   alleged events involving this case.  We don't think this is
17   relevant to anything and it's hearsay.  I understand that they
18   are claiming this is relevant to valuation, but this is not
19   relevant to valuation as a matter of law, because when you're
20   talking about the sale of shares of a company you need to talk
21   about it at the time of the alleged breach or around that
22   time.  This happened two years later.
23              So, what the law prevents you from doing is taking,
24   say, you know, say I took some of your shares of IBM, two
25   years later it's worth a lot more.  I decide that's a good
```

 1    valuation and I'm going to use that as a valuation.  The law

 2    doesn't allow that.  You have to use things at or about the

 3    time of whenever the transaction is.

 4           So, to the extent that they are using -- they're

 5    trying to argue that this is relevant to the valuation of

 6    shares, it's not.  They also do not have an expert that could

 7    testify to that.  So, there isn't -- Mr. Osseiran has admitted

 8    that he's not a valuation expert.  We don't think this is

 9    relevant and it's hearsay.

10           THE COURT:  Mr. Mahoney?

11           MR. MAHONEY:  Your Honor, we do believe it is

12    relevant.  It does speak to valuation.  You can admit it

13    for --

14           THE COURT:  Three years later?

15           MR. MAHONEY:  You can admit it for whatever weight

16    you want, but it's clearly relevant.  Mr. Osseiran is not an

17    expert witness, but he's a learned businessman who can speak

18    to these valuation issues, and he intends to do so.  And we

19    would question whether this is necessarily hearsay.  I mean,

20    it's a fact of an agreement having been made between the

21    plaintiff and a third party.

22           THE COURT:  I'm going to sustain the objection on

23    relevance grounds.  I think the timing of this transaction is

24    far too attenuated and probative value is minimal.  I guess I

25    did want to ask you.  If you have your rebuttal expert

1  testifying, is this a document that your expert witness

2  depended upon or used or --

3          MR. MAHONEY:  Yes.

4          THE COURT:  Mr. Vasquez?

5          MR. VASQUEZ:  Yeah.  We can move on to the next

6  exhibit.

7          THE COURT:  If it's something that the expert

8  witness had used, presumably he's going to be able to testify

9  about all the things that he looked at and read and countered

10 upon in coming up with his opinion.

11         MR. VASQUEZ:  Well, it's unlikely he's going to

12 testify in this case because we're not likely to put our

13 expert on at this stage.

14         THE COURT:  Well, what I'll do is sustain the

15 objection to Exhibit 130 for purposes of its admission in the

16 plaintiff's case in chief.  If the expert testifies in a

17 rebuttal case, I'll permit the plaintiffs to resurface the

18 issue of its admissibility at that time.  All right.  131.

19         MR. VASQUEZ:  131.  We have the exact same

20 objections.  This document goes with 130.  Same timeframe,

21 same purpose.

22         THE COURT:  You say it goes with it?  Is it part of

23 the same sale or are you just saying it's the same theory --

24         MR. VASQUEZ:  No, it's the exact same sale.  It's

25 the same date; it's the same people.

 1                 THE COURT:  Is that right?

 2                 MR. MAHONEY:  Yes.

 3                 THE COURT:  All right.  Same ruling then.  132.

 4                 MR. VASQUEZ:  This is Mr. Mouchbahani's report.

 5      It's hearsay.  He's already been excluded for the purpose of

 6      the -- to the case in chief, and it's not relevant.  That

 7      theory he's proposing is not relevant because it's based on a

 8      date you picked two years later, either as a matter of law or

 9      as a matter of valuation practice.

10                 THE COURT:  This would be a rebuttal document?  A

11      rebuttal exhibit?

12                 MR. MAHONEY:  Yes, Your Honor.

13                 THE COURT:  All right.  I'll reserve ruling then on

14      that.  133.  And I should mention that's the last exhibit I

15      have in this binder, although I see from the list that there

16      are objections to 134 through 136, but we'll start with 133.

17                 MR. VASQUEZ:  This is the first time I have

18      actually seen this as an exhibit.  This is a page out of our

19      expert's report.  Unless he testifies, it's not relevant and

20      it's hearsay and there's not going to be anyone to

21      authenticate it.

22                 THE COURT:  Oh, I don't know that you want to argue

23      that it's not relevant.  I guess you want to argue that it

24      might be --

25                 MR. VASQUEZ:  Actually, it's not, because what he

 1   was valuating in his report assumed that there was a breach of

 2   contract.  If you look at these items here, too, they're not

 3   making any claims on these shares.  These shares here.

 4   Originally, in this case they claimed that the problem was

 5   that they bought these shares and the shares were worthless so

 6   they had lost money.  That didn't turn out to be true later.

 7           So, they're not making a claim on these shares.

 8   Then they're saying, okay, we profited on that, now we want to

 9   go after the other shares and say that -- instead of us having

10   paid too much, we shouldn't have been able to buy the other

11   ones and profit from that.  So, this doesn't even concern

12   those other shares that they didn't buy.

13           THE COURT:  All right.  Well, you're not making the

14   argument that your expert's report is irrelevant.  But how are

15   you supposed to be getting in, Mr. Mahoney, a page from their

16   expert's report in your case in chief?

17           MR. MAHONEY:  I apologize, Your Honor.  We intended

18   to submit a summary document, and we were going to base it

19   verbatim on Mr. Sequeira's exhibit.  They objected that the

20   basis was undisclosed.  We conferred.  I told him it's going

21   to be verbatim what Mr. Osseiran worked up in his expert

22   report.  We haven't yet prepared the summary, but the summary

23   will be taken verbatim from this exhibit in his report.

24           And it speaks to the issue of the price paid at the

25   time by Osseiran for shares, and it was an average price of

1    $50.  Presumably, he would have been able to sell his

2    acquisition in a reasonable time forward for more than that.

3    So, it goes to the profit lost.

4              THE COURT:  Well, you'd be offering some summary as

5    a demonstrative exhibit -- demonstrative aid?

6              MR. MAHONEY:  Yes.

7              THE COURT:  Rather than an exhibit to admit into

8    evidence because you have all the underlying testimony in

9    evidence anyway?

10             MR. MAHONEY:  Right.  And Mr. Osseiran can speak to

11   this.  And we have stipulated to the sales and the gross

12   price.  We didn't do it on a per share basis, but -- yeah, it

13   will be in the record.

14             THE COURT:  The data will be in the record?

15             MR. MAHONEY:  Right.

16             THE COURT:  I take it then you're withdrawing this

17   as an exhibit to introduce into evidence and you're talking

18   about having it used as a demonstrative aid in some fashion?

19             MR. MAHONEY:  Well, we had intended to submit it

20   before today as a freestanding summary, but as it turns out,

21   yes, it's going to be a demonstrative exhibit.

22             THE COURT:  All right.

23             MR. VASQUEZ:  We don't think that they're going to

24   be able to produce this evidence or have Mr. Osseiran testify

25   to it.  So, we would -- if the Court's going to entertain any

1   kind of summary of evidence, we would need to see what that

2   evidence is going to be or hear him testify.  We will be

3   objecting if he attempts to testify about valuation because he

4   said at his deposition that he's not a valuation expert.  He's

5   not qualified to do it.  He also said he didn't plan to call

6   an expert.

7            THE COURT:  Well, if I'm looking just at this chart

8   here, this chart reflects the facts of the value per share --

9   price per share paid with respect to the purchases made in

10  that relevant two- or three-month time period.  There couldn't

11  be any basis for his objecting to his testimony about his

12  having made those purchases.

13           My understanding from Mr. Mahoney is that instead

14  of introducing this page from your expert's report, they plan

15  at some point to prepare some kind of a demonstrative aid,

16  presumably for the trier, that summarizes the facts that have

17  been testified to.  So, we're really not talking about a need

18  to entertain an objection to this document.

19           MR. VASQUEZ:  Okay.  So, this is not being offered

20  itself?

21           MR. MAHONEY:  Correct.

22           THE COURT:  Unless I misunderstood Mr. Mahoney.

23  Yes, this is not something that's being offered in evidence.

24  It is an example of how they're going to prepare a

25  demonstrative chart.

1          MR. VASQUEZ:  Okay.  Something else will be offered

2    and we'll deal with it at that time.

3          THE COURT:  Beg your pardon.

4          MR. VASQUEZ:  Something else will be offered and

5    then we'll deal with it at that time if and when it's offered?

6          THE COURT:  My understanding is they're going to

7    offer for use as a demonstrative aid, not an exhibit in

8    evidence, something that looks like this, plus.  Is that what

9    you're asking me?

10          MR. VASQUEZ:  Yeah.  Yeah, because I realize they

11   are not offering this.  But I do need to see whatever they're

12   offering so that I can make whatever objections I think are

13   appropriate at that time.

14          THE COURT:  All right.  They said it hasn't been

15   prepared, but I'll let Mr. Mahoney do his own talking on that

16   one.  What about 134, 135 and 136, which on the list show

17   objections, but I don't have any exhibits in the binder?

18          MR. VASQUEZ:  Those are just the depositions of

19   Mr. Van Bilsen, Farida Khambata and Daoud Khairallah.  And

20   both parties -- we discussed this that we were going to mark

21   these depositions just for the purpose of having an exhibit

22   number on them for identification, but not seek to admit the

23   depositions, other than what had been designated.

24          THE COURT:  Is that correct?

25          MR. MAHONEY:  Correct.

1          THE COURT:  All right.

2          MR. VASQUEZ:  So, they're really just there if they

3   are used for impeachment, then we have a number to refer them

4   to.

5          THE COURT:  All right.  Thank you.  Let's turn to

6   the objections to IFC's exhibits.

7          MR. VASQUEZ:  There's a binder.  Just to clarify, I

8   just gave you -- that is all of our exhibits.  Obviously,

9   there aren't objections to all of the exhibits.  We'll just go

10  through the ones on the chart.

11         THE COURT:  The first one I see is Exhibit 21.

12  Mr. Mahoney?

13         MR. MAHONEY:  Your Honor, this is a letter from a

14  third party who won't testify, out of court statement, which

15  we take issue with the accuracy of.  We think it's hearsay and

16  inadmissible.

17         THE COURT:  Mr. Vasquez?

18         MR. VASQUEZ:  Yeah.  Your Honor, this is one of

19  three documents, letters, that came out around this time from

20  members of the committee.  Two of those documents have not

21  been objected to and they're already coming into evidence.

22  These aren't offered for their truth, actually, they're

23  offered because they're not true.

24         What Mr. Sarkissian is saying, and he's a member of

25  the Board of Directors, is that he heard that Mr. Osseiran was

1    claiming to have bought IFC shares when he hadn't bought them.

2    That's not true.  It was never true.  What it's being offered

3    for is to show that it was Mr. --

4              THE COURT:  What are you saying is not true?  That

5    he heard it or that the purchase occurred?

6              MR. VASQUEZ:  That the purchase occurred.

7              THE COURT:  Okay.  That doesn't --

8              MR. VASQUEZ:  He heard it directly from

9    Mr. Osseiran, so he's a party opponent.

10             THE COURT:  That doesn't overcome the hearsay

11   problem.

12             MR. VASQUEZ:  He's just being offered for what was

13   said because it goes to who breached confidentiality.  If

14   Mr. Osseiran is going around telling people this, this shows

15   that he breached confidentiality.

16             THE COURT:  Then it's being offered for the truth

17   of -- I heard Osseiran say.  That's what this letter says.

18   That's hearsay.

19             MR. VASQUEZ:  Yes.

20             THE COURT:  How do you get around it?

21             MR. VASQUEZ:  Well, I can also ask Mr. Osseiran

22   where he got it because he's the one that received it, and it

23   came out of his files.  He will testify as to what this is and

24   whether it was accurate or not and what he said.  We think

25   this also goes to impeach his testimony.  We did question him

 1   about this at his deposition.  And this does come from his

 2   files.

 3          THE COURT:  All right.  Well, for the moment then

 4   I'll sustain the objection as hearsay.  To the extent that you

 5   are able to successfully impeach him, with what you're trying

 6   to bring out, you won't need this.  If he denies, when you try

 7   to impeach him, you'd still need some proper evidentiary basis

 8   for getting this in.  And I take it Mr. Sarkissian is not on

 9   the witness list.

10          MR. VASQUEZ:  No, he's not.  This document came

11   from Mr. Osseiran's files.  We do think it also should come in

12   under the Rule of Completeness with the other letters from

13   this time because they all -- they all are testifying to the

14   same thing or indicating the same thing, which is that

15   Mr. Osseiran is the one who breached confidentiality here.  He

16   thought he had a deal and he was running around telling people

17   he had a deal when he didn't have one.

18          THE COURT:  Well, I think you'd be able to do that

19   if you had a proper evidentiary basis for this document.  But

20   I'm going to sustain the hearsay objection to Exhibit 21.  22.

21          MR. MAHONEY:  Your Honor, this too is hearsay.  A

22   statement from Daoud Khairallah to Ms. Khambata, the accuracy

23   of which we contest, specifically, his references to rumors

24   being spread by Mr. Osseiran.

25          MR. VASQUEZ:  Your Honor, Mr. Khairallah will

1    testify as to this.  That he was informed that Mr. Osseiran

2    was spreading rumors among the committee.  That he had

3    purchased IFC shares when he had not.  It's from him; he'll

4    testify to it.  It also will go to rebut the charge that

5    plaintiff is making that it was Mr. Khairallah that revealed

6    this.  He wouldn't have written this if that were true.

7           Really what this will come down to is a contest of

8    the credibility.  You know, are there contemporaneous records

9    that support what Mr. Osseiran is alleging, or do the

10   contemporaneous records show that it was Mr. Osseiran himself.

11          THE COURT:  Give me a moment.  Let me read this.

12          MR. VASQUEZ:  Sure.

13          THE COURT:  Okay.  Dear Farida -- that's

14   Ms. Khambata -- is that who that is?

15          MR. VASQUEZ:  Right.

16          THE COURT:  All right.  It sounds to me as if you

17   want to offer this to show that it was Mr. Osseiran who was

18   the one that breached any potential confidentiality by talking

19   about the proposed transaction outside of the communication

20   between IFC and himself.

21          MR. VASQUEZ:  Yeah.  Not that it was Osseiran, but

22   that it was not Mr. Khairallah.  This also comes in as not

23   hearsay under 801(d)(1)(B), because they are accusing

24   Mr. Khairallah of having disclosed this.  This statement,

25   which is from that time, shows that that would be impossible.

1              THE COURT:  Say that again.

2              MR. VASQUEZ:  This statement of him telling what he

3    heard shows that his intent -- that what he did was not to

4    disclose this.  That this was disclosed through this

5    mechanism.  This document also goes with exhibits that they

6    are entering into evidence.

7              THE COURT:  Hold on a second.  Are you saying that

8    this e-mail that Khairallah -- Daoud Khairallah sent to

9    Ms. Khambata is offered for the purpose of corroborating that

10   he has continued to function within some understanding about

11   confidentiality, and has not disclosed anything to anybody

12   about the Osseiran/IFC deal.

13             MR. VASQUEZ:  That he did not -- that he was not

14   the first one to say anything about this.

15             THE COURT:  That he was not the first one to say

16   anything?

17             MR. VASQUEZ:  Yeah.  Obviously, when they had this

18   discussion with Alturki that he's talking about --

19             THE COURT:  They who?

20             MR. VASQUEZ:  He and Alturki.  This is about a

21   conversation that he had with Mr. Alturki that Ms. Khambata

22   asked him to have.

23             THE COURT:  So, you're offering this to show that

24   the cat was out of the bag before December 16th?

25             MR. VASQUEZ:  Right.

 1            THE COURT:  And the cat was out of the bag because

 2   Mr. Khairallah is saying:  Alturki told me --

 3            MR. VASQUEZ:  Yeah.

 4            THE COURT:  -- he had heard either from Osseiran or

 5   somebody, rumors that Osseiran was going to be buying IFC

 6   shares?

 7            MR. VASQUEZ:  Yeah.

 8            THE COURT:  And you're going to have Khairallah as

 9   a witness in your case, Mr. Daoud Khairallah?

10            MR. VASQUEZ:  Yes.

11            THE COURT:  All right.  And he will be testifying

12   about conversations with Alturki or communications from

13   Alturki --

14            MR. VASQUEZ:  Yes.

15            THE COURT:  -- that let him know that the word was

16   already out about Osseiran and IFC potentially engaging in

17   some purchase?

18            MR. VASQUEZ:  Yeah.  That's the crux of these

19   breach arguments.  Their allegation is that Mr. Khairallah

20   told Alturki about the transaction.  Mr. Khairallah will

21   testify that, no, he did not do that, and in fact, heard about

22   it being out there through this mechanism.

23            THE COURT:  But he's saying:  I heard about it

24   because Alturki told me something that reflects it was that

25   the cat was out of the bag?

1          MR. VASQUEZ:  Yes.

2          THE COURT:  So, you're offering this to prove the

3   truth that Alturki told Khairallah something.  Namely, the

4   information about the prospective sale was out there?

5          MR. VASQUEZ:  Yeah, the information was out there.

6          THE COURT:  So, why isn't that precisely a hearsay

7   problem?

8          MR. VASQUEZ:  Because it's not offered for the

9   truth of whether Mr. Osseiran had bought the shares, it's

10  offered to show that that information was out in the public

11  realm and had gotten there some other way besides this alleged

12  breach by Khairallah.  They're going to try to impeach him,

13  and they have put forward the theory that he told Alturki this

14  at some point before this e-mail.

15          This e-mail corroborates and it's admissible as

16  non-hearsay under 801(d)(1)(B) that in fact he didn't -- he,

17  Daoud Khairallah, did not tell -- it didn't happen the way the

18  plaintiff argues it happened.

19          THE COURT:  Well, (d)(1)(B) is the exception

20  concerning rebutting an inference of recent fabrication.  I

21  don't think that applies.

22          MR. VASQUEZ:  The other reason this should come in

23  is because they have put in all of the e-mails surrounding

24  this.  If you look at -- you may not have it in front of you.

25  I have e-mails from their exhibit list, and one of them is

```
1   actually what the precursor to the call that they had as

2   discussed here.

3            THE COURT:  I guess I'm going back to the bottom

4   line evidence you're trying to get in.  You're trying to get

5   in that Alturki told Khairallah --

6            MR. VASQUEZ:  Alturki was aware that there was some

7   kind of transaction happening between Osseiran and IFC,

8   whether it had been completed or not.  The fact that Alturki

9   knew this, he said this.

10           THE COURT:  It doesn't matter whether it's true

11  that there was a transaction going on or not, what matters is

12  that there was someone else who --

13           MR. VASQUEZ:  -- someone else who knew because

14  it -- I'm sorry.

15           THE COURT:  What matters is that there was someone

16  else who said or believed that this information was out there?

17           MR. VASQUEZ:  Yes.

18           THE COURT:  What's your answer to the argument that

19  this isn't being offered for the truth?

20           MR. MAHONEY:  I think it is being offered for the

21  truth.

22           THE COURT:  Well --

23           MR. MAHONEY:  The reference is made to rumors

24  spread by Mr. Osseiran.  And that's Alturki's statement to

25  Khairallah and then Khairallah's statement to Khambata.  There
```

1  is double hearsay.  This statement I don't think has any

2  pertinence other than being offered for the truth of the

3  matter.  Because if it was Osseiran who let the cat out of the

4  bag first, then this statement would pertain only to that and

5  it would be only relevant if it was true.  I don't see any

6  other reason to admit it.  And that's just the first prong of

7  the hearsay problem.

8          THE COURT:  Well, we can put the document aside

9  because the way this is supposed to come out, I guess, is

10  having Khairallah get on the stand, having a question to

11  Khairallah:  Did you have a meeting with Alturki?  Yes.  When

12  was it?  Date.  What was the subject matter?  Had to do with

13  potential sales.  What did Alturki tell you?  Right?

14          And then Alturki will say:  Osseiran told me -- I

15  guess that there were rumors circulating that Osseiran had

16  been engaged in this transaction.  Is that how the testimony

17  would come out?

18          MR. VASQUEZ:  Well, what the testimony would be,

19  would be that Mr. Khairallah would explain when he resigned

20  from the board, what he did, the e-mail he sent, and then

21  whatever the conversations he had with him afterwards.  Now,

22  their whole case is premised --

23          THE COURT:  But let me stop there.  I'm trying to

24  get back to the hearsay objection.  The conversations that he

25  had is what's key.  If I understand you correctly, you're

```
 1   going to have him on the stand, you'll go through the Q & A
 2   that I just made a hypothetical out of.  But you get to the
 3   point of saying:  What did Alturki tell you?  Or what did
 4   Alturki say?  Right?  You'll be leading him up to that point.
 5   Yes, Mr. Vasquez?
 6               MR. VASQUEZ:  Well, I think it would be:  How did
 7   you -- I mean, how did you find out?
 8               THE COURT:  How did you find out what?
 9               MR. VASQUEZ:  That this had been revealed to the
10   public.
11               THE COURT:  Well, that's a step beyond where
12   we're -- I'm trying to get how that is coming out.
13               MR. VASQUEZ:  Because --
14               THE COURT:  At some point you're going to be
15   eliciting from him -- Alturki told me this was public.  Here's
16   what he told me.  You're going to be eliciting that from
17   Khairallah.
18               MR. VASQUEZ:  Yes.
19               THE COURT:  So, I guess the first question is, when
20   the objection is raised during that examination to the
21   question:  What did Alturki tell you?  What is your answer?
22               MR. VASQUEZ:  My answer is that it goes to show
23   that Mr. Khairallah was not the one that revealed this to
24   Alturki because that's what he's being accused of doing.  But
25   if the conversation went the other way, it can't be true --
```

1    their theory falls.  Because they are alleging, and there

2    isn't any evidence that I'm aware of, that Mr. Khairallah told

3    Alturki in this conversation -- in a conversation -- I mean,

4    not this one, but a conversation, that there was a transaction

5    going on between Osseiran and IFC.

6              THE COURT:  So, what's key here is Alturki's

7    knowledge -- Alturki's understanding?

8              MR. VASQUEZ:  Yeah.  Did the information go from

9    Khairallah to Alturki or did it come from Alturki to

10   Khairallah?

11             THE COURT:  The problem I'm trying to address is,

12   if what we're getting at is what did Alturki believe or hear

13   or understand, for Khairallah to say, Alturki told me --

14   here's what he believed or heard or understood.  And you're

15   introducing that for the purpose of showing what Alturki

16   believed or heard or understood.  That's a classic definition

17   of a hearsay problem, and it would be reflected also by trying

18   to introduce this document.

19             So, my question is, how do you get around that if

20   what you're trying to show is what Alturki heard or believed

21   or understood.  It sounds like they're identical things.

22             MR. VASQUEZ:  Well, I mean, it is to rebut this

23   accusation that they've made that Mr. Khairallah has been

24   lying, that he lied at his deposition, that he didn't say

25   these things.  Because --

```
1            THE COURT:  So, why don't you need Alturki to

2   testify to that?  How did you get it in through this method of

3   having Khairallah talk about what Alturki knew or believed or

4   understood?  I think that's the problem in my head anyway.

5            MR. VASQUEZ:  Mr. Khairallah will testify that --

6   what he said to Alturki, and that he did not reveal the

7   transaction.

8            THE COURT:  Certainly.  Okay.  I think that's

9   right.

10           MR. VASQUEZ:  The next thing that happens is there

11  is a letter, December 14th, that the parties have agreed that

12  it comes into evidence.  That it gets sent from Alturki to

13  IFC, where Alturki says in that letter that Osseiran is going

14  around telling people he bought the shares.  This is a

15  follow-up conversation to that letter.

16           THE COURT:  Let me hear the answer to that.

17           MR. MAHONEY:  Your Honor, there is a letter that

18  was sent by Alturki, and that's the operative letter where he

19  says someone told him that they had purchased IFC shares.  But

20  the only way you can credit Khairallah's --

21           THE COURT:  Well, let me ask you.  That letter does

22  not say it's Osseiran?

23           MR. MAHONEY:  No.

24           THE COURT:  Go ahead.

25           MR. MAHONEY:  And the only way you can credit
```

```
 1   Khairallah's position that it wasn't him is if you agree that
 2   it's true that Osseiran was spreading the rumors at the time.
 3   So, there's no way to get around them having to submit this
 4   for the truth of the matter.  There's really no other reason
 5   to submit this.  And it's classic hearsay, not to mention
 6   double hearsay.
 7                   THE COURT:  Mr. Vasquez?
 8                   MR. VASQUEZ:  The letter is at Exhibit 19.
 9                   THE COURT:  Whose Exhibit 19?
10                   MR. VASQUEZ:  Our Exhibit 19 in the binder that
11   you're looking at.  It says in the third paragraph:  This
12   letter is to advise you and -- sorry.  This letter is to
13   advise you and IFC that I recently heard from an individual
14   who alleges he has purchased IFC's entire shareholding in
15   MECG, and that IFC also arranged for him to purchase the
16   shares of Barclays Bank.  That could not be anybody other than
17   Osseiran.  It's the third paragraph on the third page.
18                   So, this is coming into evidence.  What happens
19   after this is, Farida Khambata asks Mr. Khairallah to call
20   Alturki, which results in the report, Exhibit 22.
21                   THE COURT:  All right.
22                   MR. VASQUEZ:  Which, again, corroborates what is
23   already coming into evidence as 19.  And Mr. Khairallah will
24   testify to --
25                   THE COURT:  I can see a chain of inferences that
```

1  you will able to draw in argument to get the point out that

2  you want to make.  But 22, I think, I'm not satisfied you've

3  overcome the hearsay problem I've identified.  So, the

4  objection to 22 is sustained.  23.

5          MR. MAHONEY:  Your Honor, this is again the same

6  e-mail.

7          THE COURT:  It's what?

8          MR. MAHONEY:  The same e-mail from Mr. Khairallah

9  to Ms. Khambata, speaking to the rumors he had heard from

10  others.  It's double hearsay.

11          THE COURT:  I think that's right.  The same e-mail,

12  just printed out differently.

13          MR. VASQUEZ:  The first one was marked and was used

14  at Mr. Osseiran's deposition.

15          THE COURT:  But the text is the same, isn't it?

16          MR. VASQUEZ:  The text is the same.

17          THE COURT:  All right.  So, 23 will be sustained.

18  24.

19          MR. VASQUEZ:  24 then goes on --

20          MR. MAHONEY:  This is --

21          MR. VASQUEZ:  Oh.

22          THE COURT:  This is just a "thank you" about the

23  one we just talked about?

24          MR. MAHONEY:  Yes, Your Honor.  Same objection.

25          THE COURT:  Go ahead.

1          MR. VASQUEZ:  Well, this does go on to say what

2   they planned next.  I do think these should come in also under

3   Rule 106 based on what they have put in, in terms of the

4   e-mails and correspondence around this time.  This is part of

5   those conversations.

6          THE COURT:  So, 24 is a reply to the e-mail that

7   I've sustained the objection to apparently.  But it adds

8   essentially from Ms. Khambata:  Thank you very much.  The

9   terms are acceptable.  Just with respect to that, what's the

10  objection?

11         MR. MAHONEY:  No objection.

12         THE COURT:  Well, then I will permit you to consult

13  with each other about redactions to the bottom of 24 or to

14  contents of 24 so that the reply or response that's on the top

15  of 24 can come in.  Okay?

16         MR. MAHONEY:  Okay.

17         THE COURT:  I'm sorry.  32.

18         MR. MAHONEY:  Your Honor, this is, again, double

19  hearsay statements made in the e-mail from Mr. Alloway to

20  Ms. Khambata and Mr. Koskelo characterizing Mr. Osseiran.

21  It's double hearsay.

22         MR. VASQUEZ:  This is offered because it concerns a

23  conversation that Mr. Van Bilsen had with Mr. Osseiran.  At

24  this point in time, and in many points in time, you'll find

25  out that Mr. Osseiran essentially told lies to IFC about what

1    he was planning on doing, what he was doing, to try and get

2    reactions from them.  Hopefully maybe to sell them the shares.

3              Mr. Osseiran denied saying these things at his

4    deposition.  So, what the purpose of this is going to be is to

5    find out whether Mr. Osseiran said these things or not to

6    impeach his credibility.  We think his credibility is key

7    here, and this is one of the documents that will show that

8    Osseiran did say these things to IFC and they weren't true.

9              THE COURT:  All right.  Can you direct me to the

10   language I ought to be focusing on?

11             MR. MAHONEY:  Yeah, I'm calling today to hear what

12   he had to say.  Jan called him today --

13             THE COURT:  Where are you reading from?

14             MR. VASQUEZ:  The first paragraph.  It says:  After

15   receiving six voice messages from Osseiran, Jan called him

16   today to hear what he had to say.  He is pressuring us to sell

17   to him, saying he is close to striking a deal with Alturki to

18   buy his shares, and if we don't sell now he would only offer

19   us half what he is currently offering (e.g. previously agreed

20   50 cents per share plus 6 cents per share if tax liability

21   does not materialize in next 3 years).

22             Those statements are not true that Osseiran was not

23   close to striking a deal.  He was not planning on offering IFC

24   less.  Now, Osseiran claimed at his deposition he didn't say

25   those things.  The point of this is to show that Mr. Osseiran

1    says a lot of different things to a lot of different people

2    and his credibility is in serious question.

3          What this goes to show is it reflects what Jan will

4    testify to.  The question will be, well, did Mr. Osseiran say

5    inaccurate things to IFC or not, because he's going to deny

6    that he did.  This will corroborate Mr. Van Bilsen's testimony

7    that, in fact, yes, he was telling IFC inaccurate things.

8          THE COURT:  This is an e-mail from Mark Alloway to

9    Ms. Khambata, neither of whom will be testifying.  Am I right?

10          MR. VASQUEZ:  No, they're both on the witness list.

11          THE COURT:  Mark Alloway is?

12          MR. VASQUEZ:  Yeah.

13          THE COURT:  All right.  So is Ms. Khambata --

14    you're right.

15          MR. VASQUEZ:  Yeah.

16          THE COURT:  All right.  And they're talking about a

17    discussion Jan Van Bilsen had with Osseiran; namely, Osseiran

18    telling Van Bilsen, I'm close to closing a deal.

19          MR. VASQUEZ:  Yeah.

20          THE COURT:  And the other evidence will show that

21    that's just not true at that point?

22          MR. VASQUEZ:  Right.

23          THE COURT:  And this is going to be coming out

24    anyway from the people who are going to be testifying?

25          MR. MAHONEY:  Well, I mean, it's still hearsay.

1    And the statement that follows -- I mean, this letter has

2    several statements.  I subsequently called Daoud.  He thinks

3    Osseiran is being economical with the truth.

4              THE COURT:  Uh-huh.

5              MR. MAHONEY:  That's double hearsay and we contest

6    the accuracy of that statement.

7              THE COURT:  Mr. Vasquez?

8              MR. VASQUEZ:  Well, Mr. Khairallah will testify as

9    well.  I mean, what this goes to is IFC was finally catching

10   on to what Mr. Osseiran had been doing.

11             THE COURT:  I can't understand you.

12             MR. VASQUEZ:  They were finally catching on to what

13   Mr. Osseiran was doing, which was telling them inaccurate

14   things.

15             THE COURT:  What other objections?  Any other

16   objections?

17             MR. MAHONEY:  That's the only objection, Your

18   Honor.

19             THE COURT:  Well, any other language in the

20   document, I guess, is what I'm asking you.

21             MR. MAHONEY:  You know, further on in that second

22   paragraph, Mr. Alloway characterizing Mr. Khairallah's

23   interpretation of what Alturki thinks, insofar as he doesn't

24   believe the Chairman would sell to Osseiran, especially given

25   the way he --

 1              THE COURT:  What paragraph are you on?

 2              MR. MAHONEY:  Second paragraph, bottom sentence.

 3    He doesn't believe that the Chairman would sell to Osseiran,

 4    especially given the way he has criticized us for proposing to

 5    sell to Osseiran.  So, that's triple hearsay.  And then you've

 6    got characterizations of what Daoud interpreted.  It's just

 7    chocked full of hearsay.

 8              MR. VASQUEZ:  Again, the question here is whether

 9    Osseiran had been telling the truth or not.  And this is IFC

10    realizing that what he's saying probably is not true, which we

11    later confirmed was not.

12              THE COURT:  Well, how is an e-mail reflecting

13    someone else's opinion about his truthfulness probative of

14    that?

15              MR. VASQUEZ:  Because it shows what discussions

16    they were having.  And they were trying to assess what

17    Osseiran was telling them and whether it was accurate or not.

18              THE COURT:  Well, you can certainly get Daoud to

19    say what he heard from Osseiran, presumably just --

20              MR. VASQUEZ:  Yeah, they never spoke, so this is

21    between --

22              THE COURT:  Excuse me.

23              MR. VASQUEZ:  I'm sorry.

24              THE COURT:  Presumably to have him say he

25    disbelieved Osseiran, if that's true.  An e-mail from Mark to

1   Khambata, however, doesn't do that.  So, I mean, there are

2   problems with this.  There may not be problems in eliciting

3   the testimony from the witnesses that underlie this e-mail,

4   but it really does have layers of hearsay in it that makes

5   this problematic.

6            Van Bilsen presumably will be on the stand, you can

7   elicit from him that he had discussions with the party

8   opponent.  He can certainly talk about what Osseiran, whatever

9   bluff it was, you're saying Osseiran had issued for Mark

10  Alloway's e-mail to Farida Khambata to be the vehicle for

11  getting that in I think is a problem.

12           So, unless there are ways to redact -- and it might

13  be so redacted that it -- standing alone as a redacted

14  document wouldn't make much sense.  Unless there's ways to

15  redact this, I think there are just too many hearsay problems

16  with this, which does not reflect --

17           MR. VASQUEZ:  Certainly --

18           THE COURT:  -- which does not reflect --

19           MR. VASQUEZ:  I'm sorry.

20           THE COURT:  -- your ability to elicit on

21  examination of witnesses some of the key stuff you want to get

22  out, though.

23           MR. VASQUEZ:  Well, we certainly could -- we could

24  redact the second two paragraphs, since we're only offering

25  for the first paragraph.  The other thing, I mean, this

1    document has been used for -- we questioned Mr. Osseiran about

2    it at his deposition about what he said to IFC.  Sometimes he

3    denied what he said; sometimes he would say:  I didn't say

4    that and it's not true.  Either way, it goes to his

5    credibility.

6              THE COURT:  Well, as an impeachment issue, that's

7    different, but I'm going to allow you to decide whether you

8    want to redact this and represent it.  So, I'm going to

9    reserve on that one.

10             MR. MAHONEY:  Your Honor, Exhibit 33 contains the

11   same e-mail as the prior exhibit from Mr. Alloway to

12   Ms. Khambata and Mr. Koskelo.  It does include Ms. Khambata's

13   reply up top, which is not objectionable.  But the remaining

14   text is double and triple hearsay.

15             THE COURT:  Okay.  Same ruling on that one.  48.

16             MR. MAHONEY:  Your Honor, we just noted an

17   objection on relevance.  We don't know for what purpose it's

18   being admitted.  Apparently, it's being admitted for

19   impeachment, and perhaps as Mr. Vasquez said earlier, we're

20   just going to mark it and use it to impeach the witness, in

21   which case we don't have an objection to that.

22             THE COURT:  Do you want to comment?

23             MR. VASQUEZ:  That's essentially what we intend to

24   use it for.  It could also come in as a statement of a party

25   opponent, but we don't -- I intend to ask him questions that

1    may be related to this, and then if he says different things,

2    use it for impeachment purposes.  That's my primary intent,

3    not to put this into evidence.

4              THE COURT:  The objection is overruled.  We'll take

5    up 49.

6              MR. MAHONEY:  49, Your Honor, is a declaration of

7    Mr. Van Bilsen, which we've objected on hearsay grounds.

8              MR. VASQUEZ:  Mr. Van Bilsen will be testifying.

9    We weren't planning on offering this, but just asking -- the

10   questions -- we may use it to refresh his recollection if

11   there's something that they would need from this statement.

12             THE COURT:  All right.  So, it won't be offered as

13   an exhibit in evidence, correct?

14             MR. VASQUEZ:  Correct.

15             THE COURT:  51.

16             MR. MAHONEY:  51, Your Honor, we've got an

17   objection based on hearsay.  I would also add authenticity.

18   I'm not sure what this document is.  It was produced or

19   submitted in the litigation by IFC, but beyond that I'm not

20   certain what it is and object on those grounds.

21             MR. VASQUEZ:  Yeah, this was submitted in the

22   litigation.  It's actually an exhibit to the Van Bilsen

23   statement that was the previous exhibit.  This is just a

24   summary of information about IFC.  The witnesses will testify

25   as to what kind of organization IFC is, how it operates.  And

1   this is public information that they will be testifying to.

2   It may save some time not having to elicit each one of these

3   facts from the IFC witnesses.  But we think it should come in

4   basically as a summary of what IFC is and does.

5        The relevance of it is because they are asserting

6   that IFC enters in oral agreement, and all of our witnesses

7   will just say that is not what IFC does or how IFC works,

8   given the kind of institution it is.

9        THE COURT:  The hearsay objection is sustained.

10  The information you may be trying to elicit will come out

11  through your qualified witness.  52.

12       MR. MAHONEY:  52, Your Honor, is a declaration of

13  Mr. Carman Genovese.  It's hearsay.  He's been called as a

14  witness -- or he will be called as a witness.

15       THE COURT:  He will be.  All right.  Mr. Vasquez?

16       MR. VASQUEZ:  This is the same as with respect to

17  Mr. Van Bilsen's declaration.

18       THE COURT:  All right.

19       MR. VASQUEZ:  We intend to use it to refresh

20  recollection, if necessary.

21       THE COURT:  All right.

22       MR. VASQUEZ:  We don't intend to put it into

23  evidence.

24       THE COURT:  All right.  I'll allow it for

25  refreshing his recollection, if necessary, but only for that

1    purpose.  53.

2              MR. MAHONEY:  53 is a declaration of Mr. Alloway,

3    an IFC employee.  Same objection on hearsay, Your Honor.

4              THE COURT:  Same response, Mr. Vasquez?

5              MR. VASQUEZ:  Yes, sir.

6              THE COURT:  All right.  Same ruling.  54.

7              MR. MAHONEY:  54.  We have a relevance objection,

8    again, same as the prior declaration objection.

9              MR. VASQUEZ:  This is Mr. Osseiran's statement in

10   this case.  It's certainly relevant.  We don't propose to

11   admit it wholesale, though, we propose to use it for

12   impeachment purposes if he contradicts it.

13             THE COURT:  The objection to 54 is overruled.

14             MR. MAHONEY:  55.  We had objected, again, on the

15   understanding that these exhibits would be marked and used for

16   impeachment only, based on relevance grounds to the amended

17   complaint.

18             THE COURT:  Who's going to get impeached with this?

19             MR. VASQUEZ:  Mr. Osseiran, because he's their only

20   witness and the source of all their facts.

21             THE COURT:  With an amended complaint he never

22   signed?  This will be in the court of record anyway, so it's

23   not --

24             MR. VASQUEZ:  He actually --

25             THE COURT:  Mr. Vasquez, we're all very interested

 1  in saying what we have to say, but we absolutely must talk one

 2  at a time.  You've interrupted me now about five or six times.

 3  Please don't do that.  Go ahead.

 4          MR. VASQUEZ:  I apologize, Your Honor.  This was

 5  marked at his deposition and we questioned him about it.  And,

 6  so, we would be using it in that context to ask him in

 7  particular about the damages that he was asserting at the time

 8  in connection with the confidentiality agreement.

 9          THE COURT:  Well --

10          MR. VASQUEZ:  It goes to what he believed at that

11  time in February of 2006 were his losses, which turned out to

12  be no losses.

13          THE COURT:  The amended complaint, Mr. Mahoney, is

14  in the record anyway.  I get to look at anything in the

15  docket.  This really is not something I need to rule on, is

16  it?

17          MR. MAHONEY:  No.

18          THE COURT:  All right.  56.

19          MR. MAHONEY:  Actually, Your Honor, we have no

20  objection to 56.

21          THE COURT:  To what -- 56?

22          MR. MAHONEY:  No objection to 56.

23          THE COURT:  All right.

24          MR. VASQUEZ:  Your Honor, we're not offering those

25  as evidence that we intend to necessarily put on.  They're

 1  only listed as potential rebuttal exhibits.

 2          THE COURT:  Well, the objection to 56 has been

 3  withdrawn, so --

 4          MR. VASQUEZ:  Okay.  We don't intend to offer

 5  these --

 6          THE COURT:  All right.

 7          MR. VASQUEZ:  -- except as rebuttal exhibits.  We

 8  wouldn't -- we've objected to them using these exhibits.  I

 9  could see how they could become relevant at some point; we

10  don't think they are.  They're only in here because they were

11  things that our expert talked about.  But if he's not

12  testifying, we wouldn't be offering these.

13          THE COURT:  58.

14          MR. MAHONEY:  Your Honor, if the same holds true

15  for 58 through 64, then we will withdraw our objections.  If

16  they're only going to be used for impeachment purposes and not

17  going to be admitted into evidence by the defendant.

18          THE COURT:  Mr. Vasquez?

19          MR. VASQUEZ:  That's correct for those exhibits,

20  that is 58 through 64.  They are marked as statements of

21  Mr. Osseiran or by -- for impeachment purposes.

22          THE COURT:  65.

23          MR. MAHONEY:  65, Your Honor, is the expert report

24  of Mr. Sequeira, the defendant's expert.  We have objected on

25  hearsay and authenticity grounds.

 1              THE COURT:  Authenticity grounds?  What's the

 2   authenticity problem?

 3              MR. MAHONEY:  He'll have to authenticate it.

 4              THE COURT:  Huh?

 5              MR. MAHONEY:  Obviously, he'll have to authenticate

 6   it -- Mr. Sequeira.

 7              THE COURT:  All right.  I assume this is

 8   Mr. Sequeira's report.

 9              MR. VASQUEZ:  Yes, it is.  And he will -- at this

10   point we don't anticipate him testifying, but it's offered as

11   a potential rebuttal exhibit only, just like 56 and 57.

12              THE COURT:  I'll reserve on that one then.  That's

13   the last objection on the exhibits.  Do I need to look at the

14   designation of depositions or have you all taken care of most

15   of those -- all of those?

16              MR. VASQUEZ:  We've taken care of most of them.  I

17   don't think we've taken care of all of them.

18              THE COURT:  All right.

19              MR. VASQUEZ:  We did create for the Court's

20   convenience a set of depositions with highlighting of what was

21   designated to make this easier -- that we can hand out.

22              THE COURT:  Is that something that will help me

23   resolve any challenges to the designations?

24              MR. VASQUEZ:  Yes.  It will help to find the things

25   quicker.

```
 1              THE COURT:  Thank you.

 2              MR. VASQUEZ:  They designated from Mr.

 3   Osseiran's -- I'm sorry, I'm not sure which ones you want to

 4   do first.

 5              THE COURT:  Can you all identify for me which

 6   objections remain to any designations of depositions?  The

 7   only document I have with respect to that is what was

 8   contained in the joint pretrial statement.

 9              MR. VASQUEZ:  Yes, I have it.  If we want to start

10   with Mr. Van Bilsen's designations, which were done by the

11   plaintiffs.  Looking at the first page of Exhibit C, all of

12   the incompleteness objections have been resolved.

13              THE COURT:  Okay.

14              MR. VASQUEZ:  Then we are withdrawing the three

15   objections that are at the bottom of this page.

16              THE COURT:  Okay.

17              MR. VASQUEZ:  Then turning to the second page.

18   The first -- the first seven items listed there are all one

19   conversation, so we can talk about them all at once.  If you

20   want to turn into the deposition transcript itself, this

21   begins on Page 46 of the deposition, which is Page 12 of this

22   minu-script version.

23              What this is, it's a lengthy discussion of bank

24   guarantees and talking to the in-house lawyer.  We don't think

25   it's relevant.
```

1          THE COURT:  It occurs to me that the most efficient

2     way for us to deal with some of these may be to have you all

3     direct me to any objections that have to do perhaps with

4     evidentiary problems, because as is -- judges's want, we often

5     with respect to relevance objections in a bench trial say:

6     I'll let it in for whatever it's worth.  And then make an

7     assessment come time for coming up with factual conclusions

8     and legal conclusions.

9          It might be better then for us to focus on the

10    evidentiary problems, there are hearsay problems, as I look

11    over the list of objections and so on.  Otherwise, all of

12    these relevance objections could keep us here all day, unless

13    you all have narrowed those down, too.  I don't know.

14          MR. VASQUEZ:  I have withdrawn a number of them.

15          THE COURT:  Okay.

16          MR. VASQUEZ:  But there are still significant ones

17    listed.  If we want to just talk about the evidentiary issues,

18    we can go ahead and do that.

19          THE COURT:  Well, that's my proposal.  Let me hear

20    from you if you don't think that's going to work.  At some

21    point we need to break for lunch, and then if we have to come

22    back, we have to come back.  But I hope to complete this this

23    morning.

24          MR. VASQUEZ:  Okay.

25          THE COURT:  Does that sound reasonable?

```
 1            MR. VASQUEZ:  That sounds reasonable to me.

 2            MR. MAHONEY:  Your Honor, I think we --

 3            THE COURT:  Come up to the mic, please.

 4            MR. MAHONEY:  We've talked about relevance at

 5   length today, and I think it does make sense to try to

 6   short-circuit it and not speak to the relevance issues now.

 7            THE COURT:  All right.  So, why don't you all

 8   address yourselves then to the heart objections.  All right.

 9            MR. VASQUEZ:  We'll be going to what is in the

10   middle of the page here on Page 2.  We're talking about

11   Page 57, Lines 21 through 22.  And Page 58, Lines 1 through 9.

12   What they're talking about here is the contents of the

13   document and Alturki's statements.  And so we think that if

14   the document is coming in, the document will speak for itself.

15   To have a conversation about this document kind of in the --

16   and talking about what Alturki says is going to be hearsay.

17            THE COURT:  Where does it show that they're

18   discussing a document -- the contents of a document?

19            MR. VASQUEZ:  If you go back to 54, there is a

20   talking about the letter from the Chairman, Mr. Alturki.  It's

21   unclear to me whether this question was directed at the

22   contents of that document or something else.  But, in any

23   event, it's also hearsay.

24            THE COURT:  Yeah, I don't read that -- and you all

25   were there, I was not.  But I don't read this necessarily as
```

1    making a specific reference to a document that was in front of

2    the witness and a question asking:  Tell me what you think

3    Alturki meant in this letter by whatever objections he listed.

4    Am I wrong?

5              MR. VASQUEZ:  I don't know whether they were

6    looking at the document when this question was asked or not.

7    That's why it's misleading.  In any event, though, whether it

8    refers to the document or not, we also object on a hearsay

9    grounds, and it's what Alturki said.  It's just hearsay.

10             THE COURT:  Mr. Mahoney?

11             MR. MAHONEY:  Your Honor, I don't see any reference

12   to any documents either in this passage -- and I don't see any

13   hearsay problems either.

14             THE COURT:  Well, the question was:  What did

15   Alturki say?  What were his objections?  Right?

16             MR. MAHONEY:  I'm looking at -- maybe I'm looking

17   at the wrong entry.  I'm on Page 57, Lines 21 to 22.

18             THE COURT:  Right.  Carrying over to 58.

19             MR. MAHONEY:  Right.  What were his objections.  He

20   felt that IFC should follow the decision by the committee.

21   That was his belief.  I don't see any hearsay problem.

22             THE COURT:  You're asking:  What did he say?  He

23   said the following.  Why is that not hearsay?

24             MR. MAHONEY:  The testimony was characterizing his

25   belief.  I mean, he's not asking for what Alturki told him.

1   Did he have any objections?  What did he believe?

2         THE COURT:  How could the objections have been

3   known had he not articulated them?  Which is why:  What are

4   his specific objections -- means, what did he say?

5         MR. MAHONEY:  I don't think it's that clear is my

6   only point.

7         THE COURT:  Well, what would be the basis for

8   Mr. Van Bilsen articulating what Mr. Alturki's beliefs were in

9   any event if Mr. Alturki had not said what --

10        MR. MAHONEY:  There would be no basis for him.

11        THE COURT:  Huh?

12        MR. MAHONEY:  There would be no basis --

13        THE COURT:  So, why is this not a hearsay problem?

14        MR. MAHONEY:  I don't know where he got this

15  information.  Presumably, it was from Mr. Alturki.  If it was,

16  there is a hearsay problem.  But the hearsay problem is not

17  pronounced in this exchange in the deposition.

18        THE COURT:  All right.  I do read it that way.  So,

19  I'll sustain that objection.

20        MR. VASQUEZ:  Okay.  Then on Page 59, it's the same

21  thing.  And if you look -- actually, if you look on the second

22  half of Page 58, you see that there is a question of whether

23  we're talking about what came out of a letter or not, and then

24  we're having more discussions over these Alturki objections

25  and what other people might have thought.  So, it's not

1  relevant and speculation and hearsay.

2            THE COURT:  You're on 59 now?

3            MR. VASQUEZ:  Yeah.  Lines 5 through 14.

4            THE COURT:  All right.  Mr. Mahoney?

5            MR. MAHONEY:  Your Honor, I can't get around the

6  hearsay objection.  I'm not sure there is speculation.

7            THE COURT:  All right.  I'll sustain that

8  objection.

9            MR. VASQUEZ:  The next evidentiary issue comes at

10 Page 70.  Now, if you look at 69, you see that this is about a

11 document, and we're discussing the contents of this document.

12 The problem that we have with a lot of -- the reason why a lot

13 of these objections are here is because -- and I know

14 Mr. Mahoney didn't take these depositions, but the counsel who

15 took the depositions refused to mark the documents as exhibits

16 in the depositions.  So, we have a lot of conversations about

17 documents when we don't have a record of what that document

18 actually is, other than sometimes there are some numbers and

19 sometimes there aren't.

20            We, don't think that we should be having testimony

21 about documents that -- because they failed to make the proper

22 record, we can't identify them.

23            THE COURT:  Just tell me what language you want me

24 to look at at the moment.  You started at Page 70, I

25 thought --

1          MR. VASQUEZ:  Yes.  At 70 it's start -- their

2     designation --

3          THE COURT:  Let me finish getting my question out

4     to you before you interrupt me.  You started at Page 70 and

5     then you asked me to look back at 69.  So, I'm just asking you

6     what language is it that you want me to look at?

7          MR. VASQUEZ:  Okay.  Looking back at 69, it's

8     talking about a document.  These questions are about that

9     document.  And the designation they've made is starting at 17.

10    And this is essentially about what the content of that

11    document means.  To have this sort of clipped out and floating

12    in the air doesn't tell you when, what the reference is to the

13    document.  And this is -- I mean, this needs to be in some

14    kind of context, otherwise, it's just misleading.

15         THE COURT:  Just for my information, none of you

16    all was there at this deposition?

17         MR. VASQUEZ:  I physically was not there.  My

18    colleague, Mr. Panopoulos, was there.

19         MR. MAHONEY:  I was not.

20         THE COURT:  Do you want to be heard on this?

21         MR. MAHONEY:  Your Honor, first of all, I don't see

22    this testimony being tied to a document.  But beyond that, I

23    thought we were on the understanding yesterday when we did

24    meet and confer that a lot of these objections could be

25    addressed at the time the designations are read into the

 1   record, because by then the exhibits would have been admitted,

 2   so it won't be an issue.  They will either be admitted or they

 3   won't, and there will either be merit to the objection or

 4   there won't at that point.  But to go through this line by

 5   line today I think is a waste of the Court's resources and

 6   time.

 7            THE COURT:  Well, I mean, that's two issues.  I

 8   have pretrial conferences so we don't waste either jurors'

 9   time or witnesses' time where we can make decisions in

10   advance.  We don't have a jury, but we do have a witnesses.

11   I'm not sure how many of these objections -- how long these

12   objections are going to take to take up, but I certainly do

13   not want to have witnesses cooling their heels in the box

14   while lawyers and the Judge bicker over whether something

15   should or shouldn't come in.  So, that's why I'm trying to

16   address as much of this now as is reasonable.

17            MR. MAHONEY:  I understand.

18            THE COURT:  Because I'm not going to have witnesses

19   cooling their heels.  I don't even know if some or all of

20   these -- not all of the, obviously, but some of these

21   witnesses appear to be flying in from overseas, and I want to

22   be respectful of their time as yours.

23            So the purpose of doing this pretrial is to make

24   sure we get all of these done.  There won't be any issues at

25   trial about what comes in, what doesn't come in.  And we can

1   sail through the trial more smoothly.  But I appreciate your

2   concern about whether my time is being absorbed as well.

3           But tell me what alternative we have to be able to

4   resolve some of these specific objections other than doing

5   them while a witness is in the box?

6           MR. MAHONEY:  Well, I guess there is no alternative

7   other than I thought we had reached a consensus yesterday,

8   apparently we didn't.  In large measure the

9   counter-designations would take care of the objections to the

10  designations, and --

11          THE COURT:  Well, I was understanding -- forgive me

12  for interrupting you.  I thought that was true with respect to

13  the incompleteness.

14          MR. MAHONEY:  Right, I think it is.

15          THE COURT:  That's why I've asked you all to focus

16  upon other sort of hard objections.  If there is an objection

17  that was raised in a deposition to hearsay or an objection

18  that was raised that would cause me to have to rule on it,

19  those are the ones I'm hoping we're going to be steered to.

20          MR. MAHONEY:  I don't think any of these objections

21  were raised at the deposition.  So, here we are going

22  line-by-line.  And there is no alternative if that's what we

23  need to do -- given the objections.

24          MR. VASQUEZ:  Actually, this was raised at that

25  time deposition.  And we asked Mr. Blanton, who was taking the

1   deposition, to mark his exhibits and he refused to do it.

2   This is a problem that their side has created.

3           THE COURT:  Okay.  But there's no hearsay objection

4   in the record, that is one thing that is being raised on Page

5   69 and 70 -- on the list here about 69 and 70.  Best evidence

6   and Rule 403.  Best evidence, I guess, has to do with the

7   presumption that there is some document that should be coming

8   in.  Although, best evidence is one of those objections that

9   is usually stated that has not a proper basis.  403 is the

10  balancing question.

11          MR. VASQUEZ:  Yeah, and our specific objection with

12  respect to that is it's misleading to have this testimony

13  about a document that we don't know what it is or whether it's

14  coming in.

15          THE COURT:  Well, it isn't clear to me that this is

16  inexorably tied to a specific document.  So, I'm going to

17  overrule that objection and ask you to move to the next hard

18  objection.

19          MR. VASQUEZ:  Okay.  Page 108.  They have

20  designated  Lines 6 to 22, and then Lines 1 to 14 on 109.  And

21  this, again, if you look at the top of 108, I'm giving you a

22  document, and then they're talking about this document.

23  At this point we don't know exactly what they gave.

24          THE COURT:  Say that again.

25          MR. VASQUEZ:  We don't know exactly what they gave.

 1   I mean, they put some exhibit -- they put some document

 2   numbers out there, but they didn't mark the document.  So, we

 3   don't have the document.

 4          THE COURT:  So, when the question referred to the

 5   document as IFC-607-608, you're saying that that was not

 6   something that allowed you to know what the document was?

 7          MR. VASQUEZ:  We could see what it was at that

 8   time, but since he didn't have the court reporter mark it, we

 9   don't have the actual exhibit of what he showed him.

10          MR. MAHONEY:  Your Honor, that's Exhibit 12 on our

11   exhibit list.  These are all Bate stamped documents.

12          THE COURT:  There are all what?

13          MR. MAHONEY:  These are all Bate stamped documents.

14   They are identified by numbers and there's no ambiguity as to

15   what the document is.

16          THE COURT:  So the IFC-607 is a Bate stamp?

17          MR. MAHONEY:  Yes.

18          THE COURT:  Is that true with respect to the

19   previous document that we were discussing in the earlier

20   objection?

21          MR. VASQUEZ:  I don't know, I wasn't there

22   physically.  I believe that is what it is intended to be.

23          MR. MAHONEY:  That is true, Your Honor.  It's

24   IFC-443 to 444.  It's our Exhibit 3.  No objections.

25          THE COURT:  Does this list of objections that

1   reflects best evidence rule objections pertain in each

2   instance to a problem that you're identifying with the

3   question or not identifying an exhibit by a court reporters's

4   exhibit number?

5            MR. VASQUEZ:  Correct.  And at this point they

6   haven't -- while he's mentioned a couple of what he things

7   these exhibits are, we haven't been provided with that

8   information.

9            THE COURT:  Well, why don't we -- I'm sorry to

10  interrupt you.  Go ahead.

11           MR. VASQUEZ:  So, we don't know specifically what

12  exhibit they're now referring to.

13           THE COURT:  Okay.

14           MR. VASQUEZ:  When you read this testimony, there

15  is no way of you knowing:  Can you match that up with

16  PX-whatever.  You can't, just by sitting there looking at it.

17           THE COURT:  Would it be fair, Mr. Mahoney, to say

18  that you would be able to identify from each of the references

19  to an IFC bait stamp number, the exhibit either -- that's now

20  marked as an exhibit for trial, or otherwise some kind of a

21  discovery exhibit that you could identify for the other side?

22           MR. MAHONEY:  We could do that, Your Honor.  These

23  are documents that they produced to us after they Bate stamped

24  them with their Bate stamp numbering system.

25           THE COURT:  Oh, not yours?

 1              MR. MAHONEY:  No.  These are documents that IFC

 2     produced.

 3              THE COURT:  Okay.

 4              MR. MAHONEY:  And for him to say he doesn't know

 5     what they are, I think it's a little much.

 6              THE COURT:  What we'll do then is allow you to try

 7     to draw some connection with the IFC Bate stamp, and the

 8     depositions where you weren't familiar with what the document

 9     was, and then pull them out of your own discovery.  I'm going

10     to skip all of the best evidence rule objections then to let

11     you do that.

12              And then direct me to any other hard objections,

13     for example, hearsay, if there are any, and other kinds of

14     thing I might have to rule upon if I was sitting as a judge in

15     a deposition.

16              MR. VASQUEZ:  Okay.  I mean, just to be clear.

17     What our objection to this right now is -- and what we would

18     like them to do, since it's their offer, is to tell us which

19     trial exhibits they think these match up to, because then

20     there's the question of whether that exhibit would come in or

21     not, and we've already gone through those.

22              So, to the extent that that exhibit is not coming

23     in, that testimony should not come in as well.  To the extent

24     that the exhibit is coming in, it could come in.  To the

25     extent that there are documents talked about in here that

 1   aren't marked as exhibits, that part should not be in the

 2   trial.  That would be our position on these --

 3             THE COURT:  Well, have you seen the trial exhibits

 4   from the other side?  Aren't these in these binders?

 5             MR. VASQUEZ:  We haven't seen physically, until

 6   today, that binder.  We've gotten some document numbers.

 7   We've gone back and forth.  But they haven't given us their

 8   official exhibits yet.

 9             THE COURT:  Well, I guess part of the question is:

10   Aren't you able to identify from your own documents that your

11   client has produced, with Bate stamp numbers on them, what the

12   documents are that are being discussed in these depositions

13   when they were referred to by the IFC Bate stamp numbers.

14             MR. VASQUEZ:  Some of them, yes.

15             THE COURT:  Okay.  It seems to me you should be

16   able to identify all of them -- your client's exhibits that

17   have IFC Bate stamp numbers on them.  I guess I can ask -- Mr.

18   Mahoney, do you have an ability to identify, as you just did

19   with a couple of exhibits, what IFC Bate stamp numbers

20   correspond to plaintiff's exhibits and your plaintiff's

21   exhibit list to just help out counsel.

22             MR. MAHONEY:  Your Honor, there is really no

23   mystery here.  Our exhibit list is tied to IFC Bate numbers or

24   Osseiran Bate number.  All of those documents were produced by

25   IFC or Mr. Osseiran.  The great bulk of them from IFC.  So,

1    yeah, we can connect the dots very easily, so could they.

2             THE COURT:  Okay.  My question then is:  Would you

3    be willing to just -- beside your exhibit list -- let them

4    know which IFC Bate stamp number correspond where there are

5    IFC documents to your exhibit numbers?

6             MR. MAHONEY:  Sure, we've already done that.  Our

7    exhibit list has exhibit numbers, a description of the

8    document and the IFC Bate number.

9             THE COURT:  Okay.  I'm wrong.  I wasn't looking at

10   the exhibit list.  I do see where there are IFC exhibits that

11   there are IFC Bate stamp numbers beside them.  So, I'll leave

12   you to that, Mr. Vasquez.  Are there any other IFC Bate stamp

13   numbered exhibits, Mr. Mahoney, that are not marked on your

14   exhibit list with the IFC Bate stamp numbers?

15            MR. MAHONEY:  Could your repeat your question.

16            THE COURT:  Yeah.  There are some exhibits that do

17   not appear to be IFC exhibits.

18            MR. MAHONEY:  Yes.

19            THE COURT:  They were not, rather, disclosed in

20   discovery by IFC.

21            MR. MAHONEY:  Right.

22            THE COURT:  I just wanted to make sure that all of

23   the exhibits that do bear on your list IFC exhibit numbers,

24   IFC Bate stamp numbers, that all of the exhibits that you got

25   from IFC in discovery with IFC Bate stamp numbers are

 1   identified in your exhibit list as being IFC exhibits.

 2           MR. MAHONEY:  All of those IFC documents that were

 3   comprised as exhibits have their IFC Bate stamp numbers next

 4   to the exhibit number, with the exception of those exhibits

 5   that Mr. Osseiran produced.  And they have the Osseiran Bate

 6   stamp number, and those were obviously exchanged in discovery.

 7           THE COURT:  Okay.  What I'm going to do then is --

 8   I'm flipping through the rest of these list of objections to

 9   the plaintiff's exhibits to see if I can come across something

10   other than relevance, incompleteness or best evidence rule,

11   and turn to that and try to rule it.

12           MR. VASQUEZ:  Okay.  I think the first one --

13           THE COURT:  Speculation, is that --

14           MR. VASQUEZ:  Yes.  I think we got to go to Page

15   148.

16           THE COURT:  Uh-huh.

17           MR. VASQUEZ:  They're asking the witness to

18   interpret what another witness wrote or said.  Basically

19   they're asking Mr. Van Bilsen to comment about Mr. Khairallah.

20           THE COURT:  It looks as if, from Page 144, the

21   questioner has presented to the witness an IFC document.  And

22   is it accurate, Mr. Mahoney, that the questioner then is

23   asking the witness to explain what the document means or the

24   author meant?

25           MR. VASQUEZ:  If you look basically at the bottom

```
 1  of 148, they're asking him about what Mr. Khairallah thought.
 2          THE COURT:  Well, the way I read this -- and you
 3  all were there, I wasn't -- or some of your people were there,
 4  I wasn't -- this could easily be just another way of saying:
 5  My understanding is -- or the way I felt about it was --
 6  rather than offering it for the truth of what somebody else's
 7  views were.  And based upon my understanding, I did the
 8  following things.
 9          I really don't see a problem with that one.  Take
10  me to another one.
11  OFF THE RECORD DISCUSSION
12          THE COURT:  All right.  We'll be in recess for
13  15 minutes.  We're going to have a change of court reporter.
14  BRIEF RECESS
15
16                  C E R T I F I C A T E
17          I, Lisa M. Foradori, RPR, certify that the
18  foregoing is a correct transcript from the record of
19  proceedings in the above-titled matter.
20
21
22
23  Date:_____        _____
24                                   Lisa M. Foradori, RPR
25
```

**$**

**$50 [1]**  50/1

**'**

**'05 [1]**  12/8

**0**

**06-336 [2]**  1/3 3/5

**1**

**1000 [1]**  1/16
**101 [3]**  39/19 39/20 39/22
**102 [2]**  39/21 39/22
**106 [4]**  40/6 40/7 42/10 67/3
**107 [1]**  37/11
**108 [2]**  89/19 89/21
**109 [1]**  89/20
**10:00 [1]**  1/5
**1169 [1]**  33/11
**12 [5]**  17/4 17/5 17/6 80/21 90/10
**120 [6]**  42/10 42/12 42/13 42/15 42/20 42/21
**121 [3]**  42/23 44/6 44/7
**122 [2]**  44/6 44/7
**123 [1]**  44/7
**124 [3]**  44/15 44/16 45/8
**125 [3]**  45/5 45/6 45/12
**128 [2]**  45/7 45/12
**13 [1]**  17/8
**130 [3]**  45/13 47/15 47/20
**131 [2]**  47/18 47/19
**132 [1]**  48/3
**133 [2]**  48/14 48/16
**134 [2]**  48/16 52/16
**135 [1]**  52/16
**136 [2]**  48/16 52/16
**13th [1]**  37/11
**14 [2]**  85/3 89/20
**144 [1]**  95/20
**148 [2]**  95/15 96/1
**14th [1]**  64/11
**15 [4]**  19/1 19/2 19/17 96/13
**16 [1]**  19/7
**16th [1]**  57/24
**17 [3]**  1/4 19/17 86/9
**18 [1]**  19/3
**19 [8]**  19/2 19/17 65/8 65/9 65/10 65/23

**2**

**20 [2]**  19/23 19/24
**20001 [1]**  2/3
**20004 [1]**  1/17
**20005 [1]**  1/21
**2004 [4]**  11/3 11/14 11/15 13/2
**2006 [4]**  4/18 36/25 44/8 77/11
**2008 [1]**  45/14
**2013 [1]**  1/4
**202 [3]**  1/17 1/22 2/3
**21 [4]**  53/11 55/20 82/11 83/17
**21st [1]**  3/15
**22 [9]**  20/1 20/2 55/20 65/20 66/2 66/4 82/11 83/17 89/20
**23 [2]**  66/4 66/17
**23rd [1]**  14/14
**24 [6]**  66/18 66/19 67/6 67/13 67/14 67/15
**240 [1]**  16/2
**259 [1]**  3/21
**26 [4]**  21/13 25/21 26/4 26/5

**3**

**30th [1]**  29/18
**31 [9]**  34/8 34/14 34/17 34/18 34/21

**31/23 35/1 36/11 36/12
32 [3]**  24/7 24/2 67/17
**3269 [1]**  2/3
**33 [5]**  23/24 24/3 24/3 24/15 73/10
**333 [1]**  2/2
**336 [2]**  1/3 3/5
**34 [1]**  24/17
**347 [3]**  40/20 41/1 41/10
**35 [3]**  24/16 24/20 25/17
**354-3269 [1]**  2/3
**36 [2]**  25/19 25/24
**3603 [1]**  1/22
**37 [4]**  25/18 25/22 26/6 26/7
**38 [1]**  26/13

**4**

**403 [2]**  89/6 89/9
**438 [2]**  20/16 20/18
**443 [1]**  90/24
**444 [1]**  90/24
**45 [3]**  26/15 26/16 26/22
**46 [2]**  26/23 80/21
**48 [1]**  73/15
**49 [3]**  27/2 74/5 74/6

**5**

**50 [1]**  68/20
**505 [1]**  1/16
**51 [6]**  43/10 43/14 43/16 43/19 74/15 74/16
**52 [2]**  75/11 75/12
**53 [2]**  76/1 76/2
**54 [7]**  27/6 27/7 27/11 76/6 76/7 76/13 82/19
**55 [5]**  27/4 27/5 27/5 27/14 76/14
**56 [6]**  77/18 77/20 77/21 77/22 78/2 79/11
**57 [3]**  79/11 82/11 83/17
**58 [7]**  27/20 78/13 78/15 78/20 82/11 83/18 84/22
**59 [2]**  84/20 85/2

**6**

**60 [1]**  27/24
**607 [1]**  90/16
**608 [1]**  90/5
**61 [3]**  28/2 28/3 29/22
**626-3603 [1]**  1/22
**63 [1]**  29/22
**64 [2]**  78/15 78/20
**65 [2]**  78/22 78/23
**6706 [1]**  2/2
**69 [5]**  85/10 86/5 86/7 89/5 89/5

**7**

**70 [8]**  30/5 30/11 85/10 85/24 86/1 86/4 89/5 89/5
**701 [1]**  1/21
**73 [1]**  30/11
**75 [1]**  31/5
**76 [2]**  31/8 32/5
**776-7867 [1]**  1/17
**78 [1]**  32/5
**7867 [1]**  1/17
**79 [3]**  32/22 32/23 33/3

**8**

**80 [3]**  33/3 33/4 33/22
**801 [2]**  56/23 59/16
**81 [2]**  33/4 33/22
**82 [2]**  33/4 33/22
**86 [14]**  33/24 34/22 35/8 35/10 35/16 35/23 35/24 35/25 36/1 36/4 36/5 36/7 36/8 36/9

**88 [6]**  36/19 36/20 37/4 37/5 37/6 39/12
**9**

**91 [8]**  31/7 33/22 34/12 35/6 35/12 35/20 39/12 39/13
**9th [1]**  1/16

**A**

**a.m [1]**  1/5
**ability [3]**  39/12 72/20 93/18
**able [3]**  38/7 39/3 47/8 49/10 50/1 50/24 55/5 55/18 66/1 88/3 91/18 93/10 93/16
**about [113]**
**above [1]**  96/19
**above-titled [1]**  96/19
**absent [1]**  25/11
**absolutely [2]**  5/21 77/1
**absorbed [1]**  88/2
**acceded [1]**  23/7
**accept [1]**  43/5
**acceptable [1]**  67/9
**acceptance [1]**  26/17
**accommodate [1]**  9/11
**accuracy [4]**  38/7 53/15 55/22 70/6
**accurate [3]**  54/24 71/17 95/22
**accusation [1]**  63/23
**accused [1]**  62/24
**accusing [1]**  56/23
**acquire [3]**  20/25 41/3 43/16
**acquiring [1]**  43/10
**acquisition [3]**  43/14 44/24 50/2
**across [1]**  95/9
**Action [1]**  3/5
**activity [1]**  29/9
**actual [1]**  90/9
**actually [25]**  5/11 17/5 18/19 18/24 20/4 22/18 24/5 28/10 29/1 32/8 32/11 34/4 36/3 40/19 42/17 48/18 48/25 53/22 60/1 74/22 76/24 77/19 84/21 85/18 88/24
**add [2]**  33/25 74/17
**addition [1]**  20/7
**address [8]**  8/23 9/1 41/13 41/18 41/25 63/11 82/8 87/16
**addressed [2]**  41/12 86/25
**adds [1]**  67/7
**admissibility [1]**  47/18
**admissible [1]**  59/15
**admission [4]**  16/5 17/2 38/4 47/15
**admit [9]**  13/5 16/19 17/2 46/12 46/15 50/7 52/22 61/6 76/11
**admitted [12]**  27/20 28/2 35/2 35/3 36/13 45/2 46/7 73/18 73/18 78/17 87/1 87/2
**admittedly [3]**  11/24 37/20 44/3
**admitting [2]**  37/21 38/11
**advance [1]**  87/10
**advanced [1]**  34/20
**adverse [1]**  31/17
**advise [2]**  65/12 65/13
**advises [2]**  13/23 40/20
**advising [1]**  41/1
**after [16]**  18/6 29/4 29/5 30/18 31/9 31/15 32/20 34/7 40/11 40/13 40/18 45/15 49/9 65/19 68/14 91/23
**afterwards [2]**  29/14 61/21
**again [37]**  6/9 6/23 12/14 16/22 17/15 19/4 19/5 20/3 21/3 21/10 21/14 22/14 23/14 24/3 24/22 26/8 29/24 29/24 30/7 30/13 30/23 31/9 31/19 32/15 33/6 33/13 40/12 41/21 57/1 65/22 66/5 67/18 71/8 76/8 76/14 89/21 89/24
**agree [1]**  65/1

**agreed [2]**  64/11 68/19
**agreement [17]**  5/13 6/1 6/6 13/14 13/15
15/21 18/3 19/12 21/20 25/11 42/25
43/17 44/17 45/14 46/20 75/6 77/8
**ahead [2]**  20/14 36/13 64/24 66/25 77/3
81/18 91/10
**aid [4]**  50/5 50/18 51/15 52/7
**aided [1]**  2/24
**air [1]**  86/12
**all [151]**
**allegation [1]**  58/19
**allege [1]**  17/17
**alleged [8]**  5/22 7/3 29/4 30/18 31/9
45/16 45/21 59/11
**alleges [1]**  65/14
**alleging [2]**  56/9 63/1
**allow [6]**  25/2 27/15 46/2 73/7 75/24
92/6
**Alloway [6]**  67/19 69/8 69/11 70/22
73/11 76/2
**Alloway's [1]**  72/10
**allowed [4]**  25/18 26/22 30/5 90/6
**almost [1]**  30/25
**alone [1]**  72/13
**along [1]**  8/13
**already [12]**  8/4 13/12 16/1 16/23 32/12
44/19 48/5 53/21 58/16 65/23 92/21
94/6
**also [25]**  4/4 5/5 9/19 10/7 10/9 12/10
21/22 36/23 40/10 44/18 46/6 51/5
54/21 54/25 55/11 56/4 56/22 57/5
63/17 65/15 67/2 73/24 74/17 82/23
83/8
**alternative [4]**  6/4 88/3 88/6 88/22
**although [5]**  13/16 41/5 42/17 48/15
89/8
**Alturki [69]**  5/2 5/16 6/19 6/24 7/4 7/4
7/11 8/16 14/7 14/17 14/23 15/3 22/3
22/4 22/5 22/5 23/3 23/14 28/10 31/1
36/25 39/25 40/18 57/18 57/20 57/21
58/2 58/12 58/13 58/20 58/24 59/3
59/13 60/5 60/6 60/8 61/11 61/13 61/14
62/3 62/4 62/15 62/21 62/24 63/3 63/9
63/9 63/12 63/13 63/15 63/20 64/1 64/3
64/6 64/12 64/13 64/18 65/20 68/17
70/23 82/16 82/20 82/20 83/3 83/9 83/15
83/25 84/9 84/15 84/24
**Alturki's [6]**  22/10 60/24 63/6 63/7 82/13
84/8
**am [3]**  43/24 69/9 83/4
**ambiguity [1]**  90/14
**amended [8]**  9/10 9/22 9/23 9/25 10/3
76/16 76/21 77/13
**among [1]**  56/2
**analysis [2]**  11/22 16/11
**analyst [1]**  27/23
**and/or [2]**  6/13 6/24
**another [14]**  5/5 6/13 15/17 21/22 26/25
30/7 31/10 32/23 34/5 34/7 36/17 95/18
96/4 96/10
**answer [7]**  37/10 41/20 41/23 60/18
62/21 62/22 64/16
**anticipate [1]**  79/10
**any [45]**  4/10 7/2 9/3 9/4 9/4 11/6 12/8
12/24 14/2 18/15 18/19 19/7 19/7 20/4
22/5 33/6 35/5 38/14 42/12 49/3 50/25
51/11 52/17 56/18 61/1 61/5 63/2 70/15
70/19 79/23 80/6 81/3 82/22 83/7 83/11
83/12 83/12 83/21 84/1 84/9 87/24
88/20 92/12 92/13 94/12
**anybody [2]**  57/11 65/16
**anyone [4]**  5/7 7/1 18/13 48/20

**anything [20]**  10/10 13/43 16/21 21/19
24/4 26/19 28/5 28/23 30/15 30/22
32/14 38/18 39/16 40/9 42/1 45/17
57/11 57/14 57/16 77/14
**anyway [5]**  50/9 64/4 69/24 76/22 77/14
**apologize [3]**  40/3 49/17 77/4
**apparently [3]**  67/7 73/18 88/8
**appear [4]**  19/9 23/9 87/21 94/17
**APPEARANCES [1]**  1/13
**appears [4]**  26/25 37/7 41/11 41/12
**applies [1]**  59/21
**appreciate [1]**  88/1
**appropriate [1]**  52/13
**approval [1]**  25/1
**approved [2]**  4/7 17/24
**approving [1]**  4/6
**April [1]**  1/4 44/8
**are [95]**  3/18 5/25 6/4 6/5 10/23 10/25
17/2 19/4 23/3 23/4 23/21 23/22 26/9
26/16 29/11 29/12 29/23 30/15 31/3
33/4 33/22 34/10 34/20 36/25 39/15
39/24 40/1 40/10 40/23 42/18 44/7 44/8
44/10 44/12 44/13 45/18 46/4 47/23
48/16 49/14 52/11 52/12 52/18 53/3
54/4 55/5 55/13 56/8 56/23 57/6 57/7
63/1 67/9 68/13 68/22 69/24 71/1 72/1
72/12 72/15 75/5 78/10 78/20 80/14
80/15 80/18 81/10 81/16 84/3 85/13
85/18 86/8 86/25 87/12 88/19 88/21
90/11 90/12 90/13 90/14 91/7 91/23
92/1 92/5 92/13 92/25 93/12 93/12 94/4
94/10 94/11 94/12 94/13 94/16 94/25
**aren't [10]**  23/18 23/19 23/22 44/9 53/9
53/22 85/19 93/1 93/4 93/10
**argue [3]**  46/5 48/22 48/23
**argues [1]**  59/18
**argument [5]**  18/17 45/6 49/14 60/18
66/1
**arguments [2]**  45/8 58/19
**around [13]**  8/18 29/3 29/7 45/21 53/19
54/14 54/20 55/16 63/19 64/14 65/3
67/4 85/5
**arranged [1]**  65/15
**articulated [1]**  84/3
**articulating [1]**  84/8
**as [97]**
**aside [3]**  6/17 19/18 61/8
**ask [16]**  3/5 3/23 8/21 8/24 10/7 14/24
27/17 38/12 39/22 46/25 54/21 64/21
73/25 77/6 89/17 93/17
**asked [6]**  35/12 57/22 83/6 86/5 88/15
88/25
**asking [15]**  17/21 25/22 38/10 40/24
52/9 70/20 74/9 83/2 83/22 83/25 86/5
95/17 95/19 95/23 96/1
**asks [2]**  22/25 65/19
**asserted [1]**  37/21
**asserting [2]**  75/5 77/7
**assess [1]**  71/16
**assessment [1]**  81/7
**assume [2]**  18/9 79/7
**assumed [1]**  49/1
**attached [2]**  37/13 41/8
**attaching [1]**  37/12
**attempts [1]**  51/3
**attenuated [1]**  46/24
**auditor [3]**  11/3 11/3 11/7
**authenticate [8]**  20/9 20/12 28/20 38/11
39/12 42/7 48/21 79/3 79/5
**authenticating [1]**  39/1
**authenticity [7]**  12/21 13/6 20/11 74/17
78/25 79/1 79/2
**author [3]**  13/16 31/21 95/24
**authority [2]**  17/25 25/12

**available [1]**  14/15
**Avenue [1]**  1/22
**average [1]**  49/25
**aware [2]**  60/6 63/2
**away [2]**  32/12 37/15

**B**

**back [10]**  8/7 15/19 60/3 61/24 81/22
81/22 82/19 86/5 86/7 93/7
**background [1]**  31/16
**backing [1]**  7/14
**bag [4]**  57/24 58/1 58/25 61/4
**bait [1]**  91/19
**balancing [1]**  89/10
**bank [9]**  28/14 30/12 30/15 32/7 32/16
33/5 33/11 65/16 80/23
**Barclays [18]**  4/11 4/12 4/17 13/10
13/19 13/23 14/9 14/13 21/15 23/3 23/5
23/10 28/17 29/23 30/1 30/7 32/24
65/16
**base [1]**  49/18
**based [6]**  23/23 48/7 67/3 74/17 76/16
96/7
**basically [6]**  15/10 29/13 31/16 75/4
95/18 95/25
**basis [15]**  15/14 19/6 38/3 38/10 39/15
43/25 49/20 50/12 51/11 55/7 55/19
84/7 84/10 84/12 89/9
**Bate [23]**  20/16 20/18 90/11 90/13 90/16
91/23 91/24 92/7 93/11 93/13 93/17
93/19 93/23 93/24 94/4 94/8 94/11
94/12 94/14 94/24 94/25 95/3 95/5
**Bates [5]**  33/11 34/21 40/20 41/1 41/10
**be [167]**
**be this [1]**  24/25
**bear [1]**  94/23
**because [55]**  3/19 4/21 5/15 5/24 6/6
8/12 11/5 13/24 16/5 17/6 18/23 22/6
22/16 25/25 29/8 32/9 35/16 35/25
37/14 43/16 45/19 47/12 48/7 48/25
50/8 51/3 52/10 53/23 54/13 54/22
55/13 56/23 58/1 58/24 59/8 59/23
60/13 61/3 61/9 62/13 62/24 63/1 63/25
67/22 69/5 71/15 75/5 76/19 78/10 81/4
85/13 85/21 87/1 87/18 92/19
**become [1]**  78/9
**becoming [1]**  28/16
**been [45]**  4/12 5/7 6/1 7/1 7/5 7/11 9/21
10/4 10/6 10/12 11/18 16/23 17/12
20/10 23/17 23/22 26/3 26/18 32/12
33/13 37/25 39/10 39/17 43/20 46/20
48/5 49/10 50/1 51/17 52/14 52/23
53/21 60/8 61/16 62/9 63/23 70/10 71/9
73/1 75/13 78/2 80/12 84/2 87/1 91/7
**before [22]**  1/10 4/7 4/8 9/2 9/4 12/8
15/23 18/13 24/22 29/10 29/13 29/19
31/1 35/19 39/14 42/12 42/13 44/2
50/20 57/24 59/14 86/4
**Beg [1]**  52/3
**begins [1]**  80/21
**behalf [1]**  14/13
**being [21]**  32/17 45/2 51/19 51/23 54/2
54/12 54/16 55/24 58/22 60/19 60/20
61/2 62/24 70/3 73/18 73/18 86/22 88/2
89/4 93/12 95/1
**belief [2]**  83/21 83/25
**beliefs [1]**  84/8
**believe [9]**  4/17 38/23 39/2 46/11 63/12
70/24 71/3 84/1 90/22
**believed [6]**  60/16 63/14 63/16 63/20
64/3 77/10
**bench [1]**  81/5
**beside [1]**  94/3 94/11
**besides [2]**  18/24 59/11

**B** Case 1:06-cv-00336-RWR-DAR Document 96 Filed 06/18/?? Page 99 of 110

**best [6]** 89/5 89/6 89/8 91/1 92/10 95/10
**better [1]** 81/9
**between [24]** 4/11 9/1 13/9 22/2 22/4 23/2 23/3 23/4 23/9 25/2 25/5 25/6 29/23 30/7 30/16 31/22 32/24 44/17 45/15 46/20 56/20 60/7 63/5 71/21
**beyond [3]** 62/11 74/19 86/22
**bicker [1]** 87/14
**Bilsen [45]** 5/8 5/23 6/2 6/7 6/22 7/10 7/12 7/15 7/17 8/6 13/17 13/23 14/24 17/25 18/10 19/11 20/11 20/13 23/5 24/8 24/12 25/12 31/23 32/2 32/19 33/11 33/15 38/12 38/15 38/17 40/21 41/1 41/13 41/15 42/6 52/19 67/23 69/17 69/18 72/6 74/7 74/8 74/22 84/8 95/19
**Bilsen's [7]** 17/23 18/4 40/17 41/25 69/6 75/17 80/10
**binder [3]** 33/24 42/11 48/15 52/17 53/7 65/10 93/6
**binders [1]** 93/4
**bit [2]** 8/21 21/22
**Blanton [1]** 88/25
**bluff [1]** 72/9
**board [7]** 4/18 4/19 8/12 14/13 14/14 53/25 61/20
**Board/MECG [1]** 14/13
**body [2]** 22/12 22/16
**bold [2]** 20/20 21/5
**book [1]** 42/11
**bosses [1]** 40/17
**both [4]** 17/1 44/9 52/20 69/10
**bottom [7]** 13/1 16/2 60/3 67/13 71/2 80/15 95/25
**bought [4]** 44/20 44/20 49/5 54/1 54/1 59/9 64/14
**box [4]** 3/20 3/20 87/13 88/5
**breach [25]** 3/25 5/1 5/9 5/13 5/14 5/23 6/15 7/3 8/15 13/14 21/19 29/4 29/10 29/13 30/18 31/10 31/12 31/20 32/25 40/14 43/17 45/21 49/1 58/19 59/12
**breached [5]** 32/13 54/13 54/15 55/15 56/18
**breaches [3]** 6/6 6/12 6/17
**break [1]** 81/21
**BRIEF [1]** 96/14
**bring [1]** 55/6
**bulk [1]** 93/25
**business [2]** 11/13 39/1
**businessman [1]** 46/17
**buy [7]** 22/9 28/16 29/4 37/12 49/10 49/12 68/18
**buying [3]** 20/24 29/7 58/5

**C**

**CA [1]** 1/3
**call [5]** 5/5 60/1 65/19
**called [7]** 4/5 31/15 68/12 68/15 70/2 75/13 75/14
**calling [1]** 68/11
**came [5]** 12/11 53/19 54/23 55/10 84/23
**can [40]** 3/23 3/24 12/3 19/2 25/21 29/9 31/23 32/7 34/16 35/2 35/20 38/19 39/7 44/25 46/12 46/15 46/17 47/5 50/10 52/12 54/21 61/8 64/20 64/25 65/25 67/15 68/9 71/18 72/6 72/8 79/21 80/5 80/19 81/18 87/9 87/25 91/15 93/17 94/1 95/9
**can't [9]** 25/5 38/16 39/9 41/20 62/25 70/11 85/5 85/22 91/16
**cannot [1]** 41/23
**capable [1]** 39/1

**capital [4]** 11/23 12/1 14/9 43/14
**Carbon [1]** 41/25
**care [5]** 35/5 36/13 79/14 79/16 79/17 88/9
**careful [1]** 6/10
**Carman [1]** 75/13
**Carrying [1]** 83/18
**case [28]** 1/20 3/24 11/4 11/6 11/19 12/9 17/13 18/14 19/8 20/23 21/19 23/6 23/15 23/20 33/7 39/16 41/3 45/16 47/12 47/16 47/17 48/6 49/4 49/16 58/9 61/22 73/21 76/10
**cat [4]** 57/24 58/1 58/25 61/3
**catching [2]** 70/9 70/12
**caught [1]** 3/15
**cause [1]** 88/18
**caution [1]** 8/7
**cc'd [2]** 13/24 31/23
**centrally [3]** 13/21 14/20 21/21
**cents [2]** 68/20 68/20
**century [1]** 3/15
**CEO [4]** 4/20 6/24 22/3 37/12
**certain [2]** 34/21 74/20
**certainly [12]** 6/5 11/25 16/17 35/2 38/5 64/8 71/18 72/8 72/17 72/23 76/10 87/12
**certify [1]** 96/17
**chain [5]** 23/9 30/7 36/11 41/9 65/25
**chair [1]** 22/4
**Chairman [6]** 4/19 5/17 14/13 70/24 71/3 82/20
**challenge [2]** 12/20 13/6
**challenges [1]** 79/23
**change [3]** 20/22 21/7 96/13
**characterizations [1]** 71/6
**characterizing [3]** 67/20 70/22 83/24
**charge [1]** 56/4
**chart [4]** 51/7 51/8 51/25 53/10
**check [1]** 31/16
**Cherif [5]** 17/12 17/25 20/21 31/22 32/1
**chief [3]** 47/16 48/6 49/16
**chocked [1]** 71/7
**CHRISTOPHER [2]** 1/14 3/8
**chronicles [1]** 30/23
**chronology [1]** 15/11
**circuit [1]** 82/6
**circulating [1]** 61/15
**Civil [1]** 3/4
**claim [6]** 13/13 16/23 16/24 16/24 16/25 49/7
**claimed [3]** 14/19 49/4 68/24
**claiming [2]** 41/18 54/1
**claims [2]** 26/18 49/3
**clarify [1]** 53/7
**clarity [1]** 8/21
**clash [1]** 22/9
**classic [2]** 63/16 65/5
**clear [6]** 4/1 5/22 7/18 84/5 89/15 92/16
**clearly [4]** 12/14 19/19 25/13 46/16
**client [3]** 28/20 31/11 93/11
**client's [1]** 93/16
**clipped [1]** 86/11
**close [6]** 6/11 32/8 32/11 68/17 68/23 69/18
**closer [1]** 8/7
**closing [1]** 69/18
**colleague [1]** 86/18
**colleagues [1]** 3/12
**COLUMBIA [1]** 1/1
**combined [2]** 24/1 26/3
**come [27]** 3/24 9/8 14/18 15/4 15/25 55/1 55/11 56/7 59/22 61/9 67/13 69/3 67/2 67/15 73/24 75/3 75/10 81/7 81/21 81/22 82/3 87/15 87/25 92/20 92/23

**comes [6]** 45/25 18/17 56/22 64/12 85/9 87/25
**coming [12]** 47/10 53/21 62/12 65/18 65/23 69/23 81/7 82/14 91/14 92/22 92/24
**comment [4]** 18/12 18/13 73/22 95/19
**committed [3]** 3/25 5/1 5/9
**committee [15]** 4/22 4/23 4/24 8/14 14/17 15/6 15/11 28/9 28/11 37/23 38/6 39/4 53/20 56/2 83/20
**communicated [1]** 8/11
**communication [5]** 5/15 5/16 6/18 6/18 56/19
**communications [5]** 19/4 21/15 23/3 23/4 58/12
**company [9]** 11/9 11/10 11/13 11/23 12/16 20/22 21/7 22/17 45/20
**compare [1]** 37/3
**complaint [3]** 76/17 76/21 77/13
**complete [5]** 11/12 34/5 34/13 36/10 81/22
**completed [4]** 13/12 21/16 30/13 60/8
**completely [1]** 29/9
**completeness [3]** 33/25 36/14 55/12
**comprised [1]** 95/3
**computer [1]** 2/24
**computer-aided [1]** 2/24
**concern [2]** 49/11 88/2
**concerning [1]** 59/20
**concerns [3]** 30/12 31/10 67/22
**conclusions [3]** 11/9 81/7 81/8
**concur [2]** 44/12 44/13
**confer [1]** 86/24
**conferences [1]** 87/8
**conferred [1]** 49/20
**confident [2]** 39/7 39/9
**confidential [2]** 17/19 18/1
**confidentiality [29]** 4/1 5/12 5/20 5/25 6/6 13/14 13/14 13/24 15/21 16/25 18/3 19/5 21/17 21/20 24/4 29/5 30/3 30/9 30/14 31/12 32/12 33/1 43/17 54/13 54/15 55/15 56/18 57/11 77/8
**confirm [2]** 28/24 38/7
**confirmation [1]** 31/15
**confirmed [1]** 71/11
**confirming [1]** 33/11
**confirms [1]** 2/22
**confronts [1]** 7/10
**confusing [1]** 37/10
**connect [1]** 94/1
**connection [4]** 29/25 33/16 77/8 92/7
**consensus [1]** 88/7
**conservative [1]** 5/12
**consistent [1]** 20/23
**consolidated [1]** 11/12 25/20
**Constitution [1]** 2/2
**consult [1]** 67/12
**consummate [1]** 25/13
**consummated [5]** 4/9 19/20 21/1 26/18 30/1
**consummating [2]** 6/11 33/14
**consummation [1]** 31/20
**contain [2]** 12/23 39/17
**contained [1]** 80/8
**containing [1]** 42/25
**contains [1]** 73/10
**contemporaneous [2]** 56/8 56/10
**content [1]** 86/10
**contents [5]** 67/14 82/12 82/18 82/22 85/11
**contest [4]** 45/2 55/23 56/7 70/5
**context [4]** 27/11 43/13 77/6 86/14
**contingent [1]** 43/9

C Case 1:06-cv-00336-RWR-D... ...ment 96   Filed 06/18...

**continue [1]** 40/19
**continued [1]** 57/10
**continuing [1]** 27/1
**contract [5]** 13/12 16/24 21/16 26/17 49/2
**contracts [1]** 29/25
**contradicts [1]** 76/12
**control [3]** 20/22 20/25 21/7
**convenience [1]** 78/25
**conversation [9]** 57/21 62/25 63/3 63/3 63/4 64/15 67/23 80/19 82/15
**conversations [5]** 58/12 61/21 61/24 67/5 85/16
**cooling [2]** 87/13 87/19
**copies [4]** 10/20 10/23 12/11 17/11
**copy [4]** 9/18 9/19 36/6 41/25
**CORPORATION [3]** 1/6 3/4 3/11
**correct [9]** 27/5 51/21 52/24 52/25 74/13 74/14 78/19 91/5 96/18
**correctly [1]** 61/25
**correspond [2]** 93/20 94/4
**correspondence [2]** 33/4 67/4
**corroborate [1]** 69/6
**corroborates [2]** 59/15 65/22
**corroborating [1]** 57/9
**could [24]** 3/22 4/8 4/11 5/6 11/16 22/17 39/10 46/6 65/16 72/23 72/23 73/24 78/9 78/9 81/12 84/2 86/24 90/7 91/21 91/22 92/24 94/1 94/15 96/4
**couldn't [4]** 7/1 13/25 17/15 51/10
**counsel [5]** 3/23 9/22 23/16 25/24 34/10 35/18 37/2 85/14 93/21
**counter [1]** 88/9
**counter-designations [1]** 88/9
**countered [1]** 47/9
**couple [3]** 19/3 91/6 93/19
**course [1]** 24/12
**court [11]** 1/1 2/1 2/1 10/21 13/12 15/19 53/14 76/22 90/8 91/3 96/13
**Court's [3]** 50/25 79/19 87/5
**Courthouse [1]** 2/2
**cover [1]** 6/1
**create [1]** 79/19
**created [1]** 11/2 89/2
**creating [1]** 29/13
**credibility [5]** 56/8 68/6 68/6 69/2 73/5
**credit [4]** 16/8 39/14 64/20 64/25
**criticized [1]** 71/4
**crux [1]** 58/18
**cured [1]** 42/15
**currently [1]** 68/19
**custodian [1]** 39/1
**customer [1]** 31/16

**D**

**damages [2]** 29/12 77/7
**Daoud [10]** 4/3 32/7 52/19 55/22 57/8 58/9 59/17 70/2 71/6 71/18
**data [1]** 50/14
**date [5]** 30/17 47/25 48/8 61/12 96/23
**dated [3]** 29/18 36/25 45/14
**day [1]** 81/12
**DC [4]** 1/4 1/17 1/21 2/3
**dead [2]** 22/12 22/16
**deal [19]** 6/11 6/15 8/6 8/7 8/9 9/4 24/5 24/6 25/13 31/2 52/2 52/5 55/16 55/17 57/12 68/17 68/23 69/18 81/2
**Dear [1]** 56/13
**December [4]** 13/2 29/17 57/24 64/11
**December 14th [1]** 64/11
**December 16th [1]** 57/24
**December 2004 [1]** 13/2

**decide [2]** 45/25 73/7
**decided [1]** 54/3
**decision [1]** 83/20
**decisions [1]** 87/9
**declaration [5]** 74/6 75/12 75/17 76/2 76/8
**defendant [5]** 1/7 1/19 12/18 23/8 78/17
**defendant's [6]** 34/8 34/14 35/1 36/11 36/12 78/24
**definition [1]** 63/16
**delegate [1]** 17/25
**delegated [1]** 25/12
**deleted [2]** 19/4 24/1
**demonstrative [7]** 50/5 50/5 50/18 50/21 51/15 51/25 52/7
**denied [2]** 68/3 73/3
**denies [1]** 55/6
**deny [1]** 69/5
**depended [1]** 47/2
**deposed [2]** 7/5 23/22
**deposition [20]** 10/8 38/21 38/22 51/4 55/1 63/24 66/14 68/4 68/24 73/2 77/5 80/20 80/21 84/17 86/16 88/17 88/21 88/25 89/1 92/15
**depositions [13]** 10/12 12/25 52/18 52/21 52/23 79/14 79/20 80/6 85/14 85/15 85/16 92/8 93/12
**description [2]** 15/24 94/7
**designated [4]** 52/23 79/21 80/2 89/20
**designation [3]** 79/14 86/2 86/9
**designations [7]** 10/9 79/23 80/6 80/10 86/25 88/9 88/10
**detailed [2]** 27/10 27/10
**details [1]** 32/24
**determining [1]** 27/1
**developing [1]** 27/1
**development [2]** 15/6 18/5
**did [46]** 3/22 4/3 5/17 7/23 8/17 8/24 9/3 9/7 19/3 29/8 29/11 31/8 33/25 38/20 46/25 54/25 57/3 57/13 58/21 59/17 61/11 61/13 61/20 62/3 62/3 62/6 62/7 62/8 62/21 63/8 63/9 63/12 64/2 64/6 68/8 69/4 69/6 79/19 83/14 83/22 84/1 84/1 84/4 86/23 93/18 96/7
**didn't [22]** 6/22 18/13 22/5 24/5 29/3 38/22 40/4 40/9 49/6 49/12 50/12 51/5 55/17 59/16 59/17 63/24 68/24 73/3 85/14 88/8 90/2 90/8
**different [10]** 7/22 9/20 9/24 29/9 34/21 37/4 69/1 69/1 73/2 74/1
**differently [1]** 66/12
**direct [3]** 68/9 81/3 92/12
**directed [2]** 41/11 82/21
**direction [1]** 14/16
**directly [1]** 54/8
**Directors [1]** 53/25
**disappeared [1]** 25/25
**disbelieved [1]** 71/25
**disclose [1]** 55/6
**disclosed [10]** 18/15 18/16 18/20 20/5 24/24 24/25 56/24 57/11 94/19
**discovery [5]** 91/21 92/9 94/20 94/25 95/6
**discuss [1]** 14/15
**discussed [4]** 20/7 52/20 60/2 93/12
**discussing [5]** 5/1 5/9 82/18 85/11 90/19
**discussion [5]** 32/23 57/18 69/17 80/23 96/11
**discussions [4]** 27/22 71/15 72/7 84/24
**dismay [1]** 32/21
**dismissed [3]** 13/12 16/23 26/18
**disseminated [1]** 40/18
**DISTRICT [3]** 1/1 1/1 1/11

**divulged [5]** 4/8 6/7 6/14 7/4 17/18
**divulgement [1]** 10/19 7/3
**divulging [2]** 6/17 7/3
**do [61]** 8/23 9/23 10/20 12/1 13/13 18/3 19/2 22/1 22/22 24/4 27/14 27/15 27/18 27/19 28/5 30/20 30/22 36/7 39/21 40/9 41/24 42/10 46/6 46/11 46/18 47/14 50/12 51/5 52/11 52/15 54/20 55/11 55/18 56/9 58/21 61/11 61/29 67/2 72/1 73/22 77/3 79/13 80/4 81/3 81/18 84/18 86/20 87/10 87/12 88/23 89/1 89/6 91/22 92/6 92/11 92/18 93/18 94/10 94/16 94/23 95/17
**docket [1]** 77/15
**document [76]** 4/6 4/15 6/17 12/17 12/18 12/21 13/3 13/7 16/1 16/4 17/7 17/17 25/12 28/21 29/17 34/4 34/6 37/7 37/25 38/10 38/11 38/18 39/8 41/6 41/19 41/22 47/1 47/20 48/10 49/18 51/18 55/10 55/19 57/5 61/8 63/18 70/20 72/14 73/1 74/18 80/7 82/13 82/14 82/14 82/15 82/18 82/18 82/22 83/1 83/6 83/8 85/11 85/11 85/17 86/8 86/9 86/11 86/13 86/22 89/7 89/13 89/16 89/22 89/22 90/1 90/2 90/3 90/5 90/6 90/15 90/19 92/8 93/6 94/8 95/21 95/23
**documentation [1]** 7/9
**documents [20]** 4/11 30/8 42/18 53/19 53/20 68/7 83/12 85/15 85/17 85/21 90/11 90/13 91/23 92/1 92/25 93/10 93/12 93/24 94/5 95/2
**does [24]** 11/24 12/22 15/25 16/9 16/24 24/21 28/24 35/5 36/13 46/12 55/1 64/21 67/1 68/21 72/4 72/16 72/18 73/12 75/4 75/7 81/25 82/5 82/17 90/25
**doesn't [18]** 12/10 13/13 18/2 24/4 27/9 28/5 30/8 46/2 49/11 54/7 54/10 60/10 70/23 71/3 72/1 86/12 87/25 92/4
**doing [10]** 29/14 31/10 45/23 62/24 68/1 68/1 70/10 70/13 87/23 88/4
**don't [86]** 3/19 4/17 11/4 11/11 12/3 12/16 12/23 12/24 14/10 15/19 15/20 17/11 18/22 21/17 26/3 28/25 29/10 30/2 31/11 33/6 33/25 34/4 34/17 34/23 37/2 37/24 38/14 38/17 38/23 39/2 39/15 39/20 39/21 40/10 41/12 42/4 42/12 44/10 45/16 46/8 48/22 50/23 52/17 59/21 61/1 61/5 64/1 68/18 73/17 73/21 73/25 75/22 76/10 77/3 78/4 78/10 79/10 79/17 80/24 81/13 81/20 82/7 82/24 82/25 83/5 83/11 83/12 83/21 84/5 84/14 85/17 85/20 86/21 87/8 87/10 87/19 88/20 89/13 89/23 89/25 90/3 90/9 90/21 91/9 91/11 96/9
**done [4]** 32/25 80/10 87/24 94/6
**dots [1]** 94/1
**double [7]** 61/1 65/6 66/10 67/18 67/21 70/5 73/14
**down [4]** 10/14 25/6 56/7 81/13
**draft [7]** 19/13 20/2 20/4 20/4 33/12 42/25 44/16
**drafted [3]** 17/12 38/1 38/1
**drafting [1]** 30/8
**drafts [1]** 44/21
**draw [2]** 66/1 92/7
**Duane [1]** 1/15
**during [4]** 16/20 19/15 28/11 62/20

**E**

**e-mail [33]** 13/9 13/18 14/7 14/12 19/10 21/25 23/9 27/10 27/10 30/7 34/5 34/7 36/11 40/7 41/9 41/11 41/14 41/18 57/8 59/14 59/15 61/20 66/6 66/8 66/11 67/6

**E**

e-mail... [7] 67/19 69/8 71/12 71/25 72/3 72/10 73/11
e-mails [9] 19/10 22/21 23/8 29/23 33/9 33/19 59/23 59/25 67/4
e.g [1] 68/19
each [5] 33/19 67/13 75/2 91/1 91/18
earlier [3] 13/22 73/19 90/19
easier [1] 79/21
easily [2] 94/1 96/4
easy [1] 9/1
economical [1] 70/3
effect [1] 5/14
efficient [1] 81/1
effort [1] 9/4
efforts [2] 11/17 32/20
either [11] 34/20 39/21 48/8 58/4 73/4 83/12 83/13 87/2 87/3 87/8 91/19
elicit [5] 16/10 72/7 72/20 75/2 75/10
eliciting [4] 24/12 62/15 62/16 72/2
else [17] 16/21 21/9 23/23 24/10 25/20 26/3 28/23 30/19 30/22 32/14 42/1 52/1 52/4 60/12 60/13 60/16 82/22
else's [2] 71/13 96/6
employee [1] 76/3
empowered [1] 14/17
end [3] 5/14 5/17 40/14
ended [1] 6/15
engaged [1] 61/16
engaging [1] 58/16
entered [1] 8/24
entering [1] 57/6
enters [1] 75/6
entertain [2] 50/25 51/18
entire [1] 65/14
entirely [2] 4/1 20/23
entry [1] 83/17
equity [2] 17/22 18/6
erosion [2] 11/23 12/15
especially [2] 70/24 71/4
ESQUIRE [5] 1/14 1/15 1/19 1/19 1/20
essentially [9] 12/10 22/12 22/25 26/10 31/2 67/8 67/25 73/23 86/10
established [1] 4/22
estoppel [1] 16/24
evaluate [2] 4/22 14/17
evaluating [1] 39/4
even [7] 5/20 6/8 13/25 40/21 41/2 49/11 87/19
event [3] 82/23 83/7 84/9
events [2] 15/11 45/16
eventual [1] 28/14
eventually [1] 16/15
ever [1] 4/17
every [1] 22/22
everything [3] 11/6 15/3 23/16
evidence [42] 4/2 4/4 5/3 5/5 6/10 6/20 6/21 6/23 7/8 7/11 18/24 21/11 27/14 27/18 29/14 50/8 50/9 50/17 50/24 51/1 51/2 51/23 52/8 53/21 57/6 60/4 63/2 64/12 65/18 65/23 69/20 74/3 74/13 75/23 77/25 78/17 89/5 89/6 89/8 91/1 92/10 95/10
evidentiary [9] 38/3 38/10 43/25 55/7 55/19 81/4 81/10 81/17 85/9
evidently [1] 17/12
exact [2] 47/19 47/24
exactly [5] 3/25 11/12 44/19 89/23 89/25
examination [2] 62/20 72/21
example [2] 51/24 92/13
except [1] 78/7
exception [2] 59/19 95/4
exchange [3] 22/21 31/22 84/17

exchanged [2] 21/25 95/6
exchanges [2] 19/10 27/1
excluded [3] 16/1 39/17 48/5
excuse [4] 10/20 12/23 25/5 71/22
executing [1] 25/11
exhibit [84] 9/10 9/22 9/23 9/25 10/3 10/8 10/15 11/12 12/7 12/11 12/12 13/3 15/18 15/24 18/15 25/24 27/6 28/7 34/8 34/14 34/21 34/23 34/25 35/1 36/11 36/12 37/3 37/11 37/16 39/12 39/17 45/3 47/6 47/15 48/11 48/14 48/18 49/19 49/23 50/5 50/7 50/17 50/21 52/7 52/21 53/11 55/20 59/25 65/8 65/9 65/10 65/20 73/10 73/11 74/13 74/22 74/23 79/11 80/11 90/1 90/9 90/10 90/11 90/24 91/3 91/4 91/12 91/19 91/20 91/21 92/20 92/22 92/24 93/21 93/23 94/3 94/5 94/7 94/7 94/10 94/14 94/23 95/1 95/4
exhibits [40] 9/20 10/14 10/15 10/24 11/1 40/5 42/11 45/1 52/17 53/6 53/8 53/9 57/5 76/15 78/1 78/7 78/8 78/9 79/13 85/15 87/1 89/1 91/7 92/19 93/1 93/3 93/8 93/16 93/19 93/20 94/10 94/13 94/16 94/17 94/23 94/24 95/1 95/3 95/4 95/9
existing [1] 21/6
exit [2] 16/14 16/20
exiting [1] 16/13
expect [1] 27/18
expert [14] 46/6 46/8 46/17 46/25 47/1 47/7 47/13 47/16 49/21 51/4 51/6 78/11 78/23 78/24
expert's [4] 48/19 49/14 49/16 51/14
explain [2] 61/19 95/23
extent [6] 19/5 46/4 55/4 92/22 92/23 92/25

**F**

fabrication [1] 59/20
fact [9] 18/14 24/24 30/17 40/13 46/20 58/21 59/16 60/24 66/1
facts [5] 12/8 51/8 51/16 75/3 76/20
factual [1] 81/7
failed [1] 85/21
fair [1] 91/17
fairly [1] 9/1
fairness [2] 42/10
falls [1] 63/1
familiar [1] 92/8
far [2] 31/8 46/24
Farida [5] 32/18 52/19 56/13 65/19 72/10
fashion [1] 50/18
February [4] 1/18 18/25 36/25 37/11 77/11
February 13, 2006 [1] 36/25
February 13th [1] 37/11
felt [2] 83/20 96/5
FERRETTI [1] 1/15
few [1] 10/3
filed [1] 5/19
files [4] 37/25 54/23 55/2 55/11
final [5] 25/1 25/10 33/13
finally [2] 70/9 70/12
FINANCE [3] 1/6 3/4 3/11
financials [2] 13/3 15/25
find [5] 62/7 62/8 67/24 68/5 79/24
fine [1] 42/19
finish [1] 86/3
first [26] 9/23 10/15 13/22 15/20 20/20 21/4 28/14 40/25 41/24 43/13 48/17 53/11 57/14 57/15 61/4 61/6 62/19 66/13 68/14 72/25 80/4 80/11 80/18

80/18 86/21 95/12
five [1] 7/2
flipping [1] 95/8
floating [1] 86/11
flying [1] 87/21
FNB [4] 42/24 43/9 43/11 45/15
focus [3] 3/18 81/9 88/15
focusing [1] 68/10
follow [2] 64/15 83/20
follow-up [1] 64/15
following [2] 83/23 96/8
follows [1] 70/1
Foradori [3] 2/1 96/17 96/24
foregoing [1] 96/18
forgive [1] 88/11
form [1] 34/13
formed [2] 14/17 15/11
forth [1] 93/7
forward [7] 3/5 8/9 8/23 17/20 33/12 50/2 59/13
found [1] 31/17
four [2] 19/10 19/22
fourth [3] 37/13 37/14 37/16
FRANCIS [1] 1/19
Frank [1] 3/10
freestanding [1] 50/20
front [4] 22/21 36/7 59/24 83/1
full [2] 6/9 71/7
function [2] 22/18 57/10
further [3] 8/5 26/19 70/21
future [1] 14/15

**G**

gain [2] 20/21 21/7
gave [5] 4/5 10/16 53/8 89/23 89/25
Genovese [1] 75/13
get [25] 3/23 8/21 9/4 17/24 34/6 42/12 42/13 54/20 60/4 60/4 61/10 61/24 62/2 62/12 63/19 64/2 65/3 66/1 68/1 71/18 72/21 76/18 77/14 85/5 87/24
gets [1] 64/12
getting [7] 3/16 44/1 49/15 55/8 63/12 72/11 86/3
Give [2] 10/20 56/11
given [8] 9/21 10/17 22/10 70/24 71/4 75/8 88/23 93/7
giving [1] 89/21
go [22] 8/9 8/23 10/13 15/19 20/14 27/6 29/3 35/20 49/9 53/9 56/4 62/1 63/8 64/24 66/25 67/1 77/3 81/18 82/19 87/4 91/10 95/14
goal [1] 20/24
goes [14] 19/19 29/21 47/20 47/22 50/3 54/13 54/25 57/5 62/22 66/19 69/3 70/9 73/4 77/10
going [89] 3/18 6/3 7/2 7/7 7/8 7/15 8/9 12/4 14/10 14/21 17/12 17/20 18/9 18/13 18/15 18/19 19/7 19/14 20/3 20/9 20/12 21/15 23/14 23/19 23/19 23/20 23/20 24/1 24/23 24/24 26/17 29/11 32/21 38/11 38/15 38/17 38/25 40/8 42/4 42/6 43/6 44/9 46/1 46/22 47/8 47/11 48/20 49/18 49/20 50/21 50/23 50/25 51/2 51/24 52/6 52/20 54/14 55/20 58/5 58/8 59/12 60/3 60/11 62/1 62/14 62/16 63/5 64/13 68/4 69/5 69/23 69/24 73/7 73/8 73/20 76/18 78/16 78/17 81/20 82/9 82/16 87/12 87/18 88/19 88/21 89/16 92/9 95/7 96/13
gone [4] 13/11 24/17 92/21 93/7
good [8] 3/2 3/7 3/9 3/10 3/13 5/12 6/22 45/25
got [12] 6/11 6/21 9/18 12/10 18/5 19/3 54/22 71/6 74/16 84/14 94/24 95/14

**G**

gotten [2] 59/11 93/6
great [1] 93/25
gross [1] 50/11
grounds [12] 12/19 16/17 20/11 23/12 43/6 46/23 74/7 74/20 76/16 78/25 79/1 83/9
guarantee [1] 33/13
guarantees [9] 13/10 25/11 30/12 30/15 30/25 32/7 32/16 53/5 80/24
guess [20] 5/18 5/24 5/25 7/14 9/3 10/1 20/15 34/19 40/4 46/24 48/23 60/3 61/9 61/15 62/19 70/20 88/6 89/6 93/9 93/17
guy [1] 33/5

**H**

had [45] 4/20 4/20 4/22 7/11 8/5 31/1 32/12 33/24 35/19 42/5 47/8 49/6 50/19 52/23 55/16 55/17 55/19 56/2 56/3 57/17 57/21 58/4 59/9 59/11 60/1 60/8 61/12 61/15 61/21 61/25 62/9 64/9 66/9 67/23 68/12 68/16 69/17 70/10 71/9 72/7 72/9 76/14 84/3 84/9 88/7
hadn't [2] 17/12 54/1
half [2] 68/19 84/22
hand [1] 79/21
hang [1] 23/25
happen [1] 59/17
happened [12] 7/13 16/15 18/6 18/18 25/24 29/5 29/10 29/11 29/13 37/10 45/22 59/18
happening [1] 60/7
happens [2] 64/10 65/18
happy [1] 4/21
hard [3] 88/16 89/17 92/12
has [22] 7/4 11/4 13/12 13/24 35/16 39/17 46/7 57/10 57/11 61/1 63/23 65/14 70/1 71/4 73/1 78/2 89/2 89/6 89/9 93/11 94/7 95/21
hasn't [2] 12/18 52/14
have [140]
haven't [7] 23/22 42/17 49/22 91/6 91/7 93/5 93/7
having [17] 6/14 43/16 43/20 46/20 49/9 50/18 51/12 52/21 56/24 61/10 61/10 64/3 65/3 71/16 75/2 84/24 85/20
he [151]
he'll [4] 7/24 56/3 79/3 79/5
he's [30] 16/22 29/13 32/12 40/8 40/8 41/1 41/17 46/8 46/17 47/8 47/11 48/5 48/7 51/4 51/4 53/24 54/9 54/12 54/22 55/10 57/18 58/23 62/24 69/5 71/10 75/13 76/19 78/11 83/25 91/6
head [2] 8/22 64/4
headquarters [2] 17/21 18/6
hear [10] 10/19 13/6 30/20 38/16 51/2 63/12 64/16 68/11 68/16 81/19
heard [16] 8/4 53/25 54/5 54/8 54/17 57/3 58/4 58/21 58/23 63/14 63/16 63/20 65/13 66/9 71/19 86/20
hearing [2] 1/10 10/10
hearsay [78] 10/18 11/7 11/24 12/2 12/10 12/19 15/22 15/23 18/17 18/24 36/23 37/20 37/22 39/17 39/19 39/24 40/1 42/25 43/6 44/3 44/5 44/9 44/13 44/13 44/18 45/17 46/9 46/19 48/5 48/20 53/15 54/10 54/18 55/4 55/20 55/21 56/23 59/6 59/16 61/1 61/7 61/24 63/17 65/5 65/6 66/3 66/10 67/19 67/21 69/25 70/5 71/5 71/7 72/4 72/15 73/14 74/7 74/17 75/9 75/13 76/3 78/25 81/10 82/16 82/23 83/8 83/9 83/13 83/21 83/23 84/13 84/16 84/16 85/1 85/6

88/17 89/3 92/13
heart [1] 82/8
heels [2] 87/13 87/19
help [3] 79/22 79/24 93/21
here [33] 9/2 12/12 13/16 14/25 20/3 21/23 23/19 23/22 28/13 34/1 34/24 36/6 37/7 38/24 39/20 44/21 49/2 49/3 51/8 55/15 60/2 63/6 68/7 71/8 78/10 81/12 82/10 82/12 85/13 88/21 89/5 92/25 93/23
here's [2] 62/15 63/14
highlighting [1] 79/20
him [34] 17/21 32/19 38/20 49/20 51/2 54/25 55/5 55/7 56/3 57/2 57/22 58/15 59/12 61/21 62/1 62/4 62/15 64/19 65/1 65/15 68/12 68/15 68/17 71/24 72/7 73/25 77/5 77/6 79/10 83/25 84/10 90/9 92/4 96/1
himself [2] 56/10 56/20
his [57] 7/10 8/12 19/15 20/24 22/6 22/12 22/16 23/1 23/14 24/12 25/14 28/10 29/8 29/14 31/2 32/20 32/21 38/20 38/22 38/25 39/12 47/10 49/1 49/21 49/23 50/1 51/4 51/11 51/11 51/11 52/15 54/23 54/25 55/1 55/1 55/23 57/3 63/24 68/3 68/6 68/18 68/24 69/2 71/13 73/2 73/4 74/10 75/25 77/5 77/11 83/15 83/19 83/21 83/24 84/4 89/1
historical [1] 11/17
hold [2] 29/6 57/7
holds [1] 78/14
honestly [1] 12/3
Honor [74] 3/7 3/10 4/2 5/11 6/21 10/5 10/22 11/22 12/14 13/21 14/12 16/4 17/15 20/6 21/10 21/18 23/7 23/14 25/10 25/20 26/6 28/7 29/15 30/21 32/15 33/10 34/11 34/16 34/19 35/8 35/23 36/4 37/9 39/2 40/3 40/16 41/7 41/16 42/8 43/4 44/12 44/23 45/11 46/11 48/12 49/17 53/13 53/18 55/21 55/25 64/17 66/5 66/24 67/18 70/18 73/10 73/16 74/6 74/16 75/12 76/3 77/4 77/19 77/24 78/14 78/23 82/23 83/11 85/5 86/21 90/10 90/23 91/22 93/22
HONORABLE [1] 1/10
hope [1] 81/22
Hopefully [1] 68/2
hoping [1] 88/19
house [1] 80/12
how [21] 12/1 18/5 19/12 19/14 49/14 51/24 54/20 61/16 62/6 62/7 62/8 62/12 63/19 64/2 71/12 74/25 75/7 78/9 84/2 87/11 87/11
however [1] 72/1
huh [4] 70/4 79/4 84/11 95/16
Huishu [1] 31/23
hypothetical [1] 62/2

**I**

I'd [2] 3/5 34/20
I'll [23] 10/17 13/4 15/15 17/5 18/8 19/21 21/12 27/13 27/14 32/22 36/13 39/11 47/14 47/17 48/13 52/15 55/4 75/24 79/12 81/6 84/19 85/7 94/11
I'm [76] 3/10 3/11 3/14 3/15 10/16 12/4 14/8 14/8 15/14 16/1 16/7 17/9 21/4 22/23 24/11 25/20 25/22 25/23 25/23 25/23 26/5 33/23 34/11 34/19 34/21 34/24 35/9 35/13 35/15 35/24 36/8 38/10 39/7 39/9 40/23 40/25 43/6 46/1 46/22 51/7 55/20 60/3 60/14 61/23 62/12 63/2 63/11 66/2 67/17 68/11 69/18 70/20 71/23 72/19 73/7 73/8

74/18 74/19 80/3 80/3 83/16 83/16 83/17 85/8 86/5 87/11 87/15 87/18 88/19 89/16 89/21 91/9 92/9 94/9 95/7 95/8
I've [6] 9/18 9/21 10/15 66/3 67/7 88/15
IBM [1] 45/24
identical [1] 63/21
identification [1] 52/22
identified [4] 41/13 66/3 90/14 95/1
identify [8] 3/6 80/5 85/22 91/18 91/21 93/10 93/16 94/9
identifying [2] 91/2 91/3
if you [1] 56/16
IFC [109]
IFC's [3] 28/14 53/6 65/14
IFC-443 [1] 90/24
IFC-607 [1] 90/16
IFC-607-608 [1] 90/5
impact [1] 11/16
impeach [6] 54/25 55/5 55/7 59/12 68/6 73/20
impeached [1] 76/18
impeachment [8] 53/3 73/6 73/19 74/2 76/12 76/16 78/16 78/21
implored [1] 32/19
importance [2] 5/20 5/24
important [3] 28/13 29/2 29/15
impossible [1] 56/25
in 2004 [1] 11/3
in-house [1] 80/24
inaccurate [3] 69/5 69/7 70/13
inadmissible [1] 53/16
inch [1] 3/14
include [2] 40/4 73/12
included [3] 34/8 34/9 37/14
includes [1] 17/6
incomplete [3] 36/10 36/23 41/8
incompleteness [9] 8/25 9/11 10/4 10/9 10/11 34/24 80/12 88/13 95/10
inconsistent [1] 8/13
increase [1] 23/1
incurred [2] 11/23 12/16
Indeed [1] 25/16
index [1] 42/19
indicated [4] 4/18 4/20 7/12 8/4
indicates [4] 4/3 4/4 5/3 5/5
indicating [2] 6/21 55/14
individual [1] 65/13
indulgence [1] 3/14
inexorably [1] 89/16
inference [1] 59/20
inferences [1] 65/25
inform [1] 8/8
information [13] 21/22 21/24 59/4 59/5 59/10 60/16 63/8 74/24 75/1 75/10 84/15 86/15 91/8
informed [2] 56/6 56/1
informing [1] 14/14
initial [1] 31/17
inputting [1] 23/18
inquiring [2] 25/23 25/24
insofar [1] 43/15 70/23
inspected [1] 42/18
instance [2] 12/23 91/2
instead [2] 49/9 51/13
institution [1] 75/8
intend [6] 73/23 73/25 75/19 75/22 77/25 78/4
intended [3] 49/17 50/19 90/22
intends [1] 46/18
intent [7] 22/16 23/15 23/15 29/18 41/3 57/3 74/2
interested [2] 28/15 76/25
internal [14] 4/6 4/16 4/21 5/6 5/25 6/25

**I** Case 1:06-cv-00336-RWR-D...

**internal... [8]** 8/8 8/10 12/7 16/7 17/17 19/4 27/22 31/14
**internally [1]** 19/14
**INTERNATIONAL [3]** 1/6 3/4 3/11
**interpret [1]** 95/18
**interpretation [1]** 70/23
**interpreted [2]** 6/7 71/6
**interrupt [2]** 86/4 91/10
**interrupted [1]** 77/2
**interrupting [1]** 88/12
**introduce [5]** 18/9 27/14 27/18 50/17 63/18
**introducing [2]** 51/14 63/15
**investment [4]** 16/12 16/13 16/15 16/20
**involved [2]** 28/10 38/6
**involving [2]** 19/10 45/16
**irrelevant [4]** 15/1 15/2 44/18 49/14
**is [390]**
**isn't [9]** 18/15 18/19 24/23 46/7 59/6 60/19 63/2 66/15 89/15
**issue [18]** 12/15 13/11 15/13 17/16 19/18 19/19 28/17 28/18 28/19 32/16 34/24 43/16 47/18 49/24 53/15 73/6 85/9 87/2
**issued [2]** 32/17 72/9
**issues [8]** 18/5 29/24 33/7 46/18 81/17 82/6 87/7 87/24
**it [245]**
**it's [132]**
**items [2]** 49/2 80/18
**its [9]** 4/20 20/22 21/7 29/22 38/4 38/7 43/13 47/15 47/18
**itself [4]** 27/9 51/20 80/20 82/14

**J**

**J-A-N [1]** 41/12
**J-Y-R-K-I [1]** 41/14
**Jan [6]** 13/17 41/15 68/12 68/15 69/3 69/17
**Ji [1]** 31/23
**joined [1]** 3/11
**joining [1]** 27/13
**joint [1]** 80/8
**JONATHAN [2]** 1/19 3/12
**JOSEPH [2]** 1/15 36/24
**JR [1]** 1/19
**judge [3]** 1/11 87/14 92/14
**judges's [1]** 81/4
**jump [1]** 36/13
**June [1]** 12/8
**jurors' [1]** 87/8
**jury [1]** 87/10
**just [70]** 3/23 3/23 8/20 8/25 10/16 10/17 12/12 12/19 13/18 14/9 15/3 15/10 17/9 18/12 19/11 20/24 21/14 23/13 24/2 24/4 24/6 25/19 27/22 28/16 31/7 33/23 34/23 35/18 40/1 42/3 42/12 44/3 47/23 51/7 52/18 52/21 53/2 53/7 53/8 53/9 54/12 61/6 62/4 66/12 66/22 66/23 67/9 69/21 71/6 71/19 72/15 73/16 73/20 74/9 74/23 75/7 79/11 81/17 83/9 85/23 86/5 86/14 86/15 91/16 92/16 93/18 93/21 94/3 94/22 96/4
**Jyrki [4]** 40/7 40/17 41/14 42/3

**K**

**keep [1]** 81/12
**keeping [1]** 16/14
**kept [1]** 17/18
**key [4]** 61/25 63/6 68/6 72/21
**Khairallah [63]** 4/3 5/1 5/10 5/23 6/2 6/3

6/9 6/19 6/13 6/13 6/16 6/22 6/23 7/1 7/11 7/18 7/23 8/3 8/5 8/11 8/12 8/16 28/7 28/8 28/9 32/7 32/19 39/25 52/19 55/22 55/25 56/5 56/22 56/24 57/8 57/8 58/2 58/8 58/9 58/19 58/20 59/3 59/12 59/17 60/5 60/25 61/10 61/11 61/19 62/17 62/23 63/2 63/9 63/10 63/13 63/23 64/3 64/5 65/19 65/23 66/8 70/8 95/19 96/1
**Khairallah's [4]** 60/25 64/20 65/1 70/22
**Khalid [2]** 14/7 36/24
**Khambata [18]** 20/21 32/18 42/1 52/19 55/22 56/14 57/9 57/21 60/25 65/19 66/9 67/8 67/20 69/9 69/13 72/1 72/10 73/12
**Khambata's [1]** 73/12
**kind [11]** 11/6 38/25 40/10 51/1 51/15 60/7 74/25 75/8 82/15 86/14 91/20
**kinds [1]** 92/13
**knew [4]** 8/4 60/9 60/13 64/3
**know [31]** 8/1 11/11 12/16 12/24 31/11 31/15 32/8 37/2 37/10 37/24 38/15 38/18 45/24 48/22 56/8 57/15 70/21 73/17 81/13 83/5 84/14 85/13 87/19 89/13 89/23 89/25 90/6 90/21 91/11 92/4 94/4
**knowing [1]** 91/15
**knowledge [1]** 63/7
**known [1]** 84/3
**Koskelo [6]** 40/8 40/17 40/20 42/3 67/20 73/12
**KOWNACKI [2]** 1/20 3/12
**KYC [1]** 31/15

**L**

**lack [1]** 23/15
**language [9]** 21/2 21/5 24/22 33/8 40/23 68/10 70/19 85/23 86/6
**large [1]** 88/8
**last [6]** 13/1 30/24 36/6 41/1 48/14 79/13
**later [9]** 14/19 18/18 44/8 45/22 45/25 46/14 48/8 49/6 71/11
**latter [1]** 6/15
**law [4]** 45/19 45/23 46/1 48/8
**lawsuit [1]** 29/9
**lawyer [1]** 80/24
**lawyers [1]** 87/14
**layers [1]** 72/4
**leading [1]** 62/4
**leaked [1]** 4/12
**learned [2]** 6/23 46/17
**least [1]** 43/22
**leave [1]** 94/11
**leaving [1]** 22/17
**Lebanon [1]** 28/14
**left [1]** 16/25
**legacy [1]** 22/17
**legal [1]** 81/8
**length [1]** 82/5
**lengthy [1]** 80/23
**less [1]** 68/24
**let [16]** 10/19 18/12 34/6 42/14 52/15 56/11 58/15 61/3 61/23 64/16 64/21 81/6 81/19 86/3 92/10 94/3
**let's [3]** 10/13 19/3 53/5
**letter [24]** 28/25 31/2 32/6 32/18 37/11 40/18 42/24 43/4 43/14 53/13 54/17 64/11 64/13 64/15 64/17 64/18 64/21 65/8 65/12 65/12 70/1 82/20 83/3 84/23
**letters [3]** 39/25 53/19 55/12
**liability [1]** 68/20
**lied [1]** 11/4
**lies [1]** 67/25
**lieu [1]** 45/1

**like [17]** 10/23 12/1 14/6 15/18 23/6 26/2 27/8 29/3 30/1 31/14 34/20 43/21 44/16 52/8 63/21 79/11 92/18
**likely [3]** 40/21 41/2 47/12
**line [9]** 41/2 41/13 41/18 41/25 60/4 87/4 87/5 88/22 88/22
**line-by-line [1]** 88/22
**Lines [6]** 82/11 82/11 83/17 85/3 89/20 89/20
**liquidating [2]** 22/11 22/17
**Lisa [3]** 2/1 96/17 96/24
**list [36]** 9/10 9/20 9/23 10/3 10/8 10/14 10/16 10/23 33/23 33/24 34/25 35/17 35/18 36/18 37/3 37/5 37/8 37/8 48/15 52/16 55/9 59/25 69/10 81/11 89/5 90/11 90/25 93/21 93/23 94/3 94/7 94/10 94/14 94/23 95/1 95/8
**listed [9]** 35/16 37/4 37/5 37/7 37/8 78/1 80/18 81/17 83/3
**lists [1]** 37/3
**litigation [2]** 74/19 74/22
**little [4]** 8/21 19/11 37/9 92/5
**live [1]** 15/5
**LLP [1]** 1/15
**long [1]** 87/11
**look [28]** 5/12 9/24 10/1 12/23 13/1 13/22 15/24 20/15 20/17 21/3 33/10 34/6 40/20 40/24 42/14 49/2 59/24 77/14 79/13 81/10 84/21 84/21 85/10 85/24 86/5 86/6 89/21 95/25
**looked [2]** 15/18 47/9
**looking [15]** 9/15 10/16 22/1 23/1 33/12 33/23 51/7 65/11 80/11 83/6 83/16 83/16 86/7 91/16 94/9
**looks [12]** 10/3 12/11 14/6 16/8 23/6 26/2 28/3 30/1 31/14 44/16 52/8 95/20
**lose [1]** 19/3
**losses [4]** 11/23 12/15 77/11 77/12
**lost [3]** 19/3 49/6 50/3
**lot [7]** 45/25 69/1 85/12 85/12 85/16 86/24
**lunch [1]** 81/21
**lying [1]** 63/24

**M**

**made [18]** 5/16 7/25 8/5 16/13 22/2 23/2 27/21 39/14 43/9 43/20 46/20 51/9 51/12 60/23 62/2 63/23 67/19 86/9
**MAHONEY [30]** 1/14 3/8 12/13 16/3 17/14 24/22 27/17 28/6 33/8 34/15 40/2 40/15 43/2 44/11 44/22 45/10 46/10 49/15 51/13 51/22 52/15 53/12 77/13 83/10 85/4 85/14 91/17 93/18 94/13 95/22
**mail [33]** 13/9 13/18 14/7 14/12 19/10 21/25 23/9 27/10 27/10 30/7 34/5 34/7 36/11 40/7 41/9 41/11 41/14 41/18 57/8 59/14 59/15 61/20 66/6 66/8 66/11 67/6 67/19 69/8 71/12 71/25 72/3 72/10 73/11
**mails [9]** 19/10 22/21 23/8 29/23 33/9 33/19 59/23 59/25 67/4
**majority [1]** 28/16
**make [14]** 5/18 9/4 11/8 37/6 52/12 66/2 72/14 79/21 81/6 82/5 85/21 87/9 87/23 94/22
**makes [1]** 72/4
**making [5]** 49/3 49/7 49/13 56/5 83/1
**management [3]** 22/6 22/9 22/18
**manager [1]** 22/8
**many [4]** 27/9 67/24 72/15 87/11
**mark [10]** 52/20 69/8 69/11 71/25 72/9 73/20 85/15 89/1 90/2 90/8
**marked [7]** 66/13 76/15 77/5 78/20

**marked... [3]** 91/20 93/1 94/13
**match [2]** 91/15 92/19
**materialize [1]** 68/21
**matter [11]** 3/3 27/12 37/21 45/19 48/8 48/9 60/10 61/3 61/12 65/4 96/19
**matters [2]** 60/11 60/15
**may [14]** 6/1 6/1 8/15 23/17 23/17 26/2 45/14 59/24 72/2 74/1 74/10 75/2 75/10 81/2
**May 2008 [1]** 45/14
**maybe [2]** 68/2 83/16
**me [63]** 9/8 10/16 10/17 10/19 10/20 12/23 13/25 16/6 16/8 18/12 21/2 21/2 21/24 22/20 22/21 22/22 25/5 25/21 25/22 30/20 33/9 34/6 34/10 36/8 40/24 42/14 52/9 56/11 56/11 56/16 58/2 58/24 61/14 61/23 62/15 62/16 63/13 64/16 64/21 68/9 71/7 72/22 77/2 79/22 80/5 81/1 81/3 81/19 82/1 82/21 83/2 85/23 85/23 86/3 86/4 86/5 86/6 88/3 88/11 88/18 89/15 92/12 93/15 96/10
**mean [19]** 15/18 15/19 16/9 30/1 42/3 46/19 62/7 63/3 63/22 69/25 70/1 70/9 72/1 72/25 83/25 86/13 87/7 90/1 92/16
**means [4]** 8/9 84/4 86/11 95/23
**meant [5]** 17/18 18/1 21/1 83/3 95/24
**measure [1]** 88/8
**MECG [16]** 4/20 5/2 5/17 6/19 6/24 8/17 14/13 14/16 16/12 22/4 22/5 22/11 37/12 37/22 41/4 65/15
**mechanical [1]** 2/24
**mechanism [2]** 57/5 58/22
**meet [3]** 41/9 45/1 86/24
**meeting [4]** 4/18 14/10 14/14 14/16 18/25 61/11
**member [1]** 53/24
**members [2]** 28/9 53/20
**memo [17]** 4/6 4/21 5/6 6/14 8/9 8/10 17/11 17/17 17/22 17/24 18/6 18/15 18/16 18/20 19/6 20/2 26/9
**memorandum [5]** 4/16 6/25 24/20 25/2 42/1
**mention [4]** 16/13 23/2 48/14 65/5
**mentioned [5]** 5/4 7/25 91/6
**merit [1]** 87/3
**merits [1]** 14/2
**messages [1]** 68/15
**met [1]** 37/15
**method [1]** 64/2
**mic [1]** 82/3
**mid [1]** 29/17
**mid-December [1]** 29/17
**middle [2]** 43/13 82/10
**might [6]** 23/13 48/24 72/12 81/9 84/25 92/14
**minimal [1]** 46/24
**minimum [1]** 4/4
**minu [1]** 80/22
**minu-script [1]** 80/22
**minute [3]** 3/17 8/24 34/16
**minutes [1]** 96/13
**misleading [5]** 23/21 41/8 83/7 86/14 89/12
**missing [3]** 34/5 35/19 36/17
**misunderstood [1]** 51/22
**modus [1]** 23/18
**moment [6]** 3/22 31/7 35/7 55/3 56/11 85/24
**money [1]** 49/6
**month [1]** 51/10
**months [1]** 18/18
**more [8]** 8/21 13/25 17/16 26/8 45/25

59/2 84/24 88/1
86/2 96/11
**Moreover [1]** 6/25
**morning [8]** 3/2 3/7 3/9 3/10 3/13 13/22 44/2 81/23
**Morris [1]** 1/15
**most [5]** 40/21 41/2 79/14 79/16 81/1
**mostly [1]** 30/1
**Mouchbahani's [1]** 48/4
**Moussa [2]** 14/7 14/8
**Moussallem [7]** 22/3 22/3 22/5 22/8 23/2 23/16 37/12
**move [3]** 31/5 47/5 89/17
**Mr [108]**
**Mr. [50]** 4/3 5/1 21/5 22/3 22/4 23/16 38/17 40/17 40/20 42/3 42/6 48/4 49/19 52/19 53/24 55/8 55/25 56/5 56/22 56/24 58/2 58/9 58/19 58/20 61/19 62/23 63/2 63/23 64/5 65/19 65/23 66/8 67/20 67/20 67/23 69/6 70/8 70/22 73/12 74/7 74/8 75/17 78/24 79/8 80/10 84/8 88/25 95/19 95/19 96/1
**Mr. Alturki [1]** 22/4
**Mr. Blanton [1]** 88/25
**Mr. Daoud [2]** 4/3 58/9
**Mr. Jyrki [2]** 40/17 42/3
**Mr. Khairallah [19]** 5/1 55/25 56/5 56/22 56/24 58/2 58/19 58/20 61/19 62/23 63/2 63/23 64/5 65/19 65/23 66/8 70/8 95/19 96/1
**Mr. Khairallah's [1]** 70/22
**Mr. Koskelo [3]** 40/20 67/20 73/12
**Mr. Mouchbahani's [1]** 48/4
**Mr. Moussallem [2]** 22/3 23/16
**Mr. Osseiran [2]** 21/5 67/20
**Mr. Sarkissian [2]** 53/24 55/8
**Mr. Sequeira [1]** 78/24
**Mr. Sequeira's [2]** 49/19 79/8
**Mr. Van [11]** 38/17 42/6 52/19 67/23 69/6 74/7 74/8 75/17 80/10 84/8 95/19
**Ms [11]** 55/22 56/14 57/9 57/21 66/9 67/8 67/20 69/9 69/13 73/12 73/12
**much [9]** 8/6 18/2 32/21 44/8 49/10 67/8 72/14 87/16 92/5
**musings [1]** 40/19
**must [1]** 77/1
**my [20]** 3/12 8/22 9/3 10/5 16/11 51/13 52/6 62/22 63/19 64/4 74/2 81/19 84/5 86/3 86/15 86/17 88/2 94/2 96/5 96/7
**mystery [1]** 93/23

# N

**Nabil [4]** 28/4 28/8 28/8 39/25
**name [1]** 38/25
**named [4]** 14/7 28/4 33/5 36/24
**namely [2]** 59/3 69/17
**narrowed [1]** 81/13
**National [1]** 28/14
**necessarily [3]** 46/19 77/25 82/25
**necessary [4]** 25/8 44/20 75/20 75/25
**need [15]** 15/8 37/5 45/1 45/20 51/1 51/17 52/11 55/6 55/7 64/1 74/11 77/15 79/13 81/21 88/23
**needed [2]** 30/2 32/25
**needs [1]** 86/13
**neglected [1]** 36/6
**negotiations [5]** 4/8 5/4 7/25 24/9 24/13
**neither [3]** 31/25 39/25 69/9
**never [9]** 4/16 21/16 24/25 26/18 29/25 30/13 54/2 71/20 76/21
**new [5]** 9/13 33/24 35/17 42/13 43/5
**next [9]** 27/23 42/15 47/5 64/10 67/2 68/21 85/9 89/17 95/3
**NICOLLE [2]** 1/20 3/12
**night [1]** 36/6

np [47] 1/3 4/10 4/18 12/17 12/20
12/22 13/9 14/3 14/8 14/22 21/10 21/10
22/23 22/23 25/22 25/23 26/21 27/8
34/4 34/25 35/16 35/25 36/1 39/2 42/3
47/24 55/10 58/21 64/23 65/3 65/4
67/11 69/10 77/12 77/17 77/19 77/22
84/10 84/12 88/6 88/22 89/3 90/14
90/24 91/15 92/1 93/22
**nobody [1]** 37/25
**non [1]** 59/16
**non-hearsay [1]** 59/16
**none [4]** 4/13 13/6 36/25 86/15
**not [166]**
**note [4]** 24/21 29/15 32/17 34/3
**noted [2]** 36/10 73/16
**nothing [4]** 24/10 31/17 38/24 39/10
**Noura [2]** 14/7 14/8
**November [5]** 8/6 8/11 8/19 29/18 40/14
**November 30th [1]** 29/18
**now [19]** 9/21 17/6 24/17 25/21 26/6 34/1 37/17 49/8 61/21 68/18 68/24 77/2 82/6 85/2 85/10 87/16 91/12 91/19 92/17
**number [30]** 3/5 10/18 12/6 13/8 13/9 14/5 14/6 15/16 15/17 17/4 17/5 17/8 19/23 20/16 20/18 27/11 30/5 30/11 37/4 42/11 52/22 53/3 81/14 91/4 91/19 93/24 94/4 94/8 95/4 95/6
**numbered [1]** 94/13
**numbering [1]** 91/24
**numbers [17]** 85/18 90/2 90/14 93/6 93/11 93/13 93/17 93/19 93/23 94/5 94/7 94/11 94/14 94/23 94/24 94/25 95/3
**NW [3]** 1/16 1/21 2/2

# O

**object [2]** 74/20 83/8
**objected [12]** 12/18 20/10 27/7 34/17 34/22 37/14 49/19 53/21 74/7 76/14 78/8 78/24
**objecting [4]** 10/25 26/9 51/3 51/11
**objection [99]**
**objectionable [1]** 73/13
**objections [55]** 3/19 3/21 8/23 8/25 9/11 9/12 10/4 10/10 10/12 17/2 19/22 33/21 39/19 42/12 44/14 47/20 48/16 52/12 52/17 53/6 53/9 70/15 70/16 78/15 80/6 80/12 80/15 81/3 81/5 81/11 81/12 82/8 83/3 83/15 83/19 84/1 84/2 84/4 84/24 85/13 86/24 87/11 87/12 88/4 88/9 88/16 88/20 88/23 89/8 90/24 90/25 91/1 92/10 92/12 95/8
**objective [1]** 20/22
**objectives [1]** 21/8
**obtained [3]** 30/25 31/1 43/18
**obtainment [1]** 30/25
**obviously [6]** 11/7 53/8 57/17 79/5 87/20 95/6
**occur [4]** 7/23 8/17 25/2 29/11
**occurred [9]** 5/23 8/16 8/18 22/11 22/16 29/2 40/14 54/5 54/6
**occurs [1]** 81/1
**October [2]** 7/25 8/5
**odds [2]** 4/23 14/18
**of 2004 [2]** 11/14 11/15
**of 2006 [2]** 4/18 44/8
**off [2]** 20/24 96/11
**offer [11]** 8/5 21/15 28/25 43/9 43/9 43/20 52/7 56/17 68/18 78/4 92/18
**offered [20]** 34/14 51/19 51/23 52/1 52/4 52/5 53/22 53/23 54/2 54/12 54/16 57/9 59/8 59/10 60/19 60/20 61/2 67/22 74/12 79/10

**offering [14]** 24/7 43/21 50/4 52/11 52/12 57/23 59/2 68/19 68/23 72/24 74/9 77/24 78/12 96/6
**offerings [1]** 24/10
**offers [1]** 24/5
**official [2]** 2/1 93/8
**often [1]** 81/4
**Oh [3]** 48/22 66/21 91/25
**okay [53]** 4/14 10/7 10/13 11/2 12/7 18/21 19/2 21/14 22/24 23/25 24/1 24/3 24/17 24/18 25/19 26/5 26/8 27/16 34/12 35/4 35/13 35/14 36/2 36/16 42/6 42/14 42/21 49/8 51/19 52/4 57/4 56/13 64/8 67/15 67/16 73/15 78/4 80/13 80/16 81/15 81/24 84/20 86/7 89/3 89/19 91/13 92/3 92/16 93/15 94/2 94/9 95/7 95/12
**old [2]** 10/15 33/23
**once [1]** 80/19
**one [53]** 5/9 6/12 6/16 7/22 9/13 9/24 10/1 10/21 15/12 15/17 20/24 23/7 23/25 24/23 25/4 25/8 27/6 28/9 33/13 34/6 34/7 34/16 35/7 36/19 39/25 40/17 42/15 52/16 53/11 53/18 54/22 55/15 55/17 56/18 57/14 57/15 59/25 62/23 63/4 66/13 66/23 68/7 73/9 73/15 75/2 77/1 79/12 80/18 89/4 89/8 95/12 96/9 96/10
**ones [8]** 10/16 24/1 27/22 49/11 53/10 80/3 81/16 88/19
**only [22]** 5/15 14/25 15/13 15/14 16/18 44/7 61/4 61/5 64/20 64/25 68/18 70/17 72/24 75/25 76/16 76/19 78/1 78/10 78/16 79/11 80/7 84/6
**open [1]** 16/14
**operates [1]** 74/25
**operative [4]** 4/15 5/14 41/9 64/18
**opinion [2]** 47/10 71/13
**opponent [5]** 13/5 17/3 54/9 72/8 73/25
**options [2]** 14/15 16/14
**oral [1]** 75/6
**order [3]** 3/17 8/24 10/17
**organization [2]** 6/3 74/25
**organizations [3]** 5/20 6/8 13/25
**original [5]** 36/5 37/3 37/8 37/11 41/7
**Originally [1]** 49/4
**OSSEIRAN [100]**
**Osseiran's [8]** 9/23 28/12 33/11 41/3 55/11 66/14 76/9 80/3
**Osseiran/IFC [1]** 57/12
**other [38]** 9/11 16/1 17/10 20/4 28/12 36/24 42/11 42/12 44/17 49/9 49/10 49/12 52/23 55/12 59/11 59/22 61/2 61/6 62/25 65/4 65/16 67/13 69/20 70/15 70/15 70/19 72/25 84/25 85/18 88/4 88/7 88/16 91/21 92/12 92/13 93/4 94/12 95/10
**others [2]** 19/14 66/10
**otherwise [4]** 39/16 81/11 86/14 91/20
**ought [3]** 10/10 35/2 68/10
**our [36]** 9/10 9/20 12/9 13/25 17/6 19/24 20/23 21/19 21/19 22/9 27/3 31/6 34/14 34/18 36/5 36/9 36/22 37/10 41/2 41/10 42/21 43/16 47/12 48/18 53/8 65/10 75/6 78/11 78/15 89/11 90/10 90/24 92/17 93/2 93/23 94/6
**out [45]** 5/19 10/15 15/25 16/19 22/9 23/13 44/18 48/18 49/6 50/20 53/14 53/19 54/23 55/6 57/24 58/1 58/16 58/22 58/25 59/4 59/10 60/16 61/3 61/9 61/17 62/2 62/7 62/8 62/12 66/1 66/12 67/25 68/5 69/23 72/22 75/10

**outside [6]** 5/16 6/3 20/5 24/24 24/25 56/19
**outstanding [2]** 29/25 39/23
**over [6]** 22/12 22/16 81/11 83/18 84/24 87/14
**overcome [3]** 12/1 54/10 66/3
**overrule [8]** 13/4 15/15 18/8 19/21 24/11 27/13 32/22 89/17
**overruled [24]** 14/4 17/2 21/12 23/12 24/15 25/17 26/13 26/15 26/22 27/2 27/24 28/1 29/1 29/22 30/4 30/10 31/4 32/5 33/3 33/22 39/19 42/10 74/4 76/13
**overseas [1]** 87/21
**own [5]** 8/22 29/14 52/15 92/9 93/10
**owned [1]** 43/19

**P**

**page [28]** 16/2 20/16 22/22 31/8 41/24 48/18 49/15 51/14 65/17 80/11 80/15 80/17 80/21 80/21 82/10 82/11 82/11 83/17 84/20 84/22 85/10 85/24 86/4 89/4 99/19 95/14 95/20
**pages [1]** 13/1
**paid [3]** 49/10 49/24 51/9
**Panopoulos [1]** 86/18
**papers [1]** 5/19
**paragraph [13]** 13/23 20/20 21/4 40/25 43/13 43/23 65/11 65/17 68/14 70/22 71/1 71/2 72/5
**paragraphs [1]** 72/24
**pardon [1]** 52/3
**part [15]** 13/11 17/19 18/4 22/9 28/15 34/22 37/23 39/4 41/2 43/13 43/22 47/22 67/4 93/1 93/9
**particular [2]** 9/1 23/23 77/7
**parties [8]** 3/5 4/5 12/17 17/18 29/1 44/19 52/20 64/11
**party [13]** 5/4 5/5 5/6 6/13 13/5 16/16 17/3 44/17 46/21 53/14 54/9 72/7 73/24
**passage [1]** 83/12
**people [14]** 5/2 23/18 23/21 31/25 36/25 40/1 47/25 54/14 55/16 64/14 69/1 69/24 84/25 96/3
**people's [2]** 29/4 29/7
**per [5]** 50/12 51/8 51/9 68/20 68/20
**perhaps [4]** 5/21 29/21 73/19 81/3
**period [2]** 16/20 51/10
**permit [4]** 18/8 21/12 47/17 67/12
**person [2]** 24/23 36/24
**personnel [1]** 23/9
**pertain [5]** 6/7 16/25 30/8 61/4 91/1
**pertaining [2]** 30/15 31/18
**pertinence [1]** 61/2
**physically [3]** 86/17 90/22 93/5
**picked [1]** 48/8
**place [1]** 12/9
**plainly [3]** 12/19 20/6 44/23
**plaintiff [8]** 1/4 1/14 3/8 9/22 37/4 46/21 56/5 59/18
**plaintiff's [9]** 3/23 8/22 10/3 10/15 11/1 47/16 93/20 93/20 95/9
**plaintiffs [3]** 27/14 47/17 80/11
**plan [3]** 14/24 51/5 51/14
**planned [1]** 67/2
**planning [4]** 24/6 68/1 68/23 74/9
**please [3]** 3/6 77/3 82/3
**plus [2]** 52/8 68/20
**podium [1]** 3/24
**point [25]** 5/12 13/22 16/19 23/13 32/13 39/3 43/19 44/18 44/24 51/15 59/14 62/3 62/4 62/14 66/1 67/24 68/25 69/21 78/9 79/10 81/21 84/6 87/4 89/23 91/5

**points [1]** 67/21
**poorly [1]** 22/6
**position [3]** 8/13 65/1 93/2
**possibility [2]** 4/10 40/21
**post [1]** 32/25
**post-breach [1]** 32/25
**potential [4]** 56/18 61/13 78/1 79/11
**potentially [1]** 58/16
**practice [1]** 48/9
**precisely [2]** 12/24 59/6
**precluded [1]** 43/20
**precursor [2]** 14/16 60/1
**predates [1]** 28/13
**predisposition [1]** 22/10
**premised [1]** 61/22
**preparation [1]** 17/16
**prepare [2]** 51/15 51/24
**prepared [2]** 49/22 52/15
**presented [1]** 95/21
**President [1]** 42/1
**pressuring [1]** 68/16
**presumably [8]** 24/9 47/8 50/1 51/16 71/19 71/24 72/6 84/15
**presumption [1]** 89/7
**pretrial [4]** 1/10 80/8 87/8 87/23
**pretty [2]** 39/7 39/9
**prevents [1]** 45/23
**previous [3]** 27/22 74/23 90/19
**previously [3]** 12/18 20/7 68/19
**price [7]** 23/1 24/10 43/15 49/24 49/25 50/12 51/9 51/9
**primary [1]** 74/2
**printed [1]** 66/12
**prior [3]** 11/5 73/11 76/8
**probably [2]** 7/12 71/10
**probative [2]** 46/24 71/13
**problem [18]** 49/4 54/11 59/7 61/7 63/11 63/17 64/4 66/3 72/11 79/2 83/21 84/13 84/16 84/16 85/12 89/2 91/2 96/9
**problematic [1]** 72/5
**problems [7]** 72/2 72/2 72/15 81/4 81/10 81/10 83/13
**proceeded [1]** 21/20
**proceedings [2]** 2/24 96/19
**process [17]** 8/14 16/19 19/19 21/1 21/21 22/19 27/23 28/11 30/24 30/24 31/16 31/19 32/16 37/23 38/7 38/9 39/4 **processed [2]** 8/8 8/10
**produce [1]** 50/24
**produced [11]** 2/24 35/18 36/5 41/19 41/22 74/18 91/23 92/2 93/11 93/24 95/5
**profit [2]** 49/11 50/3
**profited [1]** 49/8
**progressing [1]** 8/6
**prohibit [1]** 43/6
**project [1]** 17/23
**promissory [1]** 16/24
**prong [1]** 61/6
**pronounced [1]** 84/17
**proof [2]** 18/3 29/21
**proper [4]** 55/7 55/19 85/21 89/9
**proposal [6]** 21/5 37/13 37/14 37/16 37/22 81/19
**proposals [6]** 4/22 14/18 28/12 37/12 39/5 39/5
**propose [2]** 76/10 76/11
**proposed [5]** 7/3 7/18 16/5 30/16 56/19
**proposing [4]** 37/16 45/1 48/7 71/4
**prospective [1]** 59/4
**prove [1]** 59/2
**provided [1]** 91/7
**public [4]** 59/10 62/10 62/15 75/1
**pull [2]** 23/8 92/9

**P**

**purchase [6]** 4/23 43/15 54/5 54/6 58/17 65/15
**purchased [3]** 56/3 64/19 65/14
**purchases [2]** 51/9 51/12
**purchasing [1]** 29/18
**pure [1]** 23/16
**purport [1]** 42/18
**purported [1]** 13/2
**purporting [1]** 41/14
**purports [1]** 11/8
**purpose [11]** 15/9 16/18 47/21 48/5 52/21 57/9 63/15 68/4 73/17 76/1 87/23
**purposes [5]** 47/15 74/2 76/12 78/16 78/21
**put [12]** 27/8 35/19 47/12 59/13 59/23 61/8 67/3 74/3 75/22 77/25 90/1 90/1
**puts [1]** 27/11
**putting [3]** 19/18 29/6 44/21
**PX [1]** 91/16
**PX-whatever [1]** 91/16

**Q**

**qualified [2]** 51/5 75/11
**quashing [1]** 31/2
**question [24]** 9/3 11/25 46/19 54/25 61/10 62/19 62/21 63/19 69/2 69/4 71/8 82/21 83/2 83/6 83/14 84/22 86/3 89/10 90/4 91/3 92/20 93/9 94/2 94/15
**questioned [3]** 12/25 73/1 77/5
**questioner [2]** 95/21 95/22
**questions [4]** 8/21 73/25 74/10 86/8
**quick [1]** 10/2
**quicker [1]** 79/25
**quite [1]** 10/3

**R**

**raised [7]** 28/18 62/20 88/17 88/18 88/21 88/24 89/4
**raising [1]** 43/6
**ran [1]** 31/15
**ranges [1]** 34/21
**rather [3]** 50/7 94/19 96/6
**rating [1]** 16/8
**reached [1]** 88/7
**reactions [1]** 68/2
**read [10]** 22/22 39/4 47/9 56/11 82/24 82/25 84/18 86/25 91/14 96/2
**reading [2]** 5/25 68/13
**realize [1]** 52/10
**realizing [1]** 71/10
**really [13]** 3/18 16/18 28/15 29/3 40/9 51/17 53/2 56/7 65/4 72/4 77/15 93/22 96/9
**realm [1]** 59/11
**reason [9]** 6/22 13/23 18/22 27/14 41/17 59/22 61/6 65/4 85/12
**reasonable [4]** 50/2 81/25 82/1 87/16
**reasons [2]** 20/7 26/9
**rebut [2]** 56/4 63/22
**rebuttal [7]** 46/25 47/17 48/10 48/11 78/1 78/7 79/11
**rebutting [1]** 59/20
**recall [1]** 22/2
**received [2]** 19/13 54/22
**receiving [2]** 33/12 68/15
**recent [1]** 59/20
**recently [1]** 65/13
**recess [2]** 96/12 96/14
**recollection [3]** 74/10 75/20 75/25
**record [14]** 3/6 6/7 6/9 39/1 50/13 50/14 76/22 77/14 85/17 85/22 87/1 89/4 96/11 96/18

**recorded [1]** 2/24
**records [2]** 56/8 56/10
**redact [4]** 72/12 72/15 72/24 73/8
**redacted [2]** 72/13 72/13
**redactions [1]** 67/13
**refer [1]** 53/3
**reference [6]** 12/17 22/2 60/23 83/1 83/11 86/12
**referenced [1]** 24/22
**references [3]** 43/15 55/23 91/18
**referred [2]** 90/4 93/13
**referring [1]** 91/12
**refers [2]** 32/18 83/8
**reflect [3]** 22/6 72/16 72/18
**reflected [1]** 63/17
**reflecting [2]** 38/25 71/12
**reflects [5]** 6/7 51/8 58/24 69/3 91/1
**refresh [2]** 74/10 75/19
**refreshing [1]** 75/25
**refused [2]** 85/15 89/1
**related [1]** 74/1
**relevance [35]** 10/18 11/20 12/9 12/19 13/20 14/11 14/25 15/13 15/14 19/6 22/12 22/19 23/12 28/18 29/22 32/4 33/2 33/21 36/22 39/18 42/9 43/1 43/4 43/8 44/3 46/23 73/17 75/5 76/7 76/16 81/5 81/12 82/4 82/6 95/10
**relevant [53]** 11/5 11/25 12/8 12/14 12/19 13/21 14/1 14/20 15/21 16/17 17/11 17/16 18/23 19/20 20/6 21/17 21/22 23/15 23/20 25/13 28/18 29/12 30/2 30/13 31/3 31/11 33/1 33/6 33/9 37/17 39/15 40/10 42/5 44/10 44/13 44/23 45/17 45/18 45/19 46/5 46/9 46/12 46/16 48/6 48/7 48/19 48/23 51/10 61/5 76/10 78/9 80/25 85/1
**remain [1]** 80/6
**remaining [1]** 73/13
**repeat [1]** 94/15
**repeated [1]** 12/12
**repeating [1]** 21/18
**reply [3]** 67/6 67/14 73/13
**report [16]** 11/2 12/8 12/22 16/8 16/14 48/4 48/19 49/1 49/14 49/16 49/22 49/23 51/14 65/20 78/23 79/8
**reporter [4]** 2/1 2/1 90/8 96/13
**reporters's [1]** 91/3
**reports [3]** 15/18 39/14 39/14
**represent [1]** 73/8
**representatives [1]** 4/19
**request [1]** 23/8
**requirements [1]** 3/16
**reserve [4]** 39/11 48/13 73/9 79/12
**resign [1]** 8/12
**resigned [2]** 8/19 61/19
**resolve [2]** 79/23 88/4
**resolved [3]** 10/4 10/12 80/12
**resolving [2]** 3/18 3/21
**resources [1]** 47/5
**respect [11]** 10/12 15/23 43/22 51/9 67/9 75/16 80/7 81/5 88/12 89/12 90/18
**respectful [1]** 87/22
**respective [1]** 6/8
**response [6]** 10/19 11/21 14/2 17/22 67/14 76/4
**responsible [1]** 17/19
**rest [2]** 41/5 95/8
**result [3]** 6/14 15/11 24/5
**results [1]** 65/20
**resurface [1]** 47/17
**reveal [1]** 64/6
**revealed [3]** 56/5 62/9 62/23
**review [1]** 10/2
**revised [2]** 37/5 37/8

**RICHARD [1]** 1/10
**right [116]**
**risk [3]** 16/8 21/18 39/14
**ROBERTS [1]** 1/10
**Room [1]** 2/2
**Rosenberger [1]** 33/6
**RPR [3]** 2/1 96/17 96/24
**rule [10]** 55/12 67/3 77/15 88/18 89/6 91/1 92/10 92/14 95/10 95/11
**ruling [8]** 35/23 35/24 35/25 39/11 48/3 48/13 73/15 76/6
**rumors [7]** 55/23 56/2 58/5 60/23 61/15 65/2 66/9
**running [1]** 55/16

**S**

**said [24]** 4/24 8/7 9/13 15/23 23/16 26/11 29/5 39/10 51/4 51/5 52/14 54/13 54/24 60/9 60/16 64/6 68/5 73/2 73/3 83/13 83/9 83/23 84/9 95/18
**sail [1]** 88/1
**SALAH [2]** 1/3 3/3
**sale [36]** 4/6 4/7 4/7 4/8 5/9 5/14 5/17 7/3 7/3 7/3 7/18 8/13 14/18 14/19 17/19 19/20 21/1 21/20 21/21 22/11 22/14 22/15 22/19 27/1 28/8 28/14 28/24 29/16 29/19 30/16 33/14 40/19 44/17 45/20 47/23 47/24 59/4
**sales [31]** 4/6 4/16 4/21 5/6 6/14 6/25 8/8 8/10 17/11 17/17 17/22 17/24 18/5 18/6 18/15 18/16 18/20 19/6 19/12 20/2 24/20 25/11 26/9 29/2 29/11 29/18 30/23 31/19 32/16 50/11 61/13
**same [46]** 9/18 13/3 23/15 25/6 26/9 26/10 26/14 26/24 27/21 27/25 30/6 33/2 34/3 34/4 34/14 37/6 39/13 39/18 45/6 45/8 47/19 47/20 47/21 47/23 47/23 47/24 47/25 47/25 48/3 55/14 55/14 66/5 66/8 66/11 66/15 66/16 66/24 73/11 73/15 75/16 76/3 76/4 76/6 76/8 78/14 84/20
**samples [1]** 17/22
**Sarkissian [2]** 53/24 55/8
**satisfied [1]** 66/2
**satisfy [1]** 45/1
**save [2]** 19/11 75/2
**saw [4]** 4/16 4/17 5/6 6/25
**say [44]** 3/14 6/5 7/17 7/20 7/21 7/22 22/14 24/11 26/10 40/12 41/21 42/5 45/24 45/24 47/22 49/9 54/17 57/1 57/14 57/15 61/14 62/4 63/13 63/24 64/22 67/1 68/8 68/12 68/16 68/24 69/4 71/19 71/24 73/3 73/3 75/7 77/1 81/5 83/15 83/22 84/4 89/24 91/17 92/4
**saying [21]** 3/17 6/2 34/24 35/2 36/4 37/17 47/23 49/8 53/24 54/4 57/7 58/2 58/23 62/3 68/3 68/17 71/10 72/9 77/1 90/5 96/4
**says [16]** 11/7 18/14 19/7 22/21 23/23 27/9 38/8 43/13 54/17 64/13 64/19 65/11 68/14 69/1 74/1 82/16
**screening [1]** 31/17
**script [1]** 80/22
**second [9]** 15/22 23/25 41/1 57/7 70/21 71/2 72/24 80/17 84/21
**securing [1]** 25/11
**see [28]** 14/11 19/3 29/9 32/7 34/23 35/1 41/12 41/24 42/12 42/14 43/12 48/15 51/1 52/11 53/11 61/5 65/25 78/9 83/11 83/12 83/21 84/22 85/10 86/21 90/7 94/10 95/9 96/9
**seek [1]** 52/22
**seeking [3]** 16/18 20/21 21/6
**seem [1]** 18/2

**seemed [1]** 9/1
**seems [1]** 93/15
**seen [4]** 4/20 48/18 93/3 93/5
**sell [9]** 17/25 32/21 50/1 68/2 68/16 68/18 70/24 71/3 71/5
**selling [3]** 28/10 40/21 41/2
**send [1]** 17/21
**sense [2]** 72/14 82/5
**sent [8]** 3/17 28/4 31/2 32/6 57/8 61/20 64/12 64/18
**sentence [1]** 71/2
**separate [2]** 22/18 37/16
**September [1]** 14/14
**September 23rd [1]** 14/14
**Sequeira [2]** 78/24 79/6
**Sequeira's [2]** 49/19 79/8
**series [3]** 19/10 27/1 33/16
**serious [1]** 69/2
**set [3]** 10/22 28/11 79/20
**settle [1]** 23/1
**seven [1]** 80/18
**several [1]** 70/2
**share [8]** 43/14 44/17 44/24 50/12 51/8 51/9 68/20 68/20
**shared [2]** 4/11 32/20
**shareholder [1]** 6/16 28/16 39/7
**shareholders [1]** 39/6
**shareholding [2]** 21/6 65/14
**shares [31]** 4/23 20/24 28/8 28/10 28/17 29/4 29/7 37/12 41/4 43/10 43/18 45/20 45/24 46/6 49/3 49/3 49/5 49/5 49/7 49/9 49/12 49/25 54/1 56/3 58/6 59/9 64/14 64/19 65/16 68/2 68/18
**she [1]** 25/5
**sheet [1]** 42/13
**Sheikh [1]** 36/24
**shifts [1]** 24/9
**short [1]** 82/6
**short-circuit [1]** 82/6
**should [26]** 8/23 9/15 9/24 10/1 10/7 15/23 19/25 27/5 27/6 27/17 34/3 34/8 39/22 42/19 48/14 55/11 59/22 67/2 75/3 83/20 85/20 87/15 89/7 92/23 93/1 93/15
**shouldn't [2]** 49/10 87/15
**show [15]** 7/23 38/20 52/16 54/10 56/17 57/23 59/10 62/22 63/20 68/7 68/25 69/3 69/20 82/17
**showed [1]** 90/9
**showing [1]** 63/15
**shown [1]** 38/23
**shows [6]** 18/16 33/9 54/14 56/25 57/3 71/15
**side [3]** 89/2 91/21 93/4
**signed [2]** 24/21 76/22
**significant [1]** 81/16
**similar [1]** 44/7
**simply [1]** 27/12
**since [4]** 18/12 72/24 90/8 92/18
**sir [3]** 33/18 33/20 76/5
**sitting [1]** 91/16 92/14
**six [2]** 68/15 77/2
**skills [1]** 22/7
**skip [1]** 92/10
**smoothly [1]** 88/1
**so [104]**
**sold [1]** 29/1
**sole [1]** 18/16
**some [45]** 5/24 6/17 8/25 10/9 11/8 11/16 14/10 18/17 18/24 24/1 27/13 36/24 38/25 44/17 45/24 50/4 50/18 51/15 51/15 55/7 57/10 58/17 59/11

**59/14 60/6 62/14 72/8 75/2 78/9 81/2 81/20 85/18 86/15 87/19 87/20 88/4 89/7 90/1 90/1 91/20 92/7 93/6 93/14 94/16 96/3
**somebody [5]** 14/9 23/23 28/4 58/5 96/6
**somebody's [1]** 18/24
**someone [12]** 4/5 5/2 6/19 7/3 8/16 14/7 38/5 60/12 60/13 60/15 64/19 71/13
**something [25]** 5/18 16/10 18/18 25/20 26/3 28/3 34/1 37/4 47/7 51/23 52/1 52/4 52/8 58/24 59/3 74/11 77/15 79/22 82/22 87/14 90/6 95/9
**sometimes [4]** 73/2 73/3 85/18 85/19
**soon [1]** 23/1
**soonest [1]** 17/23
**sorry [22]** 15/14 16/7 21/4 22/23 24/3 25/20 25/22 25/23 26/5 34/6 35/9 35/15 35/24 40/23 40/25 60/14 65/12 67/17 71/23 72/19 80/3 91/9
**sort [3]** 23/7 86/11 88/16
**sound [1]** 81/25
**sounds [5]** 6/16 43/21 56/16 63/21 82/1
**source [1]** 76/20
**speak [10]** 11/24 20/11 31/23 38/6 39/7 46/12 46/17 50/10 82/6 82/14
**speaking [3]** 16/1 16/22 66/9
**speaks [13]** 16/5 17/16 20/25 21/21 22/19 28/17 31/19 32/15 41/4 43/8 42/19 44/24 49/24
**specific [5]** 83/1 84/4 88/4 89/11 89/16
**specifically [2]** 55/23 91/11
**speculating [1]** 23/21
**speculation [4]** 23/17 85/1 85/6 95/13
**spend [2]** 3/19 9/2
**spoke [1]** 71/20
**sponsor [1]** 14/21
**spread [2]** 55/24 60/24
**spreading [2]** 56/2 65/2
**stage [1]** 47/13
**stamp [16]** 90/16 91/19 91/24 92/7 93/11 93/13 93/17 93/19 94/4 94/11 94/12 94/14 94/24 94/25 95/3 95/6
**stamped [3]** 90/11 90/13 91/23
**stand [3]** 61/10 62/1 72/6
**standing [1]** 72/13
**standpoint [1]** 41/10
**start [3]** 48/16 80/9 86/1
**started [3]** 9/5 85/24 86/4
**starting [1]** 86/9
**stated [1]** 89/9
**statement [18]** 11/12 13/5 18/25 53/14 55/22 56/24 57/2 60/24 60/25 61/1 61/4 70/1 70/6 73/24 74/11 74/23 76/9 80/8 80/20 82/13
**statements [6]** 18/17 67/19 68/22 70/2 78/20 82/13
**STATES [2]** 1/1 1/11
**staying [1]** 16/12
**steered [1]** 88/19
**stenography [1]** 2/24
**step [8]** 3/5 7/14 25/10 27/23 30/24 31/10 31/11 62/1
**steps [4]** 7/22 25/8 33/13 33/16
**still [7]** 29/24 32/12 32/25 34/5 55/7 69/25 81/16
**stipulated [4]** 29/2 44/19 44/25 50/11
**stipulation [1]** 44/25
**stock [1]** 11/9
**stop [2]** 22/22 61/23
**strategic [3]** 14/15 20/22 21/7
**Street [2]** 1/16 1/21
**stressed [1]** 13/24
**striking [2]** 68/17 68/23
**strongly [1]** 4/2 4/4 6/20
**stuff [1]** 72/21

**subject [3]** 25/14 39/12 61/12
**submissions [1]** 36/5
**submit [4]** 49/18 50/19 65/3 65/5
**submitted [8]** 36/4 37/22 38/2 38/2 38/8 39/6 74/19 74/21
**subsequently [1]** 70/2
**substance [1]** 17/10
**successfully [1]** 55/5
**such [2]** 4/7 43/18
**suggest [4]** 5/13 39/10
**suggested [1]** 5/19
**suggests [4]** 4/3 6/21 6/24 7/12
**Suite [1]** 1/16
**summarize [2]** 21/24 22/20
**summarizes [1]** 51/16
**summary [9]** 13/2 49/18 49/22 49/22 50/4 50/20 51/1 74/24 75/4
**support [1]** 56/9
**suppose [1]** 18/4
**supposed [2]** 49/15 61/9
**sure [16]** 3/15 7/9 14/8 14/9 17/9 20/15 37/6 42/25 56/12 74/18 80/3 85/6 87/11 87/24 94/6 94/22
**surrounding [1]** 59/23
**survive [1]** 22/6
**suspension [2]** 29/16 29/19
**sustain [6]** 46/22 47/14 55/4 55/20 84/19 85/7
**sustained [8]** 12/5 44/5 44/5 44/15 66/4 66/17 67/7 75/9
**system [1]** 91/24

**T**

**tab [1]** 37/7
**take [19]** 3/22 10/14 10/17 19/11 25/6 28/11 28/20 35/5 36/13 38/22 50/16 53/15 55/8 74/4 85/14 87/12 87/12 88/9 96/9
**taken [6]** 10/15 33/16 49/23 79/14 79/16 79/17
**taking [4]** 7/22 37/15 45/23 88/25
**talk [8]** 17/23 18/4 45/20 64/3 72/8 77/1 80/19 81/17
**talked [4]** 66/23 78/11 82/4 92/25
**talking [30]** 13/10 14/10 17/10 24/5 24/9 26/16 30/1 34/10 34/11 35/10 35/11 37/6 38/9 40/10 40/13 45/20 50/17 51/17 52/15 56/18 57/18 69/16 80/24 82/10 82/12 82/16 82/20 84/23 86/8 89/22
**talks [1]** 5/23
**Tarabi [1]** 36/24
**tax [1]** 68/20
**technological [1]** 3/16
**technologically [1]** 34/20
**tell [18]** 6/10 6/22 9/8 16/6 21/2 22/20 25/21 37/25 38/19 59/17 61/13 62/3 62/21 83/2 85/23 86/12 88/3 92/18
**telling [12]** 6/2 8/16 20/21 54/14 55/16 57/2 64/14 69/7 69/18 70/13 71/9 71/17
**tension [3]** 22/2 22/4 23/2
**terms [5]** 28/18 29/1 43/8 67/3 67/9
**testified [2]** 11/4 51/17
**testifies [5]** 18/14 20/4 24/23 47/16 48/19
**testify [22]** 7/2 7/7 7/24 33/15 39/3 46/7 47/8 47/12 50/24 51/2 51/3 53/14 54/23 56/1 56/4 58/21 64/2 64/5 69/24 69/4 70/8 74/24
**testifying [22]** 11/4 14/23 15/3 17/13 19/12 23/14 23/19 32/1 37/1 40/1 40/8 42/4 44/10 47/1 55/13 58/11 69/9 69/24 74/8 75/1 78/12 79/10
**testimony [23]** 4/17 15/4 15/5 18/4

**testimony...** [19]  18/19 19/7 19/15 24/12 24/24 25/15 50/8 51/11 54/25 61/16 61/18 69/6 72/3 83/24 85/20 86/22 89/12 91/14 92/23

**text** [6]  12/11 41/12 43/12 66/15 66/16 73/14

**than** [12]  17/10 28/12 50/2 50/7 52/23 61/2 65/16 85/18 88/4 88/7 95/10 96/6

**thank** [12]  3/13 9/17 10/2 11/1 26/5 32/6 32/17 32/19 53/5 66/22 67/8 80/1

**thanks** [1]  27/9

**that** [525]

**that's** [69]  5/11 7/6 7/7 7/12 10/5 12/12 16/10 16/15 16/15 16/18 16/23 16/25 17/22 18/22 19/16 20/23 22/12 23/6 23/12 23/18 24/15 26/15 28/2 29/22 31/2 33/6 33/24 35/11 37/7 41/14 41/16 44/5 45/25 48/14 51/23 54/2 54/17 54/18 56/13 58/18 60/24 61/6 62/11 62/24 63/16 64/4 64/8 64/18 66/11 67/14 69/21 70/5 70/17 71/5 71/25 73/6 73/23 74/2 78/19 79/12 81/19 81/20 83/7 87/7 87/15 88/15 88/22 90/10 91/19

**their** [26]  12/25 16/11 16/14 21/15 29/6 34/22 37/15 37/17 43/15 49/15 53/22 58/19 59/25 61/22 63/1 76/19 76/20 86/1 87/13 87/19 87/22 89/2 91/24 93/7 93/7 95/3

**them** [39]  10/6 10/17 14/14 15/12 16/14 23/4 27/8 27/13 32/20 43/6 43/10 43/16 52/22 53/3 54/1 59/25 65/3 68/2 68/2 70/13 71/17 78/8 79/16 79/17 80/19 81/14 84/3 85/22 88/5 91/24 92/9 92/18 93/11 93/14 93/16 93/17 93/25 94/3 94/11

**then** [55]  4/25 5/8 6/3 6/13 6/23 8/5 8/11 10/13 10/14 19/13 25/17 27/20 29/6 35/6 36/8 37/15 38/3 48/3 48/13 49/8 50/16 52/5 53/3 54/16 55/3 60/25 61/4 61/14 61/20 66/19 67/12 71/5 74/1 78/15 79/12 80/14 80/17 81/6 81/9 81/21 82/8 84/20 84/23 86/5 87/1 89/20 89/22 92/6 92/9 92/10 92/12 92/19 94/2 95/7 95/22

**theories** [1]  6/4

**theory** [19]  3/23 3/25 4/25 5/8 5/24 8/15 8/22 19/5 20/23 21/19 21/19 22/10 28/14 41/3 43/16 47/23 48/7 59/13 63/1

**there** [95]  3/16 4/10 5/19 6/5 6/12 11/22 12/20 15/5 15/7 15/22 16/13 17/24 22/9 24/22 29/12 31/17 34/7 35/13 35/19 35/25 35/25 36/3 36/18 39/22 41/17 46/7 48/15 49/1 51/10 53/2 53/9 56/8 58/22 59/4 59/5 59/11 60/6 60/11 60/12 60/15 60/16 60/25 61/15 61/23 63/1 63/4 64/10 64/17 72/1 72/2 72/12 72/15 80/18 81/10 81/16 82/19 82/25 84/10 84/12 84/16 84/22 85/6 85/18 85/19 86/16 86/17 86/18 87/3 87/4 87/24 88/6 88/16 88/22 89/7 90/2 90/12 90/21 91/14 91/16 92/13 92/25 93/22 94/4 94/10 94/11 94/12 94/16 96/3 96/3

**there's** [29]  7/9 11/18 12/17 13/2 13/5 19/6 20/3 21/10 21/22 22/2 23/4 24/10 34/23 34/25 36/17 37/25 38/14 38/24 39/10 40/18 48/20 53/7 65/3 65/4 72/14 74/11 89/3 90/14 92/20

**these** [77]  3/18 6/4 6/25 7/22 10/23 15/17 19/4 19/9 22/19 23/3 23/8 23/25 26/18 29/1 29/23 29/25 30/8 30/15 33/8

**this** [347]

32/19 34/20 36/25 39/5 39/5 89/14 95/14 39/24 40/1 40/4 40/4 42/18 44/9 45/1 46/18 49/2 49/3 49/3 49/5 49/7 52/21 53/22 58/18 63/25 67/2 68/3 68/5 68/8 75/2 76/15 78/5 78/8 78/12 81/2 81/12 84/24 85/13 85/14 86/8 86/24 87/11 87/11 87/20 87/20 87/24 88/4 88/20 90/11 90/13 91/7 91/22 92/1 92/19 93/2 93/4 93/4 93/14 93/12 95/8

**they** [100]

**they're** [34]  14/10 23/1 37/17 39/24 40/1 44/8 44/9 44/13 46/4 49/2 49/7 49/8 50/23 51/24 52/6 52/11 53/2 53/21 53/22 53/23 59/12 63/21 69/10 69/16 77/25 78/10 78/16 82/12 82/17 89/22 91/12 95/17 95/19 96/1

**they've** [2]  63/23 86/9

**thing** [9]  15/22 23/16 55/14 55/14 64/10 72/25 84/21 89/4 92/14

**things** [20]  29/10 29/14 32/24 46/2 47/9 63/21 63/25 68/5 68/8 68/25 69/1 69/5 69/7 70/14 74/1 78/11 79/24 91/6 96/8

**think** [74]  3/17 7/24 8/18 11/4 12/3 12/24 13/3 15/2 15/20 17/11 18/22 21/17 27/9 27/10 28/25 29/8 29/10 29/17 30/2 31/7 31/11 33/6 34/4 34/5 34/8 34/17 38/14 38/17 39/15 40/10 40/22 42/4 42/19 44/10 44/25 46/5 46/8 46/23 50/23 52/12 53/15 54/24 55/11 55/18 59/21 60/20 61/1 62/6 64/4 64/8 66/2 66/11 67/2 68/6 72/11 72/15 75/3 78/10 79/7 80/24 81/20 82/2 82/5 82/13 83/2 84/5 85/20 87/5 88/14 88/20 92/5 92/19 95/10 95/14

**thinking** [2]  23/17 23/22

**thinks** [2]  70/2 70/23

**third** [12]  4/5 5/4 5/5 5/6 6/13 12/17 17/18 46/21 53/14 65/11 65/17 65/17

**Thirteenth** [1]  1/21

**those** [32]  6/8 8/21 9/11 10/9 16/17 19/22 23/7 31/25 42/14 42/15 44/14 45/11 49/12 51/12 52/18 53/20 67/5 68/22 68/25 74/20 77/24 78/19 79/15 79/15 81/13 88/19 89/8 92/21 93/24 95/2 95/4 95/6

**though** [6]  37/24 39/3 41/6 72/22 76/11 83/7

**thought** [10]  16/19 26/2 44/2 55/16 84/25 85/25 86/23 88/7 88/12 96/1

**three** [8]  18/18 33/9 33/19 37/13 46/14 51/10 53/19 80/14

**three-month** [1]  51/10

**through** [18]  18/9 19/2 48/16 53/10 57/4 58/22 62/1 64/2 75/11 78/15 78/20 82/11 82/11 85/3 87/4 88/1 92/21 95/8

**tied** [3]  86/22 89/16 93/23

**time** [45]  3/19 7/22 8/19 9/2 9/4 16/20 19/11 23/23 25/6 31/1 39/3 43/19 44/8 44/25 45/21 45/22 46/3 47/18 48/17 49/25 50/2 51/10 52/2 52/5 52/13 53/19 55/13 56/25 56/25 63/4 67/24 67/24 75/2 77/2 77/7 77/11 81/7 86/25 87/6 87/9 87/9 87/22 88/2 88/25 90/8

**timeframe** [1]  47/20

**times** [1]  77/2

**timing** [1]  46/23

**titled** [1]  96/19

**today** [8]  10/17 50/20 68/11 68/12 68/16 82/5 87/5 93/6

**together** [1]  27/8

**told** [21]  6/9 6/24 7/11 7/18 7/23 15/3 49/20 58/2 58/20 58/24 59/3 59/13 60/5

**too** [9]  5/13 10/1 31/8 46/24 49/2 49/10 55/21 72/15 81/13

**took** [3]  12/9 45/24 85/15

**top** [3]  67/14 73/13 89/21

**toward** [1]  22/10

**transaction** [14]  25/2 29/6 33/9 33/16 40/9 46/3 46/23 56/19 58/20 60/7 60/11 61/16 63/4 64/7

**transcript** [4]  1/10 2/24 80/20 96/18

**transcription** [1]  2/24

**trial** [7]  81/5 87/25 88/1 91/20 92/19 93/2 93/3

**trier** [1]  51/16

**triple** [2]  71/5 73/14

**true** [20]  49/6 53/23 54/2 54/2 54/4 56/6 60/10 61/5 62/25 65/2 68/8 68/22 69/21 71/10 71/25 73/4 78/14 88/12 90/18 90/23

**truth** [13]  37/21 43/22 53/22 54/16 59/3 59/9 60/19 60/21 61/2 65/4 70/3 71/9 96/6

**truthfulness** [1]  71/13

**try** [8]  8/21 12/4 55/6 59/12 68/1 82/5 92/6 95/11

**trying** [16]  3/14 5/18 16/16 29/4 46/5 55/5 60/4 60/4 61/23 62/12 63/11 63/17 63/20 71/16 75/10 87/15

**turn** [4]  49/6 53/5 80/20 95/11

**turned** [2]  31/8 77/11

**turning** [1]  80/17

**turns** [1]  50/20

**two** [13]  6/5 6/12 13/1 25/6 28/9 45/15 45/22 45/24 48/8 51/10 53/20 72/24 87/7

# U

**U.S** [1]  2/2

**UBS** [3]  30/13 32/17 33/5

**Uh** [2]  70/4 95/16

**Uh-huh** [2]  70/4 95/16

**ULRICH** [2]  1/19 3/12

**ultimate** [1]  31/20

**ultimately** [3]  29/12 39/5 39/6

**unaudited** [2]  13/2 15/24

**unclear** [1]  82/21

**under** [7]  3/25 22/18 29/1 55/12 56/23 59/16 67/2

**underlie** [1]  72/3

**underlying** [1]  50/8

**undermined** [2]  4/24 14/19

**underscored** [1]  21/8

**understand** [7]  7/4 40/16 45/17 61/25 63/13 70/11 87/17

**understanding** [12]  7/10 10/6 16/11 51/13 52/6 57/10 63/7 76/15 86/23 88/11 96/5 96/7

**understood** [5]  43/3 63/14 63/16 63/21 64/4

**undisclosed** [1]  49/20

**UNITED** [2]  1/1 1/11

**unless** [6]  15/2 48/19 51/22 72/12 72/14 81/12

**unlikely** [1]  47/11

**until** [4]  6/10 29/4 29/17 93/5

**up** [17]  3/15 3/24 7/14 9/8 10/15 28/11 47/10 49/21 62/4 64/15 73/13 74/5 81/7 82/3 87/12 91/15 92/19

**upcoming** [1]  14/14

**upon** [6]  43/10 47/2 47/10 88/16 92/14 96/7

**urgency** [1]  17/24

**urging** [1]  17/23

U Case 1:06-cv-00336-RWR-DAR Document 39-3 Filed 06/18/2007 Page 61 of 62

**us [12]** 29/3 38/19 49/9 68/16 68/19 71/4 81/2 81/9 81/12 91/23 92/18 93/7
**use [11]** 11/11 11/18 46/1 46/2 52/7 73/20 73/24 74/2 74/10 75/19 76/11
**used [12]** 11/5 18/9 19/14 39/15 47/2 47/8 50/18 53/3 66/13 73/1 76/15 78/16
**using [3]** 46/4 77/6 78/8
**usually [1]** 89/9

# V

**valuating [1]** 49/1
**valuation [21]** 11/6 11/9 11/17 11/19 11/24 11/25 12/15 39/16 43/15 44/24 45/18 45/19 46/1 46/1 46/5 46/8 46/12 46/18 48/9 51/3 51/4
**value [2]** 46/24 51/8
**Van [52]** 5/8 5/23 6/2 6/7 6/22 7/10 7/12 7/15 7/17 8/6 13/17 13/23 14/24 17/23 17/25 18/4 18/10 19/11 20/11 20/13 23/5 24/8 24/12 25/12 31/23 32/2 32/19 33/11 33/15 38/12 38/15 38/17 40/17 40/21 41/1 41/13 41/15 41/25 42/6 52/19 67/23 69/6 69/17 69/18 72/6 74/7 74/8 74/22 75/17 80/10 84/8 95/19
**various [1]** 32/24
**VASQUEZ [18]** 1/19 3/11 14/2 26/20 32/18 42/2 42/10 47/4 53/17 62/5 65/7 70/7 73/19 75/15 76/4 76/25 78/18 94/12
**vehicle [1]** 72/10
**verbally [1]** 5/4
**verbatim [3]** 49/19 49/21 49/23
**verge [1]** 32/17
**version [2]** 36/10 80/22
**versus [2]** 3/4 33/24
**very [3]** 67/8 76/25 94/1
**Vice [1]** 42/1
**Vice-President [1]** 42/1
**views [1]** 96/7
**voice [1]** 68/15
**voices [1]** 25/6

# W

**Walid [3]** 17/12 31/22 37/11
**want [30]** 3/19 3/22 6/22 8/8 8/23 15/18 22/5 22/22 30/20 37/2 46/16 46/25 48/22 48/23 49/8 56/17 66/2 72/21 73/8 73/22 80/3 80/9 80/20 81/4 81/17 85/23 86/6 86/20 87/13 87/21
**wanted [5]** 8/20 21/2 22/8 28/16 94/22
**was [199]**
**Washington [4]** 1/4 1/17 1/21 2/3
**wasn't [12]** 4/1 5/22 6/4 7/18 20/24 28/15 29/16 65/1 90/21 94/9 96/3 96/4
**waste [2]** 87/5 87/8
**way [17]** 38/14 59/11 59/17 61/9 62/25 64/20 64/25 65/3 70/25 71/4 73/4 81/2 84/18 91/15 96/2 96/4 96/5
**ways [2]** 72/12 72/14
**we [177]**
**we'd [2]** 9/2 27/8
**we'll [13]** 10/14 27/3 31/5 31/6 45/11 48/16 52/2 52/5 53/9 74/4 82/9 92/6 96/12
**we're [26]** 3/16 8/7 8/9 16/18 26/6 27/5 35/10 37/6 37/20 40/13 42/20 42/25 47/12 51/17 62/12 63/12 72/24 73/19 76/25 77/24 82/10 84/23 84/24 85/11 88/19 96/13
**we've [18]** 3/17 8/8 9/10 74/7 74/16 78/8 79/16 79/17 82/4 92/21 93/6 93/7 94/6
**weeks [1]** 32/12

**weight [2]** 29/21 46/15
**well [76]** 5/11 8/16 7/23 9/11 10/13 12/3 14/21 14/22 15/13 16/10 17/13 18/2 19/9 20/25 23/13 25/14 26/1 27/12 28/17 33/10 34/25 36/23 37/19 38/5 38/9 38/12 38/19 39/11 40/11 40/13 41/24 43/5 43/21 44/2 44/4 47/11 47/14 49/13 50/4 50/19 51/7 54/21 55/3 55/18 59/19 60/22 61/8 61/18 62/6 62/11 63/22 64/21 67/1 67/12 69/4 69/25 70/8 70/9 70/19 71/12 71/18 72/23 73/6 77/9 78/2 81/19 83/14 84/7 87/7 88/2 88/6 88/11 89/15 91/9 92/23 93/3 93/9 96/2
**went [5]** 8/7 25/21 29/7 34/7 62/25
**were [45]** 4/8 4/11 6/12 10/9 12/25 24/1 24/6 29/6 29/24 29/25 30/25 31/10 32/16 32/20 38/6 39/5 39/6 42/15 49/5 49/18 52/20 56/6 61/15 70/12 71/16 71/16 77/11 78/10 80/10 82/25 83/5 83/15 83/19 84/8 86/23 88/21 90/19 93/13 93/24 94/19 95/2 95/6 96/3 96/3 96/7
**weren't [8]** 4/21 31/1 32/8 32/11 39/15 68/8 74/9 92/8
**what [189]**
**what's [16]** 4/5 11/20 13/20 16/2 28/13 29/2 31/15 35/23 37/7 41/9 43/25 60/18 61/25 63/6 67/9 79/1
**whatever [12]** 6/1 27/11 37/17 40/14 46/15 52/11 52/12 61/21 72/8 81/6 83/3 91/16
**when [35]** 5/15 5/23 6/8 6/23 7/23 7/25 8/3 8/10 8/17 15/24 17/21 26/1 29/2 36/5 38/1 38/2 38/8 44/20 45/19 52/5 54/1 55/6 55/17 56/3 57/17 61/11 61/19 62/19 83/6 85/17 86/12 86/23 90/4 91/14 93/13
**whenever [1]** 46/3
**where [14]** 7/9 23/7 25/21 54/22 62/11 64/13 64/18 68/13 82/17 84/14 87/9 92/8 94/4 94/10
**whether [23]** 5/22 5/24 6/2 13/11 16/12 29/12 46/19 54/24 59/9 60/8 60/10 68/5 71/8 71/17 73/7 82/21 83/5 83/7 84/22 87/14 88/2 89/13 92/20
**which [38]** 4/6 5/6 10/25 11/16 13/3 14/18 14/19 15/23 16/18 16/23 17/17 19/20 21/1 36/19 39/17 43/19 52/16 53/14 55/14 55/23 56/25 65/20 65/22 70/13 71/10 72/16 72/18 73/13 73/21 74/7 77/11 80/3 80/5 80/10 80/21 84/3 92/18 94/4
**while [3]** 87/14 88/5 91/6
**White [1]** 1/20
**who [29]** 3/24 4/3 5/1 5/9 5/16 7/2 12/16 12/24 14/8 14/9 20/12 21/6 31/21 38/1 46/17 53/14 54/13 55/15 56/14 56/17 57/19 60/12 60/13 60/16 61/3 65/14 69/24 85/14 88/25
**who's [5]** 7/7 14/21 20/9 38/11 76/18
**whole [3]** 16/2 17/6 61/22
**wholesale [1]** 76/11
**whom [1]** 69/9
**Whose [1]** 65/9
**why [14]** 23/18 31/3 38/1 59/6 64/1 82/7 83/7 83/23 84/3 84/13 85/12 87/15 88/15 91/9
**will [73]** 7/17 7/20 7/21 7/22 15/7 17/2 18/4 20/11 21/5 24/8 24/11 25/14 25/17 26/13 26/22 27/24 28/1 28/20 29/20 30/4 31/25 32/2 33/3 33/15 35/2 39/19 40/4 42/9 43/5 44/14 45/12 49/23 50/13 50/14 51/2 52/1 52/4 54/23 55/25 56/4 56/7 58/11 58/20 61/14 64/5 65/23

**66/1 66/17 67/18 68/7 69/3 69/4 69/6 83/9 69/25 70/6 72/6 74/8 74/24 75/1 75/7 75/10 75/14 75/15 76/22 78/15 79/9 79/22 79/24 82/14 87/2 87/3**
**willing [1]** 94/3
**withdraw [7]** 17/5 19/24 27/3 31/6 40/4 42/21 78/15
**withdrawing [3]** 45/3 50/16 80/14
**withdrawn [4]** 25/19 45/13 78/3 81/14
**withdrew [1]** 45/11
**within [10]** 5/15 5/20 6/8 6/14 12/17 13/25 15/22 17/24 40/19 57/10
**witness [25]** 3/20 3/20 3/20 7/4 7/15 18/20 19/7 20/3 46/17 47/1 47/8 55/9 58/9 69/10 73/20 75/11 75/14 75/14 76/20 83/2 88/5 95/17 95/18 95/21 95/23
**witnesses [12]** 3/20 12/25 44/9 72/3 72/21 74/24 75/3 75/6 87/10 87/13 87/18 87/21
**witnesses' [1]** 87/9
**won't [10]** 7/17 15/5 45/2 53/14 55/6 74/12 87/2 87/3 87/4 87/24
**word [1]** 58/15
**wording [1]** 33/12
**work [3]** 11/7 16/19 81/20
**worked [2]** 19/13 49/21
**working [1]** 29/8
**works [1]** 75/7
**worth [2]** 45/25 81/6
**worthless [1]** 49/5
**would [62]** 5/13 6/5 10/22 11/11 13/11 15/4 15/8 16/10 18/23 18/23 19/12 19/17 21/20 22/6 22/11 22/15 24/25 33/13 38/5 38/7 38/12 39/3 39/10 40/14 43/1 43/18 43/19 43/19 46/19 48/10 50/1 50/25 51/1 56/25 61/4 61/5 61/17 61/18 61/19 61/19 62/6 63/17 68/18 70/24 71/3 73/3 74/11 74/17 76/15 77/6 84/7 84/10 84/12 87/1 88/9 88/18 91/17 91/18 92/17 92/20 93/2 94/2
**wouldn't [4]** 56/6 72/14 78/8 78/12
**write [1]** 32/19
**written [1]** 56/6
**wrong [3]** 83/4 83/17 94/9
**wrote [3]** 12/16 12/24 95/18

# Y

**yeah [36]** 6/12 13/18 16/22 17/9 20/19 24/2 24/19 28/24 30/17 32/23 34/6 35/21 39/24 47/5 50/12 52/10 52/10 53/18 56/21 57/17 58/3 58/7 58/18 59/5 63/8 68/11 69/12 69/15 69/19 71/20 74/21 82/24 85/3 89/11 94/1 94/16
**year [1]** 11/5
**years [6]** 45/15 45/22 45/25 46/14 48/8 68/21
**yes [47]** 7/16 9/6 9/7 9/14 9/16 10/11 18/11 24/14 26/12 28/22 30/22 32/3 33/18 33/20 34/2 35/18 36/15 42/8 42/15 43/12 45/4 45/9 47/3 48/2 48/12 50/6 50/21 51/23 54/19 58/10 58/14 59/1 60/17 61/11 62/5 62/18 66/24 69/7 76/5 79/9 79/24 80/9 86/1 90/17 93/14 94/18 95/14
**yesterday [3]** 8/25 86/23 88/7
**yet [3]** 35/13 49/22 93/8
**you [182]**
**you'd [3]** 50/4 55/7 55/18
**you'll [5]** 24/21 43/12 62/1 62/4 67/24
**you're [31]** 6/2 18/9 25/22 35/1 35/11 38/9 43/21 45/3 45/19 49/13 50/16 50/17 52/9 55/5 57/23 58/8 59/2 60/4 60/4 61/25 62/14 62/16 63/14 63/20

**Y**

**you're... [7]**  65/11 69/14 72/9 83/22 85/2
90/5 91/2
**you've [5]**  6/21 10/17 66/2 71/5 77/2
**your [118]**
**yours [2]**  87/22 91/25
**yourselves [3]**  3/6 9/2 82/8